**Exhibit A: Overview of Western & Southern's Countrywide RMBS Investments**

| Offering and Class | Full Name of Offering | Issuing Entity | Depositor | Seller/ Sponsor | Servicer |
|---|---|---|---|---|---|
| CWALT 2005-10CB 1A8 | Mortgage Pass-Through Certificates, Series 2005-10CB | Alternative Loan Trust 2005-10CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2005-13CB A8 | Mortgage Pass-Through Certificates, Series 2005-13CB | Alternative Loan Trust 2005-13CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2005-20CB 1A3 | Mortgage Pass-Through Certificates, Series 2005-20CB | Alternative Loan Trust 2005-20CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2005-20CB 1A4 | Mortgage Pass-Through Certificates, Series 2005-20CB | Alternative Loan Trust 2005-20CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2005-26CB A6 | Mortgage Pass-Through Certificates, Series 2005-26CB | Alternative Loan Trust 2005-26CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2005-28CB 2A4 | Mortgage Pass-Through Certificates, Series 2005-28CB | Alternative Loan Trust 2005-28CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2005-30CB 1A6 | Mortgage Pass-Through Certificates, Series 2005-30CB | Alternative Loan Trust 2005-30CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2005-46CB A14 | Mortgage Pass-Through Certificates, Series 2005-46CB | Alternative Loan Trust 2005-46CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2005-47CB A11 | Mortgage Pass-Through Certificates, Series 2005-47CB | Alternative Loan Trust 2005-47CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |

| Offering and Class | Full Name of Offering | Issuing Entity | Depositor | Seller/ Sponsor | Servicer |
|---|---|---|---|---|---|
| CWALT 2005-49CB A3 | Mortgage Pass-Through Certificates, Series 2005-49CB | Alternative Loan Trust 2005-49CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2005-54CB 1A4 | Mortgage Pass-Through Certificates, Series 2005-54CB | Alternative Loan Trust 2005-54CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2005-J1 1A8 | Mortgage Pass-Through Certificates, Series 2005-J1 | Alternative Loan Trust 2005-J1 | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2006-7CB 1A14 | Mortgage Pass-Through Certificates, Series 2006-7CB | Alternative Loan Trust 2006-7CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2006-14CB A7 | Mortgage Pass-Through Certificates, Series 2006-14CB | Alternative Loan Trust 2006-14CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2006-39CB 1A4 | Mortgage Pass-Through Certificates, Series 2006-39CB | Alternative Loan Trust 2006-39CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-5CB 1A13 | Mortgage Pass-Through Certificates, Series 2007-5CB | Alternative Loan Trust 2007-5CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-15CB M | Mortgage Pass-Through Certificates, Series 2007-15CB | Alternative Loan Trust 2007-15CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-15CB M | Mortgage Pass-Through Certificates, Series 2007-15CB | Alternative Loan Trust 2007-15CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-15CB M | Mortgage Pass-Through Certificates, Series 2007-15CB | Alternative Loan Trust 2007-15CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-15CB A6 | Mortgage Pass-Through | Alternative Loan Trust | CWALT Inc. | Countrywide | Countrywide |

| Offering and Class | Full Name of Offering | Issuing Entity | Depositor | Seller/ Sponsor | Servicer |
|---|---|---|---|---|---|
| | Certificates, Series 2007-15CB | 2007-15CB | | Home Loans | Homeloans Servicing LP |
| CWALT 2007-15CB A6 | Mortgage Pass-Through Certificates, Series 2007-15CB | Alternative Loan Trust 2007-15CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-15CB A6 | Mortgage Pass-Through Certificates, Series 2007-15CB | Alternative Loan Trust 2007-15CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-15CB A6 | Mortgage Pass-Through Certificates, Series 2007-15CB | Alternative Loan Trust 2007-15CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-16CB M1 | Mortgage Pass-Through Certificates, Series 2007-16CB | Alternative Loan Trust 2007-16CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-16CB M1 | Mortgage Pass-Through Certificates, Series 2007-16CB | Alternative Loan Trust 2007-16CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-16CB M1 | Mortgage Pass-Through Certificates, Series 2007-16CB | Alternative Loan Trust 2007-16CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-16CB M1 | Mortgage Pass-Through Certificates, Series 2007-16CB | Alternative Loan Trust 2007-16CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-17CB M1 | Mortgage Pass-Through Certificates, Series 2007-17CB | Alternative Loan Trust 2007-17CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWALT 2007-21CB 1A6 | Mortgage Pass-Through Certificates, Series 2007-21CB | Alternative Loan Trust 2007-21CB | CWALT Inc. | Countrywide Home Loans | Countrywide Homeloans Servicing LP |
| CWHL 2005-24 A7 | Mortgage Pass-Through Certificates, Series | CHL MORTGAGE PASS-THROUGH | CWMBS, Inc. | Countrywide Home Loans | Countrywide Home Loans |

| Offering and Class | Full Name of Offering | Issuing Entity | Depositor | Seller/ Sponsor | Servicer |
|---|---|---|---|---|---|
| | 2005-24 | TRUST 2005-24 | | | Servicing LP |
| CWHL 2005-24 A23 | Mortgage Pass-Through Certificates, Series 2005-24 | CHL MORTGAGE PASS-THROUGH TRUST 2005-24 | CWMBS, Inc. | Countrywide Home Loans | Countrywide Home Loans Servicing LP |
| CWHL 2005-25 A6 | Mortgage Pass-Through Certificates, Series 2005-25 | CHL MORTGAGE PASS-THROUGH TRUST 2005-25 | CWMBS, Inc. | Countrywide Home Loans | Countrywide Home Loans Servicing LP |
| CWHL 2005-J2 3A14 | Mortgage Pass-Through Certificates, Series 2005-J2 3A14 | CHL Mortgage Pass-Through Trust 2005-J2 | CWMBS, Inc. | Countrywide Home Loans | Countrywide Home Loans Servicing LP |
| CWHL 2006-21 A15 | Mortgage Pass-Through Certificates, Series 2006-21 | CHL Mortgage Pass-Through Trust 2006-21 | CWMBS, Inc. | Countrywide Home Loans | Countrywide Home Loans Servicing LP |
| CWHL 2006-21 A15 | Mortgage Pass-Through Certificates, Series 2006-21 | CHL Mortgage Pass-Through Trust 2006-21 | CWMBS, Inc. | Countrywide Home Loans | Countrywide Home Loans Servicing LP |
| CWHL 2006-21 A15 | Mortgage Pass-Through Certificates, Series 2006-21 | CHL Mortgage Pass-Through Trust 2006-21 | CWMBS, Inc. | Countrywide Home Loans | Countrywide Home Loans Servicing LP |
| CWHL 2007-5 A5 | Asset-Backed Certificates, Series 2007-5 | CWABS Asset-Backed Certificates Trust 2007-5 | CWABS, Inc. | Countrywide Home Loans | Countrywide Home Loans Servicing LP |
| CWHL 2007-14 M | Mortgage Pass-Through Certificates, Series 2007-14 | CHL Mortgage Pass-Through Trust 2007-14 | CWMBS, INC. | Countrywide Home Loans | Countrywide Home Loans Servicing LP |
| CWHL 2007-15 M | Mortgage Pass-Through Certificates, Series 2007-15 | CHL Mortgage Pass-Through Trust 2007-15 | CWMBS, INC. | Countrywide Home Loans | Countrywide Home Loans Servicing LP |

| Offering and Class | Full Name of Offering | Issuing Entity | Depositor | Seller/ Sponsor | Servicer |
|---|---|---|---|---|---|
| CWL 2006-S8 A4 | Home Equity Loan Asset Backed Certificates, Series 2006-S8 | CWHEQ Home Equity Loan Trust, Series 2006-S8 | CWHEQ, Inc. | Countrywide Home Loans Inc. | Countrywide Homeloans Servicing LP |
| CWL 2006-S9 A3 | Home Equity Loan Asset Backed Certificates, Series 2006-S9 | CWHEQ Home Equity Loan Trust, Series 2006-S9 | CWHEQ Inc. | Countrywide Home Loans Inc. | Countrywide Homeloans Servicing LP |
| CWL 2006-S9 A4 | Home Equity Loan Asset Backed Certificates, Series 2006-S9 | CWHEQ Home Equity Loan Trust, Series 2006-S9 | CWHEQ Inc. | Countrywide Home Loans Inc. | Countrywide Homeloans Servicing LP |
| CWL 2006-S9 A6 | Home Equity Loan Asset Backed Certificates, Series 2006-S9 | CWHEQ Home Equity Loan Trust, Series 2006-S9 | CWHEQ Inc. | Countrywide Home Loans Inc. | Countrywide Homeloans Servicing LP |
| CWL 2007-4 A5W | Asset-Backed Certificates, Series 2007-4 | CWABS Asset-Backed Certificates Trust 2007-4 | CWABS, Inc. | Countrywide Home Loans Inc. | Countrywide Homeloans Servicing LP |
| CWL 2007-11 2A1 | Asset-Backed Certificates, Series 2007-11 | CWABS Asset-Backed Certificates Trust 2007-11 | CWABS, Inc. | Countrywide Home Loans | Countrywide Home Loans Servicing LP |
| CWL 2007-S1 A5 | Home Equity Loan Asset Backed Certificates, Series 2007-S1 | CWHEQ Home Equity Loan Trust, Series 2007-S1 | CWHEQ, INC. | Countrywide Home Loans, Inc. | Countrywide Home Loans Servicing LP |
| CWL 2007-S2 A5F | Home Equity Loan Asset Backed Certificates, Series 2007-S2 | CWHEQ Home Equity Loan Trust, Series 2007-S2 | CWHEQ, INC. | Countrywide Home Loans, Inc. | Countrywide Home Loans Servicing LP |

**Exhibit B: Purchase Information for Western & Southern's Countrywide RMBS Investments**

| Offering and Class | Purchaser | Purchase Date | Purchase Price |
|---|---|---|---|
| CWALT 2005-10CB 1A8 | CLIC | 10/22/07 | 484,550.00 |
| CWALT 2005-10CB 1A8 | Integrity | 10/22/07 | 1,938,200.00 |
| CWALT 2005-10CB 1A8 | Integrity | 10/22/07 | 1,453,650.00 |
| CWALT 2005-10CB 1A8 | WSLAC | 10/22/07 | 7,752,800.00 |
| CWALT 2005-10CB 1A8 | WSLAC | 10/22/07 | 1,938,200.00 |
| CWALT 2005-10CB 1A8 | National Integrity | 10/22/07 | 1,938,200.00 |
| CWALT 2005-10CB 1A8 | National Integrity | 10/22/07 | 1,453,650.00 |
| CWALT 2005-13CB A8 | CLIC | 10/18/06 | 2,412,000.00 |
| CWALT 2005-13CB A8 | CLIC | 10/18/06 | 965,900.00 |
| CWALT 2005-13CB A8 | CLIC | 10/18/06 | 3,863,600.00 |
| CWALT 2005-13CB A8 | WSLAC | 10/18/06 | 9,176,050.00 |
| CWALT 2005-13CB A8 | WSLIC | 10/18/06 | 2,414,750.00 |
| CWALT 2005-20CB 1A3 | CLIC | 04/18/06 | 971,500.00 |
| CWALT 2005-20CB 1A3 | Integrity | 04/18/06 | 971,500.00 |
| CWALT 2005-20CB 1A3 | WSLAC | 04/18/06 | 4,857,500.00 |
| CWALT 2005-20CB 1A3 | WSLAC | 04/18/06 | 1,943,000.00 |
| CWALT 2005-20CB 1A3 | National Integrity | 04/18/06 | 971,500.00 |
| CWALT 2005-20CB 1A3 | National Integrity | 04/18/06 | 971,500.00 |
| CWALT 2005-20CB 1A3 | WSLIC | 04/18/06 | 3,886,000.00 |
| CWALT 2005-20CB 1A4 | WSLIC | 06/21/05 | 5,074,000.00 |
| CWALT 2005-20CB 1A4 | WSLIC | 06/21/05 | 5,074,000.00 |
| CWALT 2005-20CB 1A4 | WSLIC | 06/21/05 | 5,074,000.00 |
| CWALT 2005-26CB A6 | Integrity | 02/13/08 | 1,664,400.00 |
| CWALT 2005-26CB A6 | WSLAC | 02/13/08 | 3,328,800.00 |
| CWALT 2005-26CB A6 | National Integrity | 02/13/08 | 1,664,400.00 |
| CWALT 2005-28CB 2A4 | CLIC | 11/09/05 | 490,000.00 |
| CWALT 2005-28CB 2A4 | CLIC | 11/09/05 | 980,000.00 |
| CWALT 2005-28CB 2A4 | CLIC | 11/09/05 | 980,000.00 |
| CWALT 2005-28CB 2A4 | Integrity | 11/09/05 | 3,085,530.00 |

| Offering and Class | Purchaser | Purchase Date | Purchase Price |
|---|---|---|---|
| CWALT 2005-28CB 2A4 | WSLAC | 11/09/05 | 2,450,000.00 |
| CWALT 2005-28CB 2A4 | WSLAC | 11/09/05 | 980,000.00 |
| CWALT 2005-28CB 2A4 | WSLIC | 11/09/05 | 2,940,000.00 |
| CWALT 2005-28CB 2A4 | WSLIC | 11/09/05 | 980,000.00 |
| CWALT 2005-28CB 2A4 | WSLIC | 11/09/05 | 980,000.00 |
| CWALT 2005-30CB 1A6 | Integrity | 06/30/06 | 1,698,281.27 |
| CWALT 2005-30CB 1A6 | WSLAC | 06/30/06 | 1,227,251.07 |
| CWALT 2005-30CB 1A6 | National Integrity | 06/30/06 | 849,140.63 |
| CWALT 2005-46CB A14 | CLIC | 10/24/06 | 4,742,000.00 |
| CWALT 2005-46CB A14 | CLIC | 12/26/06 | 2,412,000.00 |
| CWALT 2005-46CB A14 | Integrity | 10/24/06 | 3,186,625.00 |
| CWALT 2005-46CB A14 | WSLAC | 10/24/06 | 1,929,600.00 |
| CWALT 2005-46CB A14 | WSLAC | 12/26/06 | 4,582,800.00 |
| CWALT 2005-46CB A14 | WSLIC | 10/24/06 | 2,941,500.00 |
| CWALT 2005-47CB A11 | CLIC | 11/20/06 | 3,603,211.60 |
| CWALT 2005-47CB A11 | WSLAC | 11/20/06 | 6,756,021.75 |
| CWALT 2005-47CB A11 | WSLAC | 11/20/06 | 2,702,408.70 |
| CWALT 2005-47CB A11 | National Integrity | 12/18/06 | 7,807,950.84 |
| CWALT 2005-47CB A11 | WSLIC | 12/18/06 | 1,792,253.14 |
| CWALT 2005-47CB A11 | WSLAC | 11/20/06 | 9,458,430.44 |
| CWALT 2005-47CB A11 | WSLIC | 12/18/06 | 1,792,253.14 |
| CWALT 2005-47CB A11 | WSLIC | 11/20/06 | 4,504,014.49 |
| CWALT 2005-49CB A3 | Integrity | 02/04/08 | 3,700,000.00 |
| CWALT 2005-49CB A3 | Integrity | 02/04/08 | 925,000.00 |
| CWALT 2005-49CB A3 | Integrity | 02/04/08 | 925,000.00 |
| CWALT 2005-49CB A3 | WSLAC | 02/04/08 | 9,250,000.00 |
| CWALT 2005-49CB A3 | WSLAC | 02/04/08 | 925,000.00 |
| CWALT 2005-49CB A3 | National Integrity | 02/04/08 | 3,700,000.00 |
| CWALT 2005-49CB A3 | National Integrity | 02/04/08 | 925,000.00 |
| CWALT 2005-54CB 1A4 | CLIC | 09/30/05 | 499,850.00 |
| CWALT 2005-54CB 1A4 | Integrity | 09/30/05 | 1,499,550.00 |

| Offering and Class | Purchaser | Purchase Date | Purchase Price |
|---|---|---|---|
| CWALT 2005-54CB 1A4 | WSLAC | 09/30/05 | 7,997,600.00 |
| CWALT 2005-54CB 1A4 | WSLAC | 09/30/05 | 1,999,400.00 |
| CWALT 2005-54CB 1A4 | National Integrity | 09/30/05 | 999,700.00 |
| CWALT 2005-54CB 1A4 | WSLIC | 09/30/05 | 999,700.00 |
| CWALT 2005-54CB 1A4 | WSLIC | 09/30/05 | 999,700.00 |
| CWALT 2005-J1 1A8 | CLIC | 07/02/07 | 968,600.00 |
| CWALT 2005-J1 1A8 | WSLAC | 07/02/07 | 5,392,602.40 |
| CWALT 2006-7CB 1A14 | CLIC | 04/12/06 | 977,000.00 |
| CWALT 2006-7CB 1A14 | Integrity | 04/12/06 | 977,000.00 |
| CWALT 2006-7CB 1A14 | WSLAC | 04/12/06 | 4,885,000.00 |
| CWALT 2006-7CB 1A14 | WSLAC | 04/12/06 | 1,954,000.00 |
| CWALT 2006-7CB 1A14 | National Integrity | 04/12/06 | 977,000.00 |
| CWALT 2006-7CB 1A14 | National Integrity | 04/12/06 | 977,000.00 |
| CWALT 2006-7CB 1A14 | National Integrity | 04/12/06 | 1,954,000.00 |
| CWALT 2006-7CB 1A14 | WSLIC | 04/12/06 | 1,954,000.00 |
| CWALT 2006-14CB A7 | CLIC | 04/28/06 | 474,400.00 |
| CWALT 2006-14CB A7 | WSLAC | 04/28/06 | 2,846,400.00 |
| CWALT 2006-14CB A7 | WSLAC | 04/28/06 | 948,800.00 |
| CWALT 2006-14CB A7 | WSLAC | 04/28/06 | 948,800.00 |
| CWALT 2006-14CB A7 | National Integrity | 04/28/06 | 948,800.00 |
| CWALT 2006-14CB A7 | WSLIC | 04/28/06 | 3,320,800.00 |
| CWALT 2006-39CB 1A4 | CLIC | 12/19/06 | 4,538,916.40 |
| CWALT 2006-39CB 1A4 | WSLAC | 12/19/06 | 5,041,000.00 |
| CWALT 2006-39CB 1A4 | WSLIC | 12/19/06 | 4,032,800.00 |
| CWALT 2007-5CB 1A13 | Integrity | 12/19/06 | 860,000.00 |
| CWALT 2007-5CB 1A13 | WSLAC | 12/19/06 | 3,440,000.00 |
| CWALT 2007-5CB 1A13 | WSLAC | 12/19/06 | 860,000.00 |
| CWALT 2007-5CB 1A13 | National Integrity | 12/19/06 | 860,000.00 |
| CWALT 2007-15CB M | Integrity | 10/15/07 | 2,455,765.61 |
| CWALT 2007-15CB M | WSLAC | 10/15/07 | 1,478,370.89 |
| CWALT 2007-15CB M | National Integrity | 10/15/07 | 2,455,765.61 |

| Offering and Class | Purchaser | Purchase Date | Purchase Price |
|---|---|---|---|
| CWALT 2007-15CB A6 | WSLAC | 06/04/07 | 1,132,810.36 |
| CWALT 2007-15CB A6 | National Integrity | 06/04/07 | 9,850,524.91 |
| CWALT 2007-16CB M1 | CLIC | 08/02/07 | 925,311.36 |
| CWALT 2007-16CB M1 | WSLAC | 08/02/07 | 8,123,771.07 |
| CWALT 2007-16CB M1 | WSLAC | 08/02/07 | 1,850,622.72 |
| CWALT 2007-16CB M1 | National Integrity | 08/02/07 | 925,311.36 |
| CWALT 2007-17CB M1 | CLIC | 08/01/07 | 895,573.89 |
| CWALT 2007-17CB M1 | CLIC | 08/01/07 | 1,791,147.78 |
| CWALT 2007-17CB M1 | Integrity | 08/01/07 | 895,573.89 |
| CWALT 2007-17CB M1 | WSLAC | 08/01/07 | 895,573.89 |
| CWALT 2007-17CB M1 | National Integrity | 08/01/07 | 895,573.89 |
| CWALT 2007-17CB M1 | WSLIC | 08/01/07 | 2,686,721.68 |
| CWALT 2007-21CB 1A6 | Integrity | 07/30/07 | 974,000.00 |
| CWALT 2007-21CB 1A6 | Integrity | 07/30/07 | 1,948,000.00 |
| CWALT 2007-21CB 1A6 | WSLAC | 07/30/07 | 3,409,000.00 |
| CWALT 2007-21CB 1A6 | WSLAC | 07/30/07 | 1,461,000.00 |
| CWALT 2007-21CB 1A6 | National Integrity | 07/30/07 | 974,000.00 |
| CWALT 2007-21CB 1A6 | National Integrity | 07/30/07 | 974,000.00 |
| CWHL 2005-24 A7 | CLIC | 11/02/05 | 4,967,000.00 |
| CWHL 2005-24 A7 | Integrity | 11/02/05 | 4,967,000.00 |
| CWHL 2005-24 A7 | WSLAC | 11/02/05 | 11,920,800.00 |
| CWHL 2005-24 A7 | National Integrity | 11/02/05 | 4,967,000.00 |
| CWHL 2005-24 A7 | WSLIC | 11/02/05 | 4,967,000.00 |
| CWHL 2005-24 A7 | WSLIC | 11/02/05 | 4,967,000.00 |
| CWHL 2005-24 A23 | CLIC | 12/12/05 | 4,908,945.62 |
| CWHL 2005-24 A23 | WSLAC | 12/12/05 | 10,099,699.19 |
| CWHL 2005-25 A6 | CLIC | 11/09/05 | 485,150.00 |
| CWHL 2005-25 A6 | Integrity | 03/25/08 | 930,000.00 |
| CWHL 2005-25 A6 | WSLAC | 11/09/05 | 4,851,500.00 |
| CWHL 2005-25 A6 | WSLAC | 03/25/08 | 2,790,000.00 |
| CWHL 2005-25 A6 | WSLAC | 11/09/05 | 1,455,450.00 |

4

| Offering and Class | Purchaser | Purchase Date | Purchase Price |
|---|---|---|---|
| CWHL 2005-25 A6 | National Integrity | 11/09/05 | 2,910,900.00 |
| CWHL 2005-25 A6 | National Integrity | 03/25/08 | 930,000.00 |
| CWHL 2005-J2 3A14 | WSLAC | 10/24/06 | 4,823,500.00 |
| CWHL 2005-J2 3A14 | WSLAC | 10/24/06 | 4,823,500.00 |
| CWHL 2006-21 A15 | Integrity | 02/19/08 | 1,750,000.00 |
| CWHL 2006-21 A15 | WSLAC | 02/19/08 | 1,925,000.00 |
| CWHL 2006-21 A15 | National Integrity | 02/19/08 | 875,000.00 |
| CWHL 2007-5 A5 | Integrity | 02/05/08 | 2,905,800.00 |
| CWHL 2007-5 A5 | Integrity | 02/05/08 | 968,600.00 |
| CWHL 2007-5 A5 | Integrity | 02/05/08 | 968,600.00 |
| CWHL 2007-5 A5 | WSLAC | 02/05/08 | 8,760,987.00 |
| CWHL 2007-5 A5 | WSLAC | 02/05/08 | 968,600.00 |
| CWHL 2007-5 A5 | National Integrity | 02/05/08 | 2,905,800.00 |
| CWHL 2007-5 A5 | National Integrity | 02/05/08 | 968,600.00 |
| CWHL 2007-5 A5 | National Integrity | 02/05/08 | 96,860,000.00 |
| CWHL 2007-14 M | Integrity | 12/27/07 | 2,030,378.76 |
| CWHL 2007-14 M | WSLAC | 12/27/07 | 4,274,481.61 |
| CWHL 2007-14 M | WSLAC | 12/27/07 | 4,274,481.61 |
| CWHL 2007-15 M | Integrity | 10/29/07 | 4,743,519.82 |
| CWHL 2007-15 M | Integrity | 10/29/07 | 4,743,519.82 |
| CWHL 2007-15 M | WSLAC | 10/29/07 | 5,956,627.57 |
| CWHL 2007-15 M | National Integrity | 10/29/07 | 4,743,519.82 |
| CWL 2006-S8 A4 | CLIC | 12/28/06 | 1,000,000.00 |
| CWL 2006-S8 A4 | CLIC | 12/28/06 | 5,000,000.00 |
| CWL 2006-S8 A4 | Integrity | 12/28/06 | 5,000,000.00 |
| CWL 2006-S8 A4 | WSLAC | 12/28/06 | 5,000,000.00 |
| CWL 2006-S8 A4 | WSLAC | 12/28/06 | 2,000,000.00 |
| CWL 2006-S8 A4 | National Integrity | 12/28/06 | 2,000,000.00 |
| CWL 2006-S9 A3 | CLIC | 12/29/06 | 2,000,000.00 |
| CWL 2006-S9 A3 | Integrity | 12/29/06 | 2,000,000.00 |
| CWL 2006-S9 A3 | Integrity | 12/29/06 | 1,000,000.00 |

| Offering and Class | Purchaser | Purchase Date | Purchase Price |
|---|---|---|---|
| CWL 2006-S9 A4 | CLIC | 12/29/06 | 2,500,000.00 |
| CWL 2006-S9 A4 | Integrity | 12/29/06 | 1,000,000.00 |
| CWL 2006-S9 A4 | National Integrity | 12/29/06 | 8,232,000.00 |
| CWL 2006-S9 A4 | WSLIC | 12/29/06 | 1,900,000.00 |
| CWL 2006-S9 A4 | WSLIC | 12/29/06 | 1,900,000.00 |
| CWL 2006-S9 A6 | National Integrity | 12/29/06 | 7,400,000.00 |
| CWL 2006-S9 A6 | WSLIC | 12/29/06 | 1,300,000.00 |
| CWL 2006-S9 A6 | WSLIC | 12/29/06 | 1,300,000.00 |
| CWL 2007-4 A5W | CLIC | 03/29/07 | 1,000,000.00 |
| CWL 2007-4 A5W | Integrity | 03/29/07 | 2,500,000.00 |
| CWL 2007-4 A5W | WSLAC | 03/29/07 | 3,000,000.00 |
| CWL 2007-4 A5W | WSLAC | 03/29/07 | 1,000,000.00 |
| CWL 2007-4 A5W | National Integrity | 03/29/07 | 2,500,000.00 |
| CWL 2007-11 2A1 | Fort Washington | 10/18/07 | 5,718,036.00 |
| CWL 2007-S1 A5 | Fort Washington | 09/26/07 | 3,365,520.00 |
| CWL 2007-S1 A5 | Fort Washington | 09/26/07 | 909,600.00 |
| CWL 2007-S1 A5 | WSLIC | 02/28/07 | 3,700,000.00 |
| CWL 2007-S1 A5 | WSLIC | 09/26/07 | 3,700,000.00 |
| CWL 2007-S1 A5 | Integrity | 09/17/07 | 3,410,000.00 |
| CWL 2007-S1 A5 | Integrity | 09/17/07 | 1,705,000.00 |
| CWL 2007-S1 A5 | WSLAC | 09/17/07 | 5,967,500.00 |
| CWL 2007-S1 A5 | WSLAC | 09/17/07 | 1,705,000.00 |
| CWL 2007-S1 A5 | National Integrity | 09/17/07 | 3,410,000.00 |
| CWL 2007-S1 A5 | National Integrity | 09/17/07 | 852,500.00 |
| CWL 2007-S1 A5 | WSLIC | 02/28/07 | 2,000,000.00 |
| CWL 2007-S1 A5 | WSLIC | 09/26/07 | 1,000,000.00 |
| CWL 2007-S2 A5F | Integrity | 03/30/07 | 4,100,000.00 |
| CWL 2007-S2 A5F | Integrity | 03/30/07 | 2,300,000.00 |
| CWL 2007-S2 A5F | WSLAC | 03/30/07 | 1,000,000.00 |
| CWL 2007-S2 A5F | National Integrity | 03/30/07 | 1000,000.00 |
| CWL 2007-S2 A5F | National Integrity | 03/30/07 | 2,400,000.00 |

| Offering and Class | Purchaser | Purchase Date | Purchase Price |
|---|---|---:|---:|
| CWL 2007-S2 A5F | WSLIC | 03/30/07 | 4,200,000.00 |

**EXHIBIT C – RATINGS**

| Certificate Offering and Class | Original Moody's Rating | Current Moody's Rating | Original Fitch Rating | Current Fitch Rating | Original S&P Rating | Current S&P Rating |
|---|---|---|---|---|---|---|
| CWALT 2005-10CB 1A8 | Aaa | B3 | -- | -- | AAA | AAA |
| CWALT 2005-13CB A8 | Aaa | Caa1 | -- | -- | AAA | BBB+ |
| CWALT 2005-20CB 1A3 | Aaa | Caa2 | -- | -- | AAA | B- |
| CWALT 2005-20CB 1A4 | Aaa | Caa2 | -- | -- | AAA | B- |
| CWALT 2005-26CB A6 | Aaa | Caa2 | -- | -- | AAA | B |
| CWALT 2005-28CB 2A4 | Aaa | Caa2 | -- | -- | AAA | CCC |
| CWALT 2005-30CB 1A6 | Aaa | Caa2 | -- | -- | AAA | B- |
| CWALT 2005-46CB A14 | Aaa | Caa2 | AAA | CC | -- | -- |
| CWALT 2005-47CB A11 | Aaa | Caa2 | -- | -- | AAA | B- |
| CWALT 2005-49CB A3 | Aaa | Caa1 | AAA | BBB | -- | -- |
| CWALT 2005-54CB 1A4 | Aaa | Caa2 | -- | -- | AAA | BB- |
| CWALT 2005-57CB 4A3 | Aaa | Caa2 | AAA | CC | -- | -- |
| CWALT 2005-J1 1A8 | Aaa | Caa1 | -- | -- | AAA | B |
| CWALT 2006-14CB A7 | Aaa | Caa3 | AAA | C | AAA | CCC |
| CWALT 2006-39CB 1A4 | Aaa | Caa3 | AAA | C | AAA | CCC |
| CWALT 2006-7CB 1A14 | Aaa | Ca | -- | -- | AAA | CC |
| CWALT 2007-15CB A6 | Aaa | Caa3 | -- | -- | AAA | CC |
| CWALT 2007-15CB M | -- | -- | -- | -- | AA | D |
| CWALT 2007-16CB M1 | Aa2 | C | -- | -- | AA+ | D |
| CWALT 2007-17CB M1 | Aa2 | C | AA | D | AA+ | D |
| CWALT 2007-21CB 1A6 | Aaa | Caa2 | -- | -- | AAA | CCC |
| CWALT 2007-5CB 1A13 | Aaa | Caa3 | AAA | C | AAA | CCC |
| CWHL 2005-24 A33 | -- | -- | AAA | CCC | AAA | CCC |
| CWHL 2005-24 A7 | -- | -- | AAA | CCC | AAA | CCC |
| CWHL 2005-25 A6 | Aaa | Caa1 | AAA | BBB | -- | -- |
| CWHL 2005-J2 3A14 | Aaa | B3 | AAA | B | -- | -- |
| CWHL 2006-21 A15 | -- | -- | AAA | C | AAA | CCC |

| Certificate Offering and Class | Original Moody's Rating | Current Moody's Rating | Original Fitch Rating | Current Fitch Rating | Original S&P Rating | Current S&P Rating |
|---|---|---|---|---|---|---|
| CWHL 2007-14 M | -- | -- | AA | C | -- | -- |
| CWHL 2007-15 M | -- | -- | AA | D | -- | -- |
| CWHL 2007-5 A5 | Aaa | Caa2 | AAA | CC | AAA | CCC |
| CWL 2006-S8 A4 | Aaa | B3/*- | -- | -- | AAA | B |
| CWL 2006-S9 A3 | Aaa | B3/*- | -- | -- | AAA | B |
| CWL 2006-S9 A4 | Aaa | B3/*- | -- | -- | AAA | B |
| CWL 2006-S9 A6 | Aaa | B3/*- | -- | -- | AAA | B |
| CWL 2007-11 2A1 | Aaae | Baa3 | -- | -- | AAA | AAA/*- |
| CWL 2007-4 A5W | Aaa | Aa3 | -- | -- | AAA | AA+ |
| CWL 2007-S1 A5 | Aaa | B3/*- | -- | -- | AAA | B |
| CWL 2007-S2 A5F | Aaa | B3/*- | -- | -- | AAA | B |

**EXHIBIT D – Delinquency Rates**

| Certificate Offering and Class | Number of Months Since Issuance | Current Number of Loans in Pool | Total % of Current Delinquencies |
|---|---|---|---|
| CWALT 2006-14CB A7 | 12 | 2,206 | 3.27 |
| | 24 | 1,909 | 11.18 |
| | 36 | 1,685 | 22.67 |
| | 48 | 1,495 | 31.77 |
| | 60 | NA | NA |
| CWALT 2006-39CB 1A4 | 12 | 3,466 | 7.17 |
| | 24 | 3,088 | 18.50 |
| | 36 | 2,718 | 33.90 |
| | 48 | 2,420 | 38.09 |
| | 60 | NA | NA |
| CWALT 2007-5CB 1A13 | 12 | 6,647 | 7.26 |
| | 24 | 6,026 | 21.64 |
| | 36 | 5,393 | 33.95 |
| | 48 | 4,886 | 36.95 |
| | 60 | NA | NA |
| CWALT 2007-15CB M | 12 | 2,631 | 3.20 |
| | 24 | 2,350 | 15.57 |
| | 36 | 2,112 | 24.39 |
| | 48 | NA | NA |
| | 60 | NA | NA |

| Certificate Offering and Class | Number of Months Since Issuance | Current Number of Loans in Pool | Total % of Current Delinquencies |
|---|---|---|---|
| CWALT 2007-15CB A6 | 12 | 2,631 | 3.20 |
| | 24 | 2,350 | 15.57 |
| | 36 | 2,112 | 24.39 |
| | 48 | NA | NA |
| | 60 | NA | NA |
| CWALT 2007-21CB 1A6 | 12 | 3,069 | 2.77 |
| | 24 | 2,652 | 12.26 |
| | 36 | 2,371 | 19.17 |
| | 48 | NA | NA |
| | 60 | NA | NA |
| CWALT 2007-17CB M1 | 12 | 2,949 | 2.73 |
| | 24 | 2,665 | 12.97 |
| | 36 | 2,436 | 20.95 |
| | 48 | NA | NA |
| | 60 | NA | NA |
| CWALT 2007-16CB M1 | 12 | 6,642 | 6.58 |
| | 24 | 6,000 | 19.86 |
| | 36 | 5,401 | 30.43 |
| | 48 | NA | NA |
| | 60 | NA | NA |

| Certificate Offering and Class | Number of Months Since Issuance | Current Number of Loans in Pool | Total % of Current Delinquencies |
|---|---|---|---|
| CWHL 2006-21 A15 | 12 | 1,552 | 1.61 |
| | 24 | 1,440 | 6.12 |
| | 36 | 1,232 | 15.85 |
| | 48 | 1,061 | 20.42 |
| | 60 | NA | NA |
| CWHL 2007-14 M | 12 | 1,142 | 1.02 |
| | 24 | 1,014 | 6.21 |
| | 36 | 868 | 11.64 |
| | 48 | NA | NA |
| | 60 | NA | NA |
| CWHL 2007-5 A5 | 12 | 1,328 | 1.40 |
| | 24 | 1,256 | 7.77 |
| | 36 | 1,073 | 14.81 |
| | 48 | 894 | 19.90 |
| | 60 | NA | NA |
| CWALT 2005-J1 1A8 | 12 | 1,974 | 2.78 |
| | 24 | 1,667 | 3.17 |
| | 36 | 1,465 | 3.66 |
| | 48 | 1,314 | 5.81 |
| | 60 | 1,119 | 12.92 |

| Certificate Offering and Class | Number of Months Since Issuance | Current Number of Loans in Pool | Total % of Current Delinquencies |
|---|---|---|---|
| CWALT 2005-46CB A14 | 12 | 5,898 | 1.63 |
| | 24 | 5,195 | 2.78 |
| | 36 | 4,770 | 5.69 |
| | 48 | 4,335 | 11.75 |
| | 60 | 3,962 | 17.96 |
| CWALT 2005-13CB A8 | 12 | 3,631 | 2.25 |
| | 24 | 3,161 | 2.41 |
| | 36 | 2,805 | 4.03 |
| | 48 | 2,579 | 7.95 |
| | 60 | 2,304 | 15.12 |
| CWALT 2005-10CB 1A8 | 12 | 5,835 | 2.13 |
| | 24 | 5,092 | 2.99 |
| | 36 | 4,537 | 4.56 |
| | 48 | 4,102 | 8.49 |
| | 60 | 3,683 | 15.08 |
| CWALT 2005-20CB 1A3 | 12 | 5,959 | 1.86 |
| | 24 | 5,129 | 2.61 |
| | 36 | 4,600 | 5.89 |
| | 48 | 4,145 | 11.30 |
| | 60 | 3,739 | 18.15 |

| Certificate Offering and Class | Number of Months Since Issuance | Current Number of Loans in Pool | Total % of Current Delinquencies |
|---|---|---|---|
| CWALT 2005-20CB 1A4 | 12 | 5,959 | 1.86 |
| | 24 | 5,129 | 2.61 |
| | 36 | 4,600 | 5.89 |
| | 48 | 4,145 | 11.30 |
| | 60 | 3,739 | 18.15 |
| CWALT 2005-26CB A6 | 12 | 2,571 | 1.42 |
| | 24 | 2,169 | 2.81 |
| | 36 | 1,932 | 5.34 |
| | 48 | 1,748 | 10.93 |
| | 60 | 1,586 | 18.83 |
| CWALT 2005-28CB 2A4 | 12 | 4,350 | 2.78 |
| | 24 | 3,667 | 3.81 |
| | 36 | 3,208 | 8.05 |
| | 48 | 2,918 | 14.65 |
| | 60 | 2,653 | 21.09 |
| CWALT 2005-30CB 1A6 | 12 | 2,738 | 2.18 |
| | 24 | 2,346 | 2.93 |
| | 36 | 2,101 | 5.35 |
| | 48 | 1,911 | 13.21 |
| | 60 | 1,718 | 19.40 |

| Certificate Offering and Class | Number of Months Since Issuance | Current Number of Loans in Pool | Total % of Current Delinquencies |
|---|---|---|---|
| CWALT 2005-47CB A11 | 12 | 1,766 | 2.12 |
| | 24 | 1,557 | 4.29 |
| | 36 | 1,424 | 7.99 |
| | 48 | 1,273 | 18.02 |
| | 60 | 1,136 | 25.22 |
| CWALT 2005-49CB A3 | 12 | 2,628 | 1.97 |
| | 24 | 2,310 | 3.37 |
| | 36 | 2,092 | 6.57 |
| | 48 | 1,865 | 14.01 |
| | 60 | 1,698 | 19.22 |
| CWALT 2005-54CB 1A4 | 12 | 4,089 | 1.32 |
| | 24 | 3,617 | 3.24 |
| | 36 | 3,317 | 7.58 |
| | 48 | 2,994 | 15.94 |
| | 60 | 2,711 | 21.30 |
| CWALT 2006-7CB 1A14 | 12 | 2,303 | 4.96 |
| | 24 | 1,988 | 14.69 |
| | 36 | 1,814 | 29.74 |
| | 48 | 1,599 | 40.66 |
| | 60 | 1,445 | 41.49 |
| CWL 2006-S9 A3 | 12 | 17,244 | 2.57 |
| | 24 | | 9.60 |

| Certificate Offering and Class | Number of Months Since Issuance | Current Number of Loans in Pool | Total % of Current Delinquencies |
|---|---|---|---|
|  |  | 14,821 |  |
|  | 36 | 11,434 | 9.08 |
|  | 48 | 9,253 | 7.17 |
|  | 60 | NA | NA |
| CWL 2006-S9 A4 | 12 | 17,244 | 2.57 |
|  | 24 | 14,821 | 9.60 |
|  | 36 | 11,434 | 9.08 |
|  | 48 | 9,253 | 7.17 |
|  | 60 | NA | NA |
| CWL 2006-S9 A6 | 12 | 17,244 | 2.57 |
|  | 24 | 14,821 | 9.60 |
|  | 36 | 11,434 | 9.08 |
|  | 48 | 9,253 | 7.17 |
|  | 60 | NA | NA |
| CWL 2007-4 A5W | 12 | 5,186 | 13.86 |
|  | 24 | 4,745 | 36.34 |
|  | 36 | 4,490 | 46.97 |
|  | 48 | 4,246 | 50.57 |
|  | 60 | NA | NA |
| CWL 2006-S8 A4 | 12 | 16,717 | 3.76 |
|  | 24 |  | 13.34 |

| Certificate Offering and Class | Number of Months Since Issuance | Current Number of Loans in Pool | Total % of Current Delinquencies |
|---|---|---|---|
| | | 14,602 | |
| | 36 | 10,954 | 10.78 |
| | 48 | 8,865 | 8.56 |
| | 60 | NA | NA |
| CWHL 2005-25 A6 | 12 | 643 | 0.78 |
| | 24 | 607 | 0.96 |
| | 36 | 584 | 3.86 |
| | 48 | 526 | 9.83 |
| | 60 | 459 | 16.22 |
| CWHL 2005-24 A7 | 12 | 1,827 | 0.79 |
| | 24 | 1,684 | 1.71 |
| | 36 | 1,608 | 4.25 |
| | 48 | 1,428 | 10.09 |
| | 60 | 1,270 | 14.97 |

| CWHL 2005-24 A33 | 12 | 1,827 | 0.79 |
|---|---|---|---|
| | 24 | 1,684 | 1.71 |
| | 36 | 1,608 | 4.25 |
| | 48 | 1,428 | 10.09 |
| | 60 | 1,270 | 14.97 |
| CWHL 2005-J2 3A14 | 12 | 1,133 | 0.53 |
| | 24 | | 0.96 |

| Certificate Offering and Class | Number of Months Since Issuance | Current Number of Loans in Pool | Total % of Current Delinquencies |
|---|---|---|---|
| | | 1,054 | |
| | 36 | 1,004 | 2.59 |
| | 48 | 894 | 7.33 |
| | 60 | 788 | 15.18 |
| CWL 2007-S1 A5 | 12 | 27,092 | 4.21 |
| | 24 | 23,313 | 12.74 |
| | 36 | 18,464 | 15.11 |
| | 48 | 14,391 | 9.36 |
| | 60 | NA | NA |
| CWL 2007-S2 A5F | 12 | 18,517 | 3.70 |
| | 24 | 15,941 | 10.31 |
| | 36 | 12,668 | 9.55 |
| | 48 | 10,363 | 7.27 |
| | 60 | NA | NA |

| Certificate Offering and Class | Number of Months Since Issuance | Current Number of Loans in Pool | Total % of Current Delinquencies |
|---|---|---|---|
| CWHL 2007-15 M | 12 | 1,560 | 3.68 |
| | 24 | 1,370 | 14.95 |
| | 36 | 1,199 | 21.05 |
| | 48 | NA | NA |
| | 60 | NA | NA |
| CWL 2007-11 2A1 | 12 | 3,307 | 27.81 |
| | 24 | | 50.92 |

| Certificate Offering and Class | Number of Months Since Issuance | Current Number of Loans in Pool | Total % of Current Delinquencies |
|---|---|---|---|
| | | 2,995 | |
| | 36 | 2,789 | 61.84 |
| | 48 | NA | NA |
| | 60 | NA | NA |

**Exhibit E:  Misrepresentations in the Offering Documents for CWALT 2005-10CB**

1.      Collateral type: primarily 30-year and 15-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgage loans: 5,326.

3.      **Untrue and misleading statements about underwriting guidelines in the CWALT 2005-10CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards." CWALT 2005-10CB Pro. Supp. p. S-37.

- Countrywide further represented in the Offering Documents that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral." CWALT 2005-10CB Pro. Supp. p. S-38.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWALT 2005-10CB Offering Documents:**

- In the prospectus supplement, CWALT 2005-10CB Pro. Supp. p. S-26, S-33, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Investment Property | 526 | 8.92% |
| Primary Residence | 4,057 | 89.33% |
| Secondary Residence | 78 | 1.76% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Investment Property | 144 | 16.42% |
| Primary Residence | 511 | 81.90% |
| Secondary Residence | 10 | 1.69% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

    5.    **Untrue and misleading statements about LTV ratios in the CWALT 2005-10CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2005-10CB Pro. Supp. pp. S-23, S-30. The statistics in

the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-23 made the following untrue and misleading statements about the 4,661 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial LTV ratio was 70.14%; (ii) only 85 loans (1.55% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 527 loans (9.99% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-30 made the following untrue and misleading statements about the 665 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial LTV ratio was 65.84%; (ii) only 4 loans (0.76% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 87 loans (11.58% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a

3

replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWALT 2005-10CB Pro. Supp. p. S-38.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan-to-Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan-to-Value Ratio may not exceed 100%." CWALT 2005-10CB Pro. Supp. p. S-38.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 75%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2005-10CB Pro. Supp. pp. S-39-40.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

**6.     Untrue and misleading statements about debt-to-income ratios in the CWALT 2005-10CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the

4

borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt-to-income" ratios) are within acceptable limits. The maximum acceptable debt-to-income ratio, which is determined on a loan-by-loan basis varies depending on a number of underwriting criteria, including the Loan-to-Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt-to-income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWALT 2005-10CB Pro. Supp. p. S-38.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 33% and a debt-to income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2005-10CB Pro. Supp. p. S-39.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 36% and a debt-to income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan-to-Value Ratio exceeds 80%, the

maximum permitted debt-to-income ratios are 33% and 38%, respectively." CWALT 2005-10CB Pro. Supp. p. S-41.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

**7.    Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2005-10CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one- to four-family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificate holders adversely." CWALT 2005-10CB Pro. Supp. p. S-15.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

**8.    Untrue and misleading statements about credit ratings in the CWALT 2005-10CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement.

6

Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans.  These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any."  CWALT 2005-10CB Prospectus p. 92.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

**9.**   **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2005-10CB  Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower."  CWALT 2005-10CB Pro. Supp. p. S-38.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

**10.**   **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-22 made the following untrue and misleading statements about the 4,661 initial mortgage loans in the Loan Group 1 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 62.95%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 12.49%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 19.23%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 3.21%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 0.88%; (vi.) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.94%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.30%.

- Among other statistics, the chart on page S-29 made the following untrue and misleading statements about the 665 initial mortgage loans in the Loan Group 2 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 37.58%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 29.11%; (iii) Percent of Mortgage Loans allegedly issued according to

Countrywide's Preferred Documentation Loan Program: 20.56%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 8.15%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 4.31%; (vi.) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.29%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

**Exhibit F:  Misrepresentations in the Offering Documents for CWALT 2005-13CB**

1.        Collateral type:  primarily of a pool of 30-year and 15-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.        Initial number of mortgage loans:  3,241.

3.        **Untrue and misleading statements about underwriting guidelines in the CWALT 2005-13CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards."  CWALT 2005-13CB Pro. Supp. S-26.

- Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWALT 2005-13CB Pro. Supp. S-27.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.        **Untrue and misleading statements about owner occupancy in the CWALT 2005-13CB Offering Documents:**

- In the prospectus supplement, CWALT 2005-13CB Pro. Supp. S-22, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Initial Mortgage Loans |
|---|---|---|
| Investment Property | 375 | 8.83% |
| Primary Residence | 2,797 | 88.97% |
| Secondary Residence | 69 | 2.21% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWALT 2005-13CB Offering Documents:**

- The prospectus supplement provides a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the original LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2005-13CB Pro. Supp. S-17-S-20, S-22-S-23.

- Among other statistics, the chart on S-20 makes the following untrue and misleading statements about the 3,241 initial mortgage loans: (i) the weighted average original LTV ratio was 69.99%; (ii) only 64 loans (1.93% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 406 loans (11.36% of the total initial mortgage loans) had an LTV ratio greater than 80%.

2

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWALT 2005-13CB Pro. Supp. S-28.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan-to-Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan-to-Value Ratio may not exceed 100%." CWALT 2005-13CB Pro. Supp. p. S-27.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum LTV ratio was up to 75%; under the CLUES Plus Documentation Program, the maximum LTV ratio was up to 75%; and

under the Streamlined Documentation Program, the maximum LTV ratio
was up to 95%.  CWALT 2005-13CB Pro. Supp. S-29-30.

- Countrywide's statements about LTVs are untrue and misleading for the
  reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the
  Complaint.

6.     **Untrue and misleading statements about debt-to-income ratios in the
CWALT 2005-13CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide
  represented that "Under [Countrywide's underwriting] standards, a
  prospective borrower must generally demonstrate that the ratio of the
  borrower's monthly housing expenses (including principal and interest on
  the proposed mortgage loan and, as applicable, the related monthly portion
  of property taxes, hazard insurance and mortgage insurance) to the
  borrower's monthly gross income and the ratio of total monthly debt to the
  monthly gross income (the "debt-to-income" ratios) are within acceptable
  limits.  The maximum acceptable debt-to-income ratio, which is
  determined on a loan-by-loan basis varies depending on a number of
  underwriting criteria, including the Loan-to-Value Ratio, loan purpose,
  loan amount and credit history of the borrower.  In addition to meeting the
  debt-to-income ratio guidelines, each prospective borrower is required to
  have sufficient cash resources to pay the down payment and closing
  costs."  CWALT 2005-13CB Pro. Supp. p. S-27.

4

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 33% and a debt-to-income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2005-10CB Pro. Supp. S-29.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 36% and a debt-to-income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan-to-Value Ratio exceeds 80%, the maximum permitted debt-to-income ratios are 33% and 38%, respectively." CWALT 2005-13CB Pro. Supp. S-30.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2005-13CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one- to four-family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection

was not made in a manner intended to affect the interests of the certificateholders adversely." CWALT 2005-13CB Pro. Supp. S-14.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2005-13CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement. Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any." CWALT 2005-13CB Prospectus p. 92.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are

also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9.       **Untrue and misleading statements about loan servicing in the CWALT 2005-13CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "In its capacity as master servicer, Countrywide Servicing will be responsible for servicing the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. Countrywide Servicing may perform any of its obligations under the pooling and servicing agreement through one or more subservicers, which may include Countrywide Home Loans. Notwithstanding any subservicing arrangement, Countrywide Servicing will remain liable for its servicing duties and obligations under the pooling and servicing agreement as if Countrywide Servicing alone were servicing the mortgage loans." CWALT 2005-13CB Pro. Supp. S-32.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10.      **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2005-13CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower."  CWALT 2005-13CB Pro. Supp. S-27.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-20 made the following untrue and misleading statements about the 3,241 initial mortgage loans: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 62.19%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 12.65%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 19.81%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 3.41%; Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 0.82%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.75%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.37%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

8

<u>**Exhibit G:  Misrepresentations in the Offering Documents for CWALT 2005-20CB**</u>

1.     Collateral type:  primarily of a pool consisting of three loan groups of 30-year and one loan group of 15-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.     Initial number of mortgage loans:  5,807.

3.     **Untrue and misleading statements about underwriting guidelines in the CWALT 2005-20CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards."  CWALT 2005-20CB Pro. Supp. S-55.

- Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWALT 2005-20CB Pro. Supp. S-56.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.     **Untrue and misleading statements about owner occupancy in the CWALT 2005-20CB Offering Documents:**

- In the prospectus supplement, CWALT 2005-20CB Pro. Supp. S-26, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Initial Mortgage Loans |
|---|---|---|
| Investment Property | 241 | 8.48% |
| Primary Residence | 1,899 | 88.74% |
| Secondary Residence | 66 | 2.78% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Initial Mortgage Loans |
|---|---|---|
| Investment Property | 153 | 10.97% |
| Primary Residence | 956 | 85.53% |
| Secondary Residence | 38 | 3.50% |

**LOAN GROUP 3**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Initial Mortgage Loans |
|---|---|---|
| Investment Property | 201 | 9.23% |
| Primary Residence | 1,473 | 88.52% |
| Secondary Residence | 41 | 2.24% |

**LOAN GROUP 4**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Initial Mortgage Loans |
|---|---|---|
| Investment Property | 180 | 16.99% |
| Primary Residence | 529 | 78.39% |
| Secondary Residence | 30 | 4.62% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWALT 2005-20CB Offering Documents:**

- The prospectus supplement provides a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the original LTV characteristics of the loans and the mortgage pool as a whole.  CWALT 2005-20CB Pro. Supp. S-20-50.

- Among other statistics, the chart on S-23 makes the following untrue and misleading statements about the Loan Group 1:  (i) the weighted average original LTV ratio was 74.46%; (ii) only 54 loans (2.46% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 303 loans (12.40% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on S-32 makes the following untrue and misleading statements about the Loan Group 2:  (i) the weighted average original LTV ratio was 74.17%; (ii) only 28 loans (2.36% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 161 loans (12.88% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on S-41 makes the following untrue and misleading statements about the Loan Group 3:  (i) the weighted average

original LTV ratio was 73.40%; (ii) only 39 loans (2.08% of the total

initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 215

loans (10.96% of the total initial mortgage loans) had an LTV ratio greater

than 80%.

- Among other statistics, the chart on S-48 makes the following untrue and

  misleading statements about the Loan Group 4: (i) the weighted average

  original LTV ratio was 64.69%; (ii) only 4 loans (0.42% of the total initial

  mortgage loans) had an LTV ratio greater than 90%; (iii) only 88 loans

  (10.95% of the total initial mortgage loans) had an LTV ratio greater than

  80%.

- In the registration statement and prospectus supplement, Countrywide

  stated the following: "Except with respect to mortgage loans originated

  pursuant to its Streamlined Documentation Program, Countrywide Home

  Loans obtains appraisals from independent appraisers or appraisal services

  for properties that are to secure mortgage loans. The appraisers inspect and

  appraise the proposed mortgaged property and verify that the property is

  in acceptable condition. Following each appraisal, the appraiser prepares

  a report which includes a market data analysis based on recent sales of

  comparable homes in the area and, when deemed appropriate, a

  replacement cost analysis based on the current cost of constructing a

  similar home. All appraisals are required to conform to Fannie Mae or

  Freddie Mac appraisal standards then in effect." CWALT 2005-20CB

  Pro. Supp. S-56.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan - to - Value Ratio may not exceed 100%." CWALT 2005-20CB Pro. Supp. S-56.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum LTV ratio was up to 75%; under the CLUES Plus Documentation Program, the maximum LTV ratio was up to 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was up to 95%. CWALT 2005-20CB Pro. Supp. S-58.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWALT 2005-20CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the

monthly gross income (the "debt - to - income" ratios) are within acceptable limits. The maximum acceptable debt - to - income ratio, which is determined on a loan - by - loan basis varies depending on a number of underwriting criteria, including the Loan - to - Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWALT 2005-20CB Pro. Supp. S-56.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2005-20CB Pro. Supp. S-57.

- The prospectus supplement also stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively." CWALT 2005-20 Pro. Supp. S-59.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7.   **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2005-20CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWALT 2005-20CB Pro. Supp. S-16.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8.   **Untrue and misleading statements about credit ratings in the CWALT 2005-20CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement. Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying

mortgage loans and the credit quality of the credit enhancer or guarantor, if any."  CWALT 2005-20CB Prospectus p. 93.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9.    **Untrue and misleading statements about loan servicing in the CWALT 2005-20CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "In its capacity as master servicer, Countrywide Servicing will be responsible for servicing the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. Countrywide Servicing may perform any of its obligations under the pooling and servicing agreement through one or more subservicers, which may include Countrywide Home Loans. Notwithstanding any subservicing arrangement, Countrywide Servicing will remain liable for its servicing duties and obligations under the pooling and servicing agreement as if Countrywide Servicing alone were servicing the mortgage loans." CWALT 2005-20CB Pro. Supp. S-61.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2005-20CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWALT 2005-20CB Pro. Supp. S-56.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-21 made the following untrue and misleading statements about the 2,206 initial mortgage loans in the Loan Group 1 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 65.24%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 14.58%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 15.15%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 3.16%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated

9

Income/Stated Asset Documentation Loan Program: 1.69%; (vi.) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.12%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.06%.

- Among other statistics, the chart on page S-31 made the following untrue and misleading statements about the 1,147 initial mortgage loans in the Loan Group 2 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 55.76%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 22.17%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 16.30%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 3.57%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 1.77%; (vi.) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program:  0.36%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.08%.

- Among other statistics, the chart on page S-40 made the following untrue and misleading statements about the 1,715 initial mortgage loans in the

Loan Group 3 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 52.81%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 20.31%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 18.96%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 4.76%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 2.53%; (vi.) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.64%.

- Among other statistics, the chart on page S-48 made the following untrue and misleading statements about the 739 initial mortgage loans in the Loan Group 4 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 27.97%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 39.66%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 16.53%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 11.34%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated

11

Income/Stated Asset Documentation Loan Program: 3.74%; (vi.) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.76%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

**Exhibit H:  Misrepresentations in the Offering Documents for CWALT 2005-26CB**

1.      Collateral type:  primarily of a pool of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  2092.

3.      **Untrue and misleading statements about underwriting guidelines in the CWALT 2005-26CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards."  CWALT 2005-26CB Pro. Supp. S-26.

- Countrywide further represented in the Offering Documents that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWALT 2005-26CB Pro. Supp. S-27.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWALT 2005-26CB Offering Documents:**

- In the prospectus supplement, CWALT 2005-26CB Pro. Supp. p. S-22, S-33, in a table labeled "Occupancy Types," Countrywide made the

following representations about the percentage of owner-occupied

properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Investment Property | 261 | 10.36% |
| Primary Residence | 1,783 | 87.43% |
| Secondary Residence | 48 | 2.21% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5.     **Untrue and misleading statements about LTV ratios in the CWALT**

**2005-26CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2005-26CB Pro. Supp. pp. S-17-23. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-20 made the following untrue and misleading statements about the 2,092 initial mortgage loans: (i) the weighted average initial LTV ratio was 74.86%; (ii) only 53 loans (2.50% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 284 loans (12.44% of the total initial mortgage loans) had an LTV ratio greater than 80%.

2

- In the registration statement and prospectus supplement, Countrywide stated the following:  "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition.  Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home.  All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect."  CWALT 2005-26CCB Pro. Supp. S-28.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan-to-Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan-to-Value Ratio may not exceed 100%."  CWALT 2005-26CB Pro. Supp. S-27.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 75%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was

3

75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2005-26CB Pro. Supp. S-29.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWALT 2005-26CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt-to-income" ratios) are within acceptable limits. The maximum acceptable debt-to-income ratio, which is determined on a loan-by-loan basis varies depending on a number of underwriting criteria, including the Loan-to-Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt-to-income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWALT 2005-26CB Pro. Supp. S-27.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 33% and a debt-to-income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2005-26CB Pro. Supp. S-29.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 36% and a debt-to-income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan-to-Value Ratio exceeds 80%, the maximum permitted debt-to-income ratios are 33% and 38%, respectively." CWALT 2005-26CB Pro. Supp. S-30.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2005-26CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one- to four-family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection

was not made in a manner intended to affect the interests of the certificateholders adversely." CWALT 2005-26CB Pro. Supp. S-14.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2005-26CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement. Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any." CWALT 2005-26CB Prospectus p. 93.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are

also untrue and misleading for the reasons set forth in Section IV of the
Complaint.

9. **Untrue and misleading statements about loan servicing in the
CWALT 2005-26CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide
  represented that "In its capacity as master servicer, Countrywide Servicing
  will be responsible for servicing the mortgage loans in accordance with
  the terms set forth in the pooling and servicing agreement. Countrywide
  Servicing may perform any of its obligations under the pooling and
  servicing agreement through one or more subservicers, which may include
  Countrywide Home Loans. Notwithstanding any subservicing
  arrangement, Countrywide Servicing will remain liable for its servicing
  duties and obligations under the pooling and servicing agreement as if
  Countrywide Servicing alone were servicing the mortgage loans."
  CWALT 2005-26CB Pro. Supp. S-32.

- This statement was untrue and misleading as set forth in Section IV of the
  Complaint.

10. **Untrue and misleading statements regarding case-by-case
underwriting exceptions in the CWALT 2005-13CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide
  represented that "Exceptions to Countrywide Home Loans' underwriting
  guidelines may be made if compensating factors are demonstrated by a
  prospective borrower." CWALT 2005-26CB Pro. Supp. S-27.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-19 made the following untrue and misleading statements about the 2,092 initial mortgage loans: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 61.55%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 18.48%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 14.75%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 3.60%; Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 1.34%; (vi.) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.26%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.01%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

8

**Exhibit I: Misrepresentations in the Offering Documents for CWALT 2005-28CB**

1.  Collateral type: primarily of a pool consisting of three loan groups of 30-year and one loan group of 15-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.  Initial number of mortgage loans: 4,511.

3.  **Untrue and misleading statements about underwriting guidelines in the CWALT 2005-28CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards." CWALT 2005-28CB Pro. Supp. S-54.

- Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral." CWALT 2005-28CB Pro. Supp. S-55.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.  **Untrue and misleading statements about owner occupancy in the CWALT 2005-28CB Offering Documents:**

- In the prospectus supplement, CWALT 2005-28CB Pro. Supp. S-27, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
| --- | --- | --- |
| Investment Property | 302 | 11.77% |
| Primary Residence | 1,848 | 84.64% |
| Secondary Residence | 70 | 3.59% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 2 |
| --- | --- | --- |
| Investment Property | 277 | 19.21% |
| Primary Residence | 828 | 78.25% |
| Secondary Residence | 26 | 2.55% |

**LOAN GROUP 3**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 3 |
| --- | --- | --- |
| Investment Property | 145 | 17.29% |
| Primary Residence | 534 | 80.60% |
| Secondary Residence | 16 | 2.11% |

**LOAN GROUP 4**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 4 |
| --- | --- | --- |
| Investment Property | 73 | 12.08% |
| Primary Residence | 367 | 82.41% |
| Secondary Residence | 25 | 5.51% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWALT 2005-28CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2005-28CB Pro. Supp. pp. S-20-50. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-24 made the following untrue and misleading statements about the 2,220 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial LTV ratio was 73.41%; (ii) only 58 loans (2.74% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 385 loans (16.96% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-30 made the following untrue and misleading statements about the 1,131 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial LTV ratio was 70.68%; (ii) only 17 loans (1.55% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 149 loans (11.07% of the total initial mortgage loans) had an LTV ratio greater than 80%.

3

- Among other statistics, the chart on page S-39 made the following untrue and misleading statements about the 695 initial mortgage loans in the Loan Group 3 collateral pool: (i) the weighted average initial LTV ratio was 76.95%; (ii) only 50 loans (6.54% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 173 loans (23.14% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-47 made the following untrue and misleading statements about the 465 initial mortgage loans in the Loan Group 4 collateral pool: (i) the weighted average initial LTV ratio was 62.68%; (ii) only 5 loans (1.25% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 32 loans (7.19% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or

4

Freddie Mac appraisal standards then in effect." CWALT 2005-28CB Pro. Supp. S-56.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan - to - Value Ratio may not exceed 100%." CWALT 2005-28CB Pro. Supp. S-55.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 75%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2005-28CB Pro. Supp. pp. S-57.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt to income ratios in the CWALT 2005-28CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion

5

of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt - to - income" ratios) are within acceptable limits. The maximum acceptable debt - to - income ratio, which is determined on a loan - by - loan basis varies depending on a number of underwriting criteria, including the Loan - to - Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWALT 2005-28CB Pro. Supp. S-55.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2005-28CB Pro. Supp. S-57.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively." CWALT 2005-28CB Pro. Supp. S-58.

6

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2005-28CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWALT 2005-28CB Pro. Supp. S-16.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2005-28CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement. Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying

7

mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any."  CWALT 2005-28CB Prospectus p. 93.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWALT 2005-28CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "In its capacity as master servicer, Countrywide Servicing will be responsible for servicing the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. Countrywide Servicing may perform any of its obligations under the pooling and servicing agreement through one or more subservicers, which may include Countrywide Home Loans. Notwithstanding any subservicing arrangement, Countrywide Servicing will remain liable for its servicing duties and obligations under the pooling and servicing agreement as if

Countrywide Servicing alone were servicing the mortgage loans."
CWALT 2005-28CB Pro. Supp. S-60.

- This statement was untrue and misleading as set forth in Section IV of the
  Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2005-28CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide
  represented that "Exceptions to Countrywide Home Loans' underwriting
  guidelines may be made if compensating factors are demonstrated by a
  prospective borrower."  CWALT 2005-28CB Pro. Supp. S-55.

- This statement was untrue and misleading for the reasons set forth in
  Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-23 made the following untrue
  and misleading statements about the 2,220 initial mortgage loans in the
  Loan Group 1 collateral pool:  (i) Percent of Mortgage Loans allegedly
  issued according to Countrywide's Full/Alternative Documentation Loan
  Program:  50.88%; (ii) Percent of Mortgage Loans allegedly issued
  according to Countrywide's Reduced Documentation Loan Program:
  25.60%; (iii) Percent of Mortgage Loans allegedly issued according to
  Countrywide's Preferred Documentation Loan Program:  14.79%; (iv)
  Percent of Mortgage Loans allegedly issued according to Countrywide's

9

No Income/No Asset Documentation Loan Program: 5.68%; Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 2.76%; (vi.) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.24%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.07%.

- Among other statistics, the chart on page S-30 made the following untrue and misleading statements about the 1,131 mortgage loans in the Loan Group 2 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 30.32%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 44.41%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 8.50%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 12.27%; Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 4.50%.

- Among other statistics, the chart on page S-38 made the following untrue and misleading statements about the 695 initial mortgage loans in the Loan Group 3 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan

10

Program: 53.26%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 19.35%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 13.60%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 12.54%; Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 1.21%; (vi.) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.04%.

- Among other statistics, the chart on page S-46 made the following untrue and misleading statements about the 465 initial mortgage loans: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 21.31%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 39.83%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 17.66%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 14.06%; Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 6.72%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program:

11

0.29%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.13%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

**Exhibit J:  Misrepresentations in the Offering Documents for CWALT 2005-30CB**

1.  Collateral type:  primarily of a pool consisting of two loan groups of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.  Initial number of mortgage loans:  2,632.

3.  **Untrue and misleading statements about underwriting guidelines in the CWALT 2005-30CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards."  CWALT 2005-30CB Pro. Supp. S-37.

- Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWALT 2005-30CB Pro. Supp. S-38.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.  **Untrue and misleading statements about owner occupancy in the CWALT 2005-30CB Offering Documents:**

- In the prospectus supplement, CWALT 2005-30CB Pro. Supp. S-25, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Investment Property | 338 | 12.78% |
| Primary Residence | 1,698 | 83.43% |
| Secondary Residence | 76 | 3.79% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 2 |
|---|---|---|
| Investment Property | 118 | 18.71% |
| Primary Residence | 382 | 77.35% |
| Secondary Residence | 20 | 3.94% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWALT 2005-30CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2005-30CB Pro. Supp. pp. S-18-33. The statistics in the

2

pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-22 made the following untrue and misleading statements about the 2,112 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial LTV ratio was 73.42%; (ii) only 64 loans (3.18% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 337 loans (15.72% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-30 made the following untrue and misleading statements about the 1,131 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial LTV ratio was 71.86%; (ii) only 6 loans (0.97% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 74 loans (13.03% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a

3

replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWALT 2005-30CB Pro. Supp. S-38.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan - to - Value Ratio may not exceed 100%." CWALT 2005-30CB Pro. Supp. S-38.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 75%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2005-30CB Pro. Supp. pp. S-40.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWALT 2005-30CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the

4

borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt - to - income" ratios) are within acceptable limits. The maximum acceptable debt - to - income ratio, which is determined on a loan - by - loan basis varies depending on a number of underwriting criteria, including the Loan - to - Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs."  CWALT 2005-30CB Pro. Supp. S-38.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%."  CWALT 2005-30CB Pro. Supp. S-39.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio

5

exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively."  CWALT 2005-30CB Pro. Supp. S-41.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2005-30CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely."  CWALT 2005-30CB Pro. Supp. S-15.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2005-30CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement.

6

Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any." CWALT 2005-30CB Prospectus p. 93.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9.  **Untrue and misleading statements about loan servicing in the CWALT 2005-30CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "In its capacity as master servicer, Countrywide Servicing will be responsible for servicing the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. Countrywide Servicing may perform any of its obligations under the pooling and servicing agreement through one or more subservicers, which may include Countrywide Home Loans. Notwithstanding any subservicing arrangement, Countrywide Servicing will remain liable for its servicing

7

duties and obligations under the pooling and servicing agreement as if Countrywide Servicing alone were servicing the mortgage loans." CWALT 2005-30CB Pro. Supp. S-42.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2005-30CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWALT 2005-30CB Pro. Supp. S-38.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-21 made the following untrue and misleading statements about the 2,112 initial mortgage loans in the Loan Group 1 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 53.43%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 24.56%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 12.27%; (iv)

Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 6.66%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 2.88%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.14%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.07%.

- Among other statistics, the chart on page S-29 made the following untrue and misleading statements about the 520 mortgage loans in the Loan Group 2 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 47.39%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 24.06%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 14.47%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 7.08%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 6.11%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.46%; (vii) Percent of

Mortgage Loans allegedly issued according to Countrywide's CLUES

Documentation Loan Program: 0.44%

- These statements were untrue and misleading for the reasons set forth in

  Section IV of the Complaint.

<u>**Exhibit K:  Misrepresentations in the Offering Documents for CWALT 2005-46CB**</u>

1.      Collateral type:  primarily of a pool of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  6,027.

3.      **Untrue and misleading statements about underwriting guidelines in the CWALT 2005-46CB Offering Documents:**

   •   In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards."  CWALT 2005-46CB Pro. Supp. S-27.

   •   Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWALT 2005-46CB Pro. Supp. S-28.

   •   Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWALT 2005-46CB Offering Documents:**

- In the prospectus supplement, CWALT 2005-46CB Pro. Supp. S-23, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans |
|---|---|---|
| Investment Property | 813 | 11.84% |
| Primary Residence | 4,966 | 83.98% |
| Secondary Residence | 248 | 4.18% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5.     **Untrue and misleading statements about LTV ratios in the CWALT 2005-46CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2005-46CB Pro. Supp. pp. S-17-24. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-21 made the following untrue and misleading statements about the 6,027 initial mortgage loans collateral pool: (i) the weighted average initial LTV ratio was 71.79%; (ii) only 158 loans (2.62% of the total initial mortgage loans) had an LTV ratio greater

than 90%; (iii) only 451 loans (7.26% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program and 191 Initial Mortgage Loans with an aggregate State Principal Balance as of the Initial Cut Off Date of approximately $35,212,925.28 whose values were confirmed with a Fannie Mae proprietary automated valuation model, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition.  Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home.  All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect."  CWALT 2005-46CB Pro. Supp. S-29.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80%

3

and the combined Loan - to - Value Ratio may not exceed 100%."
CWALT 2005-46CB Pro. Supp. S-28.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 75%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2005-46CB Pro. Supp. pp. S-30.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWALT 2005-46CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt - to – income" ratios) are within acceptable limits. The maximum acceptable debt - to - income ratio, which is determined on a loan - by - loan basis varies depending on a number of underwriting criteria, including the Loan - to - Value Ratio, loan purpose,

4

loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWALT 2005-46CB Pro. Supp. S-28.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2005-46CB Pro. Supp. S-30.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively." CWALT 2005-46CB Pro. Supp. S-31.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7.     **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2005-46CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the

5

outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWALT 2005-46CB Pro. Supp. S-14.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2005-46CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement. Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any." CWALT 2005-46CB Prospectus p. 93.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

6

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWALT 2005-46CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "In its capacity as master servicer, Countrywide Servicing will be responsible for servicing the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. Countrywide Servicing may perform any of its obligations under the pooling and servicing agreement through one or more subservicers, which may include Countrywide Home Loans. Notwithstanding any subservicing arrangement, Countrywide Servicing will remain liable for its servicing duties and obligations under the pooling and servicing agreement as if Countrywide Servicing alone were servicing the mortgage loans." CWALT 2005-46CB Pro. Supp. S-33.
- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2005-46CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting

guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWALT 2005-46CB Pro. Supp. S-28.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-20 made the following untrue and misleading statements about the 6,027 initial mortgage loans in the collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 45.14%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 22.54%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 23.74%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 5.57%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 2.53%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.40%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.09%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

<u>**Exhibit L: Misrepresentations in the Offering Documents for CWALT 2005-47CB**</u>

5.      Collateral type: primarily of a pool of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

6.      Initial number of mortgage loans: 1,847.

7.      **Untrue and misleading statements about underwriting guidelines in the CWALT 2005-47CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards." CWALT 2005-47CB Pro. Supp. S-26.

- Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral." CWALT 2005-47CB Pro. Supp. S-27.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

8.      **Untrue and misleading statements about owner occupancy in the CWALT 2005-47CB Offering Documents:**

- In the prospectus supplement, CWALT 2005-47CB Pro. Supp. S-22, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans |
|---|---|---|
| Investment Property | 68 | 2.75% |
| Primary Residence | 1,705 | 93.67% |
| Secondary Residence | 74 | 3.59% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWALT 2005-47CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2005-47CB Pro. Supp. pp. S-17-23. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-20 made the following untrue and misleading statements about the 1,847 initial mortgage loans collateral pool: (i) the weighted average initial LTV ratio was 73.92%; (ii) only 52 loans (2.66% of the total initial mortgage loans) had an LTV ratio greater

than 90%; (iii) only 165 loans (8.33% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program and 71 Initial Mortgage Loans with an aggregate State Principal Balance of approximately $14,659,911.23, as of the Initial Cut Off Date whose values were confirmed with a Fannie Mae proprietary automated valuation model, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWALT 2005-47CB Pro. Supp. S-28.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80%

3

and the combined Loan - to - Value Ratio may not exceed 100%."
CWALT 2005-47CB Pro. Supp. S-27.

- The prospectus supplement stated that under the Reduced Documentation
  Program, the maximum loan-to-value ratio was 75%; under the CLUES
  Plus Documentation Program, the maximum Loan-to-Value Ratio was
  75%; and under the Streamlined Documentation Program, the maximum
  LTV ratio was 95%. CWALT 2005-47CB Pro. Supp. pp. S-29.

- Countrywide's statements about LTVs are untrue and misleading for the
  reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the
  Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the
CWALT 2005-47CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide
  represented that "Under [Countrywide's underwriting] standards, a
  prospective borrower must generally demonstrate that the ratio of the
  borrower's monthly housing expenses (including principal and interest on
  the proposed mortgage loan and, as applicable, the related monthly portion
  of property taxes, hazard insurance and mortgage insurance) to the
  borrower's monthly gross income and the ratio of total monthly debt to the
  monthly gross income (the "debt - to – income" ratios) are within
  acceptable limits.  The maximum acceptable debt - to - income ratio,
  which is determined on a loan - by - loan basis varies depending on a
  number of underwriting criteria, including the Loan - to - Value Ratio,

4

loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWALT 2005-47CB Pro. Supp. S-27.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2005-47CB Pro. Supp. S-29.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively." CWALT 2005-47CB Pro. Supp. S-30.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2005-47CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the

outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWALT 2005-47CB Pro. Supp. S-14.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2005-47CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement. Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any." CWALT 2005-47CB Prospectus p. 93.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

6

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWALT 2005-47CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "In its capacity as master servicer, Countrywide Servicing will be responsible for servicing the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. Countrywide Servicing may perform any of its obligations under the pooling and servicing agreement through one or more subservicers, which may include Countrywide Home Loans. Notwithstanding any subservicing arrangement, Countrywide Servicing will remain liable for its servicing duties and obligations under the pooling and servicing agreement as if Countrywide Servicing alone were servicing the mortgage loans." CWALT 2005-47CB Pro. Supp. S-32.
- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2005-47CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting

7

guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWALT 2005-47CB Pro. Supp. S-27.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-19 made the following untrue and misleading statements about the 1,847 initial mortgage loans in the collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 67.97%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 15.68%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 13.97%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 2.15%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 0.12%; Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.12%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

8

**Exhibit M:  Misrepresentations in the Offering Documents for CWALT 2005-49CB**

1.      Collateral type:  primarily of a pool of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  2,265.

3.      **Untrue and misleading statements about underwriting guidelines in the CWALT 2005-49CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards."  CWALT 2005-49CB Pro. Supp. S-26.

- Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWALT 2005-49CB Pro. Supp. S-27.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWALT 2005-49CB Offering Documents:**

- In the prospectus supplement, CWALT 2005-49CB Pro. Supp. S-22, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans |
|---|---|---|
| Investment Property | 247 | 9.42% |
| Primary Residence | 1,934 | 86.89% |
| Secondary Residence | 84 | 3.69% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5.    **Untrue and misleading statements about LTV ratios in the CWALT 2005-49CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2005-49CB Pro. Supp. pp. S-17-23. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-20 made the following untrue and misleading statements about the 2,265 initial mortgage loans collateral pool: (i) the weighted average initial LTV ratio was 71.66%; (ii) only 56 loans (2.52% of the total initial mortgage loans) had an LTV ratio greater

2

than 90%; (iii) only 158 loans (6.87% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program and 50 Initial Mortgage Loans with an aggregate State Principal Balance as of the Initial Cut Off Date of $ $8,854,925 whose values were confirmed with a Fannie Mae proprietary automated valuation model, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition.  Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home.  All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect."  CWALT 2005-49CB Pro. Supp. S-28.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80%

and the combined Loan - to - Value Ratio may not exceed 100%."
CWALT 2005-49CB Pro. Supp. S-27.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 75%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2005-49CB Pro. Supp. pp. S-29.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWALT 2005-49CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt - to – income" ratios) are within acceptable limits. The maximum acceptable debt - to - income ratio, which is determined on a loan - by - loan basis varies depending on a number of underwriting criteria, including the Loan - to - Value Ratio, loan purpose,

4

loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWALT 2005-49CB Pro. Supp. S-27.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2005-49CB Pro. Supp. S-29.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively." CWALT 2005-49CB Pro. Supp. S-30.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2005-49CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the

outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWALT 2005-49CB Pro. Supp. S-14.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2005-49CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement. Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any." CWALT 2005-49CB Prospectus p. 93.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

6

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWALT 2005-49CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "In its capacity as master servicer, Countrywide Servicing will be responsible for servicing the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. Countrywide Servicing may perform any of its obligations under the pooling and servicing agreement through one or more subservicers, which may include Countrywide Home Loans. Notwithstanding any subservicing arrangement, Countrywide Servicing will remain liable for its servicing duties and obligations under the pooling and servicing agreement as if Countrywide Servicing alone were servicing the mortgage loans." CWALT 2005-49CB Pro. Supp. S-32.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2005-49CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting

guidelines may be made if compensating factors are demonstrated by a prospective borrower."  CWALT 2005-49CB Pro. Supp. S-27.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-19 made the following untrue and misleading statements about the 2,265 initial mortgage loans in the collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 47.27%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program:  23.19%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  20.33%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program:  6.28%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 2.25%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.28%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.41%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

**<u>Exhibit N: Misrepresentations in the Offering Documents for CWALT 2005-54CB</u>**

1.    Collateral type: primarily of a pool consisting of three loan groups of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.    Initial number of mortgage loans: 4,031.

3.    **Untrue and misleading statements about underwriting guidelines in the CWALT 2005-54CB Offering Documents:**

   • In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards." CWALT 2005-54CB Pro. Supp. S-44.

   • Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral." CWALT 2005-54CB Pro. Supp. S-45.

   • Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.    **Untrue and misleading statements about owner occupancy in the CWALT 2005-54CB Offering Documents:**

- In the prospectus supplement, CWALT 2005-54CB Pro. Supp. S-25, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Investment Property | 94 | 3.51% |
| Primary Residence | 1,782 | 92.52% |
| Secondary Residence | 85 | 3.97% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 2 |
|---|---|---|
| Investment Property | 50 | 4.77% |
| Primary Residence | 738 | 90.40% |
| Secondary Residence | 41 | 4.83% |

**LOAN GROUP 3**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 3 |
|---|---|---|
| Investment Property | 66 | 4.10% |
| Primary Residence | 1,118 | 91.44% |
| Secondary Residence | 57 | 4.46% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5.      **Untrue and misleading statements about LTV ratios in the CWALT**

**2005-54CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2005-54CB Pro. Supp. pp. S-20-40. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-23 made the following untrue and misleading statements about the 1,961 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial LTV ratio was 72.74%; (ii) only 64 loans (3.03% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 175 loans (8.50% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-30 made the following untrue and misleading statements about the 829 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial LTV ratio was 72.78%; (ii) only 26 loans (3.08% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 66 loans (7.87% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-37 made the following untrue and misleading statements about the 1,241 initial mortgage loans in the Loan Group 3 collateral pool: (i) the weighted average initial LTV ratio

3

was 71.32%; (ii) only 36 loans (2.88% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 87 loans (6.55% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWALT 2005-54CB Pro. Supp. S-46.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan - to - Value Ratio may not exceed 100%." CWALT 2005-54CB Pro. Supp. S-45.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 75%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2005-54CB Pro. Supp. pp. S-47.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6.  **Untrue and misleading statements about debt-to-income ratios in the CWALT 2005-54CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the 'debt - to – income' ratios) are within acceptable limits. The maximum acceptable debt - to - income ratio, which is determined on a loan - by - loan basis varies depending on a number of underwriting criteria, including the Loan - to - Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required

5

to have sufficient cash resources to pay the down payment and closing costs." CWALT 2005-54CB Pro. Supp. S-45.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2005-54CB Pro. Supp. S-47.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively." CWALT 2005-54CB Pro. Supp. S-48.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2005-54CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in

6

the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWALT 2005-54CB Pro. Supp. S-17.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2005-54CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement. Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any." CWALT 2005-54CB Prospectus p. 93.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are

7

also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9.      **Untrue and misleading statements about loan servicing in the CWALT 2005-54CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "In its capacity as master servicer, Countrywide Servicing will be responsible for servicing the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. Countrywide Servicing may perform any of its obligations under the pooling and servicing agreement through one or more subservicers, which may include Countrywide Home Loans. Notwithstanding any subservicing arrangement, Countrywide Servicing will remain liable for its servicing duties and obligations under the pooling and servicing agreement as if Countrywide Servicing alone were servicing the mortgage loans." CWALT 2005-54CB Pro. Supp. S-50.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10.     **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2005-54CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWALT 2005-54CB Pro. Supp. S-45.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-22 made the following untrue and misleading statements about the 1,961 initial mortgage loans in the Loan Group 1 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 73.51%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 11.42%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 13.33%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 1.58%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.15%.

- Among other statistics, the chart on page S-29 made the following untrue and misleading statements about the 829 mortgage loans in the Loan Group 2 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 66.26%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 16.45%; (iii) Percent of Mortgage Loans allegedly issued according to

Countrywide's Preferred Documentation Loan Program: 14.19%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 2.93%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 0.17%.

- Among other statistics, the chart on page S-36 made the following untrue and misleading statements about the 1,241 mortgage loans in the Loan Group 3 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 61.23%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 20.67%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 15.34%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 2.72%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.05%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

**<u>Exhibit O:  INTENTIONALLY LEFT BLANK</u>**

**Exhibit P:  Misrepresentations in the Offering Documents for CWALT 2005-J1**

1.      Collateral type:  primarily of a pool consisting of seven loan groups of 15-year, 20-year and 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  2,554.

3.      **Untrue and misleading statements about underwriting guidelines in the CWALT 2005-J1 Offering Documents:**

   - In the registration statement and prospectus supplement, Countrywide represented that "A portion of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards." CWALT 2005-J1 Pro. Supp. S-78.

   - Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWALT 2005-J1 Pro. Supp. S-75.

   - Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWALT 2005-J1 Offering Documents:**

- In the prospectus supplement, CWALT 2005-J1 Pro. Supp. S-26, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Investment Property | 134 | 8.31% |
| Primary Residence | 720 | 87.98% |
| Secondary Residence | 31 | 3.72% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 2 |
|---|---|---|
| Investment Property | 79 | 8.34% |
| Primary Residence | 204 | 87.13% |
| Secondary Residence | 13 | 4.53% |

**LOAN GROUP 3**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 3 |
|---|---|---|
| Investment Property | 7 | 1.06% |
| Primary Residence | 584 | 95.21% |
| Secondary Residence | 22 | 3.72% |

**LOAN GROUP 4**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 4 |
|---|---|---|
| Investment Property | 1 | 0.79% |
| Primary Residence | 95 | 94.69% |
| Secondary Residence | 5 | 4.52% |

**LOAN GROUP 5**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 5 |
|---|---|---|
| Investment Property | 44 | 6.03% |
| Primary Residence | 385 | 90.56% |
| Secondary Residence | 12 | 3.41% |

**LOAN GROUP 6**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 6 |
|---|---|---|
| Investment Property | 23 | 11.72% |
| Primary Residence | 87 | 83.22% |
| Secondary Residence | 6 | 5.06% |

**LOAN GROUP 7**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 7 |
|---|---|---|
| Investment Property | 24 | 6.93% |
| Primary Residence | 74 | 88.15% |
| Secondary Residence | 4 | 4.92% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWALT 2005-J1 Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts

3

regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2005-J1 Pro. Supp. pp. S-20-71. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-23 made the following untrue and misleading statements about the 885 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial LTV ratio was 73.13%; (ii) only 93 loans (5.97% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 143 loans (10.23% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-31 made the following untrue and misleading statements about the 296 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial LTV ratio was 70.36%; (ii) only 14 loans (2.60% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 53 loans (8.10% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-39 made the following untrue and misleading statements about the 613 initial mortgage loans in the Loan Group 3 collateral pool: (i) the weighted average initial LTV ratio was 70.60%; (ii) only 7 loans (0.95% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 34 loans (4.93% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-47 made the following untrue and misleading statements about the 101 initial mortgage loans in the Loan Group 4 collateral pool: (i) the weighted average initial LTV ratio was 64.36%; (ii) no loans (0.0% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 2 loans (1.57% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-54 made the following untrue and misleading statements about the 441 initial mortgage loans in the Loan Group 5 collateral pool: (i) the weighted average initial LTV ratio was 72.49%; (ii) only 6 loans (0.78% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 13 loans (2.22% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-62 made the following untrue and misleading statements about the 116 initial mortgage loans in the Loan Group 6 collateral pool: (i) the weighted average initial LTV ratio was 65.05%; (ii) no loans (0.0% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 5 loans (2.53% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-69 made the following untrue and misleading statements about the 102 initial mortgage loans in the Loan Group 7 collateral pool: (i) the weighted average initial LTV ratio was 67.11%; (ii) no loans (0.0% of the total initial mortgage loans) had an

LTV ratio greater than 90%; (iii) only 3 loans (1.52% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWALT 2005-J1 Pro. Supp. S-80.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan - to - Value Ratio may not exceed 100%." CWALT 2005-J1 Pro. Supp. S-80.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 75%; under the CLUES

6

Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2005-J1 Pro. Supp. pp. S-82.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWALT 2005-J1 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt - to – income" ratios) are within acceptable limits. The maximum acceptable debt - to - income ratio, which is determined on a loan - by - loan basis varies depending on a number of underwriting criteria, including the Loan - to - Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWALT 2005-J1 Pro. Supp. S-75.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%."  CWALT 2005-J1 Pro. Supp. S-76.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively."  CWALT 2005-J1 Pro. Supp. S-77.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2005-J1 Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection

was not made in a manner intended to affect the interests of the certificateholders adversely." CWALT 2005-J1 Pro. Supp. S-16.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2005-J1 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement. Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any." CWALT 2005-J1 Prospectus p. 91.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are

also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9.      **Untrue and misleading statements about loan servicing in the CWALT 2005-J1 Offering Documents:**

- In its prospectus, Countrywide represented that "The master servicer, directly or through one or more sub-servicers, will make reasonable efforts to collect all payments called for under the mortgage loans and will, consistent with each pooling and servicing agreement and any mortgage pool insurance policy, primary mortgage insurance policy, FHA insurance, VA guaranty and bankruptcy bond or alternative arrangements, follow the collection procedures it customarily follows for mortgage loans that are comparable to the  mortgage loans." CWALT 2005-J1 Prospectus p. 47.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10.      **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2005-J1 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Certain exceptions to Countrywide Home Loans' underwriting guidelines are made in the event that compensating factors are demonstrated by a prospective borrower."  CWALT 2005-J1 Pro. Supp. S-75.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-23 made the following untrue and misleading statements about the 885 initial mortgage loans in the Loan Group 1 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 28.61%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 48.02%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 5.68%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 11.26 %; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 1.97%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 3.75%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.55%; (viii) Percent of Mortgage Loans allegedly issued according to Countrywide's Full-DU Documentation Loan Program: 0.17%.

- Among other statistics, the chart on page S-31 made the following untrue and misleading statements about the 296 mortgage loans in the Loan Group 2 collateral pool: (i) Percent of Mortgage Loans allegedly issued

according to Countrywide's Full/Alternative Documentation Loan Program:  41.39%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program:  14.86%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  40.63%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program:  0.38%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 1.25% (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.47%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 0.63%; (viii) Percent of Mortgage Loans allegedly issued according to Countrywide's Full-DU Documentation Loan Program: 0.40%.

- Among other statistics, the chart on page S-39 made the following untrue and misleading statements about the 613 mortgage loans in the Loan Group 3 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  61.12%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program:  13.20%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  18.49%; (iv)

Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 1.13%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 2.98% (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.16%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 2.91%.

- Among other statistics, the chart on page S-46 made the following untrue and misleading statements about the 101 mortgage loans in the Loan Group 4 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  56.93%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 2.14%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  35.86%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program:  5.07%.

- Among other statistics, the chart on page S-53 made the following untrue and misleading statements about the 441 mortgage loans in the Loan Group 5 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  36.38%; (ii) Percent of Mortgage Loans allegedly issued

13

according to Countrywide's Reduced Documentation Loan Program: 38.50%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 10.13%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 9.61%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Full DU Documentation Loan Program: 1.80% (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 1.89%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 1.69%.

- Among other statistics, the chart on page S-61 made the following untrue and misleading statements about the 116 mortgage loans in the Loan Group 6 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 13.46%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 64.97%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 0.20%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 14.05%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 2.35% (vi) Percent of

14

Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 2.94%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 2.02%.

- Among other statistics, the chart on page S-69 made the following untrue and misleading statements about the 102 mortgage loans in the Loan Group 7 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 21.11%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 63.36%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 4.32%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 3.88%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 7.34%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

## Exhibit Q:  Misrepresentations in the Offering Documents for CWALT 2006-14CB

1.      Collateral type:  primarily of a pool of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  2,474.

3.      **Untrue and misleading statements about underwriting guidelines in the CWALT 2006-14CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards."  CWALT 2006-14CB Pro. Supp. S-36.

- Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWALT 2006-14CB Pro. Supp. S-37.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWALT 2006-14CB Offering Documents:**

- In the prospectus supplement, CWALT 2006-14CB Pro. Supp. S-32, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans |
|---|---|---|
| Investment Property | 182 | 6.28% |
| Primary Residence | 2,184 | 89.56% |
| Secondary Residence | 108 | 4.16% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5.    **Untrue and misleading statements about LTV ratios in the CWALT 2006-14CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2006-14CB Pro. Supp. pp. S-27-34. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-30 made the following untrue and misleading statements about the 2,474 initial mortgage loans collateral pool: (i) the weighted average initial LTV ratio was 72.07%; (ii) only 42 loans (1.72% of the total initial mortgage loans) had an LTV ratio greater

2

than 90%; (iii) only 145 loans (5.27% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following:  "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program and 21 Initial Mortgage Loans, with an aggregate State Principal Balance of approximately $3,185,150 as of the cut-off date representing approximately 0.61% of the Cut-off Date Pool Principal Balance, whose values were confirmed with a Fannie Mae proprietary automated valuation model, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition.  Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home.  All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect."  CWALT 2006-14CB Pro. Supp. S-38.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80%

3

and the combined Loan - to - Value Ratio may not exceed 100%."
CWALT 2006-14CB Pro. Supp. S-37.

- The prospectus supplement stated that under the Reduced Documentation
  Program, the maximum loan-to-value ratio ranges up to 95%; under the
  CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio
  was 75%; and under the Streamlined Documentation Program, the
  maximum LTV ratio was 95%. CWALT 2006-14CB Pro. Supp. p. S-39.

- Countrywide's statements about LTVs are untrue and misleading for the
  reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the
  Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the
CWALT 2006-14CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide
  represented that "Under [Countrywide's underwriting] standards, a
  prospective borrower must generally demonstrate that the ratio of the
  borrower's monthly housing expenses (including principal and interest on
  the proposed mortgage loan and, as applicable, the related monthly portion
  of property taxes, hazard insurance and mortgage insurance) to the
  borrower's monthly gross income and the ratio of total monthly debt to the
  monthly gross income (the "debt - to – income" ratios) are within
  acceptable limits. The maximum acceptable debt - to - income ratio, which
  is determined on a loan - by - loan basis varies depending on a number of
  underwriting criteria, including the Loan - to - Value Ratio, loan purpose,

4

loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs."  CWALT 2006-14CB Pro. Supp. S-37.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%."  CWALT 2006-14CB Pro. Supp. S-39.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively."  CWALT 2006-14CB Pro. Supp. S-40.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7.   **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2006-14CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the

outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWALT 2006-14CB Pro. Supp. S-24.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2006-14CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement. The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement." CWALT 2006-14CB Prospectus p. 105.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

6

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWALT 2006-14CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The master servicer will master service all of the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. The master servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders." CWALT 2006-14CB Pro. Supp. S-41.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2006-14CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWALT 2006-14CB Pro. Supp. S-37.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11.  **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-29 made the following untrue and misleading statements about the 2,474 initial mortgage loans in the collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  23.17%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program:  57.44%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  11.17%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program:  7.57%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 0.39%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.26%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

**Exhibit R:  Misrepresentations in the Offering Documents for CWALT 2006-39CB**

1.　　Collateral type:  primarily of a pool consisting of two loan groups of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.　　Initial number of mortgage loans:  3,422.

3.　　**Untrue and misleading statements about underwriting guidelines in the CWALT 2006-39CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the issuing entity will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting process."  CWALT 2006-39CB Pro. Supp. S-64.

- Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWALT 2006-39CB Pro. Supp. S-65.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.　　**Untrue and misleading statements about owner occupancy in the CWALT 2006-39CB Offering Documents:**

- In the prospectus supplement, CWALT 2006-39CB Pro. Supp. S-45, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Investment Property | 205 | 7.71% |
| Primary Residence | 2,051 | 87.97% |
| Secondary Residence | 103 | 4.32% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 2 |
|---|---|---|
| Investment Property | 310 | 25.61% |
| Primary Residence | 693 | 69.24% |
| Secondary Residence | 60 | 5.15% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWALT 2006-39CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2006-39CB Pro. Supp. pp. S-38-60. The statistics in the

pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-42 made the following untrue and misleading statements about the 2,359 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial LTV ratio was 67.30%; (ii) only 65 loans (2.32% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 174 loans (6.60% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-43 made the following untrue and misleading statements about the 2,359 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial combined LTV ratio was 72.77%; (ii) only 600 loans (26.19% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 798 loans (34.84% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- Among other statistics, the chart on page S-54 made the following untrue and misleading statements about the 1,063 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial LTV ratio was 78.87%; (ii) only 132 loans (12.03% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 271 loans (24.57% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-55 made the following untrue and misleading statements about the 1,063 initial mortgage loans in the

3

Loan Group 2 collateral pool: (i) the weighted average initial combined LTV ratio was 84.34%; (ii) only 388 loans (35.84% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 581 loans (54.85% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program and 29 and 3 Initial Mortgage Loans in loan group 1 and loan group 2, respectively, with an aggregate Stated Principal Balance of approximately $6,528,198 and $872,028, respectively, as of the cut-off date representing approximately 1.23% and 0.45% of the Initial Mortgage Loans in the related loan group by aggregate Stated Principal Balance of the mortgage loans in that loan group as of the initial cut-off date, whose values were confirmed with a Fannie Mae proprietary automated valuation model, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or

Freddie Mac appraisal standards then in effect." CWALT 2006-39CB Pro. Supp. S-66.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan - to - Value Ratio may not exceed 100%." CWALT 2006-39CB Pro. Supp. S-66.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 95%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2006-39CB Pro. Supp. pp. S-68.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWALT 2006-39CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion

5

of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt - to – income" ratios) are within acceptable limits.  The maximum acceptable debt - to - income ratio, which is determined on a loan - by - loan basis varies depending on a number of underwriting criteria, including the Loan - to - Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs."  CWALT 2006-39CB Pro. Supp. S-65.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%."  CWALT 2006-39CB Pro. Supp. S-67.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively."  CWALT 2006-39CB Pro. Supp. S-69.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7.    **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2006-39CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely."  CWALT 2006-39CB Pro. Supp. S-33.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8.    **Untrue and misleading statements about credit ratings in the CWALT 2006-39CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement.  The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit

7

enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement.."  CWALT 2006-39CB Prospectus p. 109.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWALT 2006-39CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The master servicer will master service all of the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement.  The master servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders."  CWALT 2006-39CB Pro. Supp. S-70.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2006-39CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower."  CWALT 2005-39CB Pro. Supp. S-65.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-41 made the following untrue and misleading statements about the 2,359 initial mortgage loans in the Loan Group 1 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  23.80%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program:  43.39%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  12.12%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program:  9.56%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 7.04%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset

Documentation Loan Program: 4.00%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.09%;

- Among other statistics, the chart on page S-53 made the following untrue and misleading statements about the 1,063 mortgage loans in the Loan Group 2 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 8.76%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 34.32%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 0.64%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 24.83%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 10.34%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 21.11%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

10

**Exhibit S: Misrepresentations in the Offering Documents for CWALT 2006-7CB**

1. Collateral type: primarily of a pool consisting of three loan groups of 15-year and 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2. Initial number of mortgage loans: 2,667.

3. **Untrue and misleading statements about underwriting guidelines in the CWALT 2006-7CB Offering Documents:**

   - In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the issuing entity will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting process." CWALT 2006-7CB Pro. Supp. S-66.

   - Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral." CWALT 2006-7CB Pro. Supp. S-67.

   - Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4. **Untrue and misleading statements about owner occupancy in the CWALT 2006-7CB Offering Documents:**

- In the prospectus supplement, CWALT 2006-7CB Pro. Supp. S-25, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Investment Property | 290 | 12.34% |
| Primary Residence | 1,557 | 82.78% |
| Secondary Residence | 103 | 4.88% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 2 |
|---|---|---|
| Investment Property | 95 | 23.91% |
| Primary Residence | 216 | 70.88% |
| Secondary Residence | 18 | 5.22% |

**LOAN GROUP 3**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 3 |
|---|---|---|
| Investment Property | 29 | 6.30% |
| Primary Residence | 336 | 87.19% |
| Secondary Residence | 23 | 6.51% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5.      **Untrue and misleading statements about LTV ratios in the CWALT**

**2006-7CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2006-7CB Pro. Supp. pp. S-38-62. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-42 made the following untrue and misleading statements about the 1,950 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial LTV ratio was 75.51%; (ii) only 68 loans (3.35% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 244 loans (11.65% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-51 made the following untrue and misleading statements about the 329 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial LTV ratio was 80.36%; (ii) only 40 loans (12.46% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 100 loans (32.31% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-58 made the following untrue and misleading statements about the 388 initial mortgage loans in the Loan Group 3 collateral pool: (i) the weighted average initial LTV ratio

3

was 56.33%; (ii) only 2 loans (0.87% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 10 loans (2.06% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program and 21, 2 and 25 Initial Mortgage Loans in loan group 1, loan group 2 and loan group 3, respectively, with an aggregate Stated Principal Balance of approximately $4,006,926, $481,000 and $3,132,422, respectively, as of the initial cut-off date whose values were confirmed with a Fannie Mae proprietary automated valuation model.  Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home.  All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect."  CWALT 2006-7CB Pro. Supp. S-68.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the

4

Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80%
and the combined Loan - to - Value Ratio may not exceed 100%."
CWALT 2006-7CB Pro. Supp. S-67.

- The prospectus supplement stated that under the Reduced Documentation
  Program, the maximum loan-to-value ratio was 95%; under the CLUES
  Plus Documentation Program, the maximum Loan-to-Value Ratio was
  75%; and under the Streamlined Documentation Program, the maximum
  LTV ratio was 95%. CWALT 2006-7CB Pro. Supp. pp. S-70.

- Countrywide's statements about LTVs are untrue and misleading for the
  reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the
  Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the
CWALT 2006-7CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide
  represented that "Under [Countrywide's underwriting] standards, a
  prospective borrower must generally demonstrate that the ratio of the
  borrower's monthly housing expenses (including principal and interest on
  the proposed mortgage loan and, as applicable, the related monthly portion
  of property taxes, hazard insurance and mortgage insurance) to the
  borrower's monthly gross income and the ratio of total monthly debt to the
  monthly gross income (the "debt - to - income" ratios) are within
  acceptable limits. The maximum acceptable debt - to - income ratio, which
  is determined on a loan - by - loan basis varies depending on a number of

5

underwriting criteria, including the Loan - to - Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt - to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWALT 2006-7CB Pro. Supp. S-67.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2006-7CB Pro. Supp. S-69.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively." CWALT 2006-7CB Pro. Supp. S-71.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2006-7CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing

6

agreement that the mortgage loans were selected from among the outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWALT 2006-7CB Pro. Supp. S-33.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2006-7CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement. The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement." CWALT 2006-7CB Prospectus p. 105.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWALT 2006-7CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The master servicer will master service all of the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. The master servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders."  CWALT 2006-7CB Pro. Supp. S-72.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2006-7CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting

guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWALT 2005-7CB Pro. Supp. S-67.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-41 made the following untrue and misleading statements about the 1,950 initial mortgage loans in the Loan Group 1 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  15.97%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 62.32%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  12.09%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program:  8.15%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 1.47%.

- Among other statistics, the chart on page S-50 made the following untrue and misleading statements about the 329 mortgage loans in the Loan Group 2 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  13.13%; (ii) Percent of Mortgage Loans allegedly issued

9

according to Countrywide's Reduced Documentation Loan Program: 64.80%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 5.50%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 16.57%.

- Among other statistics, the chart on page S-58 made the following untrue and misleading statements about the 388 mortgage loans in the Loan Group 3 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 9.70%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 44.92%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 30.72%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 13.15%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 0.77%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.74%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

**Exhibit T:  Misrepresentations in the Offering Documents for CWALT 2007-5CB**

1.      Collateral type:  primarily of a pool consisting of two loan groups of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  7,174.

3.      **Untrue and misleading statements about underwriting guidelines in the CWALT 2007-5CB Offering Documents:**

   - In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the issuing entity will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting process."  CWALT 2007-5CB Pro. Supp. S-38.

   - Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWALT 2007-5CB Pro. Supp. S-39.

   - Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWALT 2007-5CB Offering Documents:**

- In the prospectus supplement, CWALT 2007-5CB Pro. Supp. A-10 and A-20, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Investment Property | 920 | 12.11% |
| Primary Residence | 5,309 | 83.41% |
| Secondary Residence | 299 | 4.49% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 2 |
|---|---|---|
| Investment Property | 101 | 13.37% |
| Primary Residence | 514 | 81.91% |
| Secondary Residence | 31 | 4.72% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5.  **Untrue and misleading statements about LTV ratios in the CWALT 2007-5CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2007-5CB Pro. Supp. pp. A-1-22. The statistics in the

pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-6 made the following untrue and misleading statements about the 6,528 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial LTV ratio was 70.09%; (ii) only 216 loans (2.83% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 538 loans (7.30% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page A-7 made the following untrue and misleading statements about the 6,528 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial combined LTV ratio was 76.12%; (ii) only 1,954 loans (29.75% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 2,544 loans (39.05% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- Among other statistics, the chart on page A-17 made the following untrue and misleading statements about the 646 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial LTV ratio was 70.19%; (ii) only 30 loans (3.71% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 66 loans (8.54% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page A-18 made the following untrue and misleading statements about the 646 initial mortgage loans in the

3

Loan Group 2 collateral pool: (i) the weighted average initial LTV ratio was 75.57%; (ii) only 185 loans (27.35% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 239 loans (35.52% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, whose values were confirmed with a Fannie Mae proprietary automated valuation model, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWALT 2007-5CB Pro. Supp. S-39.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80%

4

and the combined Loan - to - Value Ratio may not exceed 100%."
CWALT 2007-5CB Pro. Supp. S-39.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 95%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2007-5CB Pro. Supp. pp. S-41.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWALT 2007-5CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt - to – income" ratios) are within acceptable limits. The maximum acceptable debt - to - income ratio, which is determined on a loan - by - loan basis varies depending on a number of underwriting criteria, including the Loan - to - Value Ratio, loan purpose,

5

loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWALT 2007-5CB Pro. Supp. S-39.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2007-5CB Pro. Supp. S-40.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively." CWALT 2007-5CB Pro. Supp. S-42.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2007-5CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the

6

outstanding one - to four - family mortgage loans in Countrywide Home

Loans' portfolio as to which the representations and warranties set forth in

the pooling and servicing agreement can be made and that the selection

was not made in a manner intended to affect the interests of the

certificateholders adversely." CWALT 2007-5CB Pro. Supp. S-33.

- This statement was untrue and misleading for the reasons set forth in

    Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT**

**2007-5CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance

    of the securities of each series offered hereby and by the prospectus

    supplement that they shall have been rated in one of the four highest rating

    categories by the nationally recognized statistical rating agency or

    agencies (each, a "Rating Agency") specified in the related prospectus

    supplement. The rating would be based on, among other things, the

    adequacy of the value of the Trust Fund Assets and any credit

    enhancement with respect to the class and will reflect the Rating Agency's

    assessment solely of the likelihood that holders of a class of securities of

    the class will receive payments to which the securityholders are entitled

    under the related Agreement." CWALT 2007-5CB Prospectus p. 109.

- The complete ratings history for the Certificates, showing the date of each

    rating and the full number of downgrades, is set forth in Exhibit C to this

    Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9.    **Untrue and misleading statements about loan servicing in the CWALT 2007-5CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The master servicer will master service all of the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. The master servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders."  CWALT 2007-5CB Pro. Supp. S-43.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10.    **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2007-5CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower."  CWALT 2007-5CB Pro. Supp. S-39.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

8

11.     **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page A-5 made the following untrue and misleading statements about the 6,528 initial mortgage loans in the Loan Group 1 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  19.34%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program:  45.36%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  10.25%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program:  9.16%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 8.07%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 4.72%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 2.90%; (viii) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.20%.

- Among other statistics, the chart on page A-16 made the following untrue and misleading statements about the 646 mortgage loans in the Loan Group 2 collateral pool:  (i) Percent of Mortgage Loans allegedly issued

9

according to Countrywide's Full/Alternative Documentation Loan Program: 19.58%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 43.53%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 11.02%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 7.31%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 4.72%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 9.92%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 3.70%; (viii) Percent of Mortgage Loans allegedly issued according to Countrywide's CLUES Documentation Loan Program: 0.22%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

**Exhibit U:  Misrepresentations in the Offering Documents for CWALT 2007-17CB**

1.      Collateral type:  primarily of a pool consisting of two loan groups of 30-year conventional fixed-rate mortgage loans secured by first liens on one-to four-family residential properties.

2.      Initial number of mortgage loans:  3,090.

3.      **Untrue and misleading statements about underwriting guidelines in the CWALT 2007-17CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the issuing entity will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting process."  CWALT 2007-17CB Pro. Supp. S-36.

- Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWALT 2007-17CB Pro. Supp. S-38.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWALT 2007-17CB Offering Documents:**

- In the prospectus supplement, CWALT 2007-17CB Pro. Supp. A-8 and A-17, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Investment Property | 129 | 4.41% |
| Primary Residence | 2,053 | 92.46% |
| Secondary Residence | 74 | 3.13% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 2 |
|---|---|---|
| Investment Property | 67 | 6.69% |
| Primary Residence | 733 | 89.31% |
| Secondary Residence | 34 | 4.00% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWALT 2007-17CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2007-17CB Pro. Supp. pp. A-1-19. The statistics in the

pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-5 made the following untrue and misleading statements about the 2,256 mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial LTV ratio was 69.14%) only 74 loans (3.34% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 244 loans (10.24% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page A-6 made the following untrue and misleading statements about the 2,256 mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial combined LTV ratio was 75.84%) only 731 loans (32.87% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 1,004 loans (45.63% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- Among other statistics, the chart on page A-14 made the following untrue and misleading statements about the 834 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial LTV ratio was 72.44%; (ii) only 111 loans (12.58% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 197 loans (21.99% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page A-15 made the following untrue and misleading statements about the 834 initial mortgage loans in the

3

Loan Group 2 collateral pool: (i) the weighted average initial combined LTV ratio was 73.96%; (ii) only 161 loans (19.16% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 260 loans (30.50% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, whose values were confirmed with a Fannie Mae proprietary automated valuation model, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWALT 2007-17CB Pro. Supp. S-38.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80%

4

and the combined Loan - to - Value Ratio may not exceed 100%."
CWALT 2007-17CB Pro. Supp. S-38.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 95%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2007-17CB Pro. Supp. pp. S-40.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWALT 2007-17CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt - to - income" ratios) are within acceptable limits. The maximum acceptable debt - to - income ratio, which is determined on a loan - by - loan basis varies depending on a number of underwriting criteria, including the Loan - to - Value Ratio, loan purpose,

5

loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWALT 2007-17CB Pro. Supp. S-38.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2007-17CB Pro. Supp. S-40.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively." CWALT 2007-17CB Pro. Supp. S-41.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2007-17CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the

outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely."  CWALT 2007-17CB Pro. Supp. S-31.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2007-17CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement.  The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement."  CWALT 2007-17CB Prospectus p. 109.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

7

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWALT 2007-17CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The master servicer will master service all of the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. The master servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders."  CWALT 2007-17CB Pro. Supp. S-42.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2007-5CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower."  CWALT 2005-39CB Pro. Supp. S-38.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 2,256 initial mortgage loans in the Loan Group 1 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 51.28%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 9.96%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 32.06%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 1.15%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 2.26%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 1.48%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 1.80%.

- Among other statistics, the chart on page A-13 made the following untrue and misleading statements about the 834 mortgage loans in the Loan Group 2 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 45.39%; (ii) Percent of Mortgage Loans allegedly issued

9

according to Countrywide's Reduced Documentation Loan Program: 12.27%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 33.52%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 3.64%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 0.96%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 2.11%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 2.12%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

**<u>Exhibit V: Misrepresentations in the Offering Documents for CWALT 2007-21CB</u>**

1. Collateral type: primarily of a pool consisting of two loan groups of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2. Initial number of mortgage loans: 2,667.

3. **Untrue and misleading statements about underwriting guidelines in the CWALT 2007-21CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the issuing entity will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting process." CWALT 2007-21CB Pro. Supp. S-41.

- Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral." CWALT 2007-21CB Pro. Supp. S-42.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4. **Untrue and misleading statements about owner occupancy in the CWALT 2007-21CB Offering Documents:**

- In the prospectus supplement, CWALT 2007-21CB Pro. Supp. A-7 and A-17, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Investment Property | 188 | 8.98% |
| Primary Residence | 1,372 | 84.37% |
| Secondary Residence | 110 | 6.65% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 2 |
|---|---|---|
| Investment Property | 42 | 4.32% |
| Primary Residence | 914 | 92.16% |
| Secondary Residence | 41 | 3.52% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWALT 2007-21CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2007-21CB Pro. Supp. pp. A-1-18. The statistics in the

pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 1,670 mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial LTV ratio was 65.43%); only 104 loans (6.74% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 218 loans (13.0% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page A-5 made the following untrue and misleading statements about the 1,670 mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial combined LTV ratio was 67.07%); only 202 loans (13.36% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 337 loans (21.30% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- Among other statistics, the chart on page A-11 made the following untrue and misleading statements about the 997 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial LTV ratio was 72.70%; (ii) only 59 loans (5.29% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 108 loans (9.73% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page A-12 made the following untrue and misleading statements about the 997 initial mortgage loans in the

3

Loan Group 2 collateral pool: (i) the weighted average initial combined LTV ratio was 81.87%; (ii) only 445 loans (42.29% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 579 loans (56.20% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, whose values were confirmed with a Fannie Mae proprietary automated valuation model, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWALT 2007-21CB Pro. Supp. S-43.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80%

4

and the combined Loan - to - Value Ratio may not exceed 100%."
CWALT 2007-21CB Pro. Supp. S-42.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 95%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2007-21CB Pro. Supp. pp. S-44.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWALT 2007-21CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt - to – income" ratios) are within acceptable limits. The maximum acceptable debt - to - income ratio, which is determined on a loan - by - loan basis varies depending on a number of underwriting criteria, including the Loan - to - Value Ratio, loan purpose,

5

loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWALT 2007-21CB Pro. Supp. S-42.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%." CWALT 2007-21CB Pro. Supp. S-44.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively." CWALT 2007-21CB Pro. Supp. S-45.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2007-21CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the

outstanding one - to four - family mortgage loans in Countrywide Home

Loans' portfolio as to which the representations and warranties set forth in

the pooling and servicing agreement can be made and that the selection

was not made in a manner intended to affect the interests of the

certificateholders adversely." CWALT 2007-21CB Pro. Supp. S-33.

- This statement was untrue and misleading for the reasons set forth in

    Section IV of the Complaint.

8.    **Untrue and misleading statements about credit ratings in the CWALT**

**2007-21CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance

    of the securities of each series offered hereby and by the prospectus

    supplement that they shall have been rated in one of the four highest rating

    categories by the nationally recognized statistical rating agency or

    agencies (each, a "Rating Agency") specified in the related prospectus

    supplement.  The rating would be based on, among other things, the

    adequacy of the value of the Trust Fund Assets and any credit

    enhancement with respect to the class and will reflect the Rating Agency's

    assessment solely of the likelihood that holders of a class of securities of

    the class will receive payments to which the securityholders are entitled

    under the related Agreement." CWALT 2007-21CB Prospectus p. 108.

- The complete ratings history for the Certificates, showing the date of each

    rating and the full number of downgrades, is set forth in Exhibit C to this

    Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWALT 2007-21CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The master servicer will master service all of the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. The master servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders." CWALT 2007-21CB Pro. Supp. S-47.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2007-5CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWALT 2005-39CB Pro. Supp. S-42.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page A-3 made the following untrue and misleading statements about the 1,670 initial mortgage loans in the Loan Group 1 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  40.98%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program:  13.41%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  32.93%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program:  4.95%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 4.13%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 2.39%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 1.20%.

- Among other statistics, the chart on page A-12 made the following untrue and misleading statements about the 997 mortgage loans in the Loan Group 2 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  48.08%; (ii) Percent of Mortgage Loans allegedly issued

9

according to Countrywide's Reduced Documentation Loan Program: 13.47%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 31.99%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 1.90%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 1.10%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 2.16%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 1.31%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

<u>**Exhibit W:  Misrepresentations in the Offering Documents for CWALT 2007-16CB**</u>

1.      Collateral type:  primarily of a pool consisting of seven loan groups of 15-year, 20-year and 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  7,330.

3.      **Untrue and misleading statements about underwriting guidelines in the CWALT 2007-16CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the issuing entity will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting process."  CWALT 2007-16CB Pro. Supp. S-41

- Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWALT 2007-16CB Pro. Supp. S-42.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWALT 2007-16CB Offering Documents:**

- In the prospectus supplement, CWALT 2007-16CB Pro. Supp. A-8, 18, 28, 36 and 45, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Investment Property | 371 | 14.14% |
| Primary Residence | 1,811 | 85.10% |
| Secondary Residence | 22 | 0.76% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 2 |
|---|---|---|
| Investment Property | 217 | 16.36% |
| Primary Residence | 976 | 79.94% |
| Secondary Residence | 56 | 3.70% |

**LOAN GROUP 3**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 3 |
|---|---|---|
| Investment Property | 145 | 17.21% |
| Primary Residence | 471 | 72.89% |
| Secondary Residence | 69 | 9.90% |

**LOAN GROUP 4**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 4 |
|---|---|---|
| Investment Property | 348 | 12.94% |
| Primary Residence | 2,105 | 86.18% |
| Secondary Residence | 26 | 0.88% |

**LOAN GROUP 5**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 5 |
|---|---|---|
| Investment Property | 90 | 9.19% |
| Primary Residence | 588 | 85.99% |
| Secondary Residence | 35 | 4.82% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWALT 2007-16CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2007-16CB Pro. Supp. pp. A-1-47. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-5 made the following untrue and misleading statements about the 2,204 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial LTV ratio was 65.99%; (ii) only 122 loans (5.60% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 345 loans (14.53% of the total initial mortgage loans) had an LTV ratio greater than 80%.

3

- Among other statistics, the chart on page A-6 made the following untrue and misleading statements about the 2,204 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial combined LTV ratio was 67.79%; (ii) only 277 loans (13.31% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 516 loans (23.21% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- Among other statistics, the chart on page A-14 made the following untrue and misleading statements about the 1,249 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial LTV ratio was 67.24%; (ii) only 85 loans (6.59% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 171 loans (12.84% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page A-15 made the following untrue and misleading statements about the 1,249 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial combined LTV ratio was 72.19%; (ii) only 334 loans (28.31% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 435 loans (36.07% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- Among other statistics, the chart on page A-24 made the following untrue and misleading statements about the 685 initial mortgage loans in the Loan Group 3 collateral pool: (i) the weighted average initial LTV ratio

was 74.47%; (ii) only 111 loans (17.95% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 224 loans (33.83% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page A-25 made the following untrue and misleading statements about the 685 initial mortgage loans in the Loan Group 3 collateral pool: (i) the weighted average initial combined LTV ratio was 78.04%; (ii) only 203 loans (32.96% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 338 loans (52.25% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- Among other statistics, the chart on page A-33 made the following untrue and misleading statements about the 2,479 initial mortgage loans in the Loan Group 4 collateral pool: (i) the weighted average initial LTV ratio was 66.97%; (ii) only 106 loans (4.37% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 217 loans (8.84% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page A-34 made the following untrue and misleading statements about the 2,479 initial mortgage loans in the Loan Group 4 collateral pool: (i) the weighted average initial combined LTV ratio was 73.49%; (ii) only 805 loans (31.05% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 1,011 loans (40.01% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- Among other statistics, the chart on page S-42 made the following untrue and misleading statements about the 713 initial mortgage loans in the Loan Group 5 collateral pool: (i) the weighted average initial LTV ratio was 66.80%; (ii) only 37 loans (5.37% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 113 loans (16.08% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-43 made the following untrue and misleading statements about the 713 initial mortgage loans in the Loan Group 5 collateral pool: (i) the weighted average initial combined LTV ratio was 71.42%; (ii) only 166 loans (25.43% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 255 loans (37.41% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition.  Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a

similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWALT 2007-16CB Pro. Supp. S-43.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan - to - Value Ratio may not exceed 100%." CWALT 2007-16CB Pro. Supp. S-42.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 95%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2007-16CB Pro. Supp. pp. S-44, 45.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWALT 2007-16CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on

7

the proposed mortgage loan and, as applicable, the related monthly portion

of property taxes, hazard insurance and mortgage insurance) to the

borrower's monthly gross income and the ratio of total monthly debt to the

monthly gross income (the "debt - to - income" ratios) are within

acceptable limits. The maximum acceptable debt - to - income ratio, which

is determined on a loan - by - loan basis varies depending on a number of

underwriting criteria, including the Loan - to - Value Ratio, loan purpose,

loan amount and credit history of the borrower. In addition to meeting the

debt – to - income ratio guidelines, each prospective borrower is required

to have sufficient cash resources to pay the down payment and closing

costs." CWALT 2007-16CB Pro. Supp. S-42.

- The prospectus supplement also stated that "Under its Standard

  Underwriting Guidelines, Countrywide Home Loans generally permits a

  debt - to - income ratio based on the borrower's monthly housing expenses

  of up to 33% and a debt - to - income ratio based on the borrower's total

  monthly debt of up to 38%." CWALT 2007-16CB Pro. Supp. S-44.

- The prospectus supplement stated that "Under its Expanded Underwriting

  Guidelines, Countrywide Home Loans generally permits a debt - to -

  income ratio based on the borrower's monthly housing expenses of up to

  36% and a debt - to - income ratio based on the borrower's total monthly

  debt of up to 40%; provided, however, that if the Loan - to - Value Ratio

  exceeds 80%, the maximum permitted debt - to - income ratios are 33%

  and 38%, respectively." CWALT 2007-16CB Pro. Supp. S-46.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2007-16CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely."  CWALT 2007-16CB Pro. Supp. S-35.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2007-16CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement.  The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit

9

enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement." CWALT 2007-16CB Prospectus p. 109-10.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWALT 2007-16CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The master servicer will master service all of the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. The master servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders." CWALT 2007-16CB Pro. Supp. S-47.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2007-16CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWALT 2007-16CB Pro. Supp. S-42.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 2,204 initial mortgage loans in the Loan Group 1 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 31.82%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 22.32%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 29.47%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 7.11%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 3.93%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset

11

Documentation Loan Program: 2.23%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 3.13%.

- Among other statistics, the chart on page A-13 made the following untrue and misleading statements about the 1,249 mortgage loans in the Loan Group 2 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  7.59%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 50.38%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  5.03%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program:  19.00%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.16% (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 5.08%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 12.77%.

- Among other statistics, the chart on page A-23 made the following untrue and misleading statements about the 685 mortgage loans in the Loan Group 3 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan

Program:  9.62%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 33.36%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  2.84%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 27.76%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.80% (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 9.47%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 16.15%.

- Among other statistics, the chart on page A-32 made the following untrue and misleading statements about the 2,479 mortgage loans in the Loan Group 4 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  40.80%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 24.40%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  17.32%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program:  7.45%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio

13

Documentation Loan Program: 6.01%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 2.96%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 1.07%.

- Among other statistics, the chart on page A-41 made the following untrue and misleading statements about the 713 mortgage loans in the Loan Group 5 collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 6.05%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 50.38%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program: 3.03%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program: 21.91%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 0.44% (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 3.57%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 14.62%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

<u>**Exhibit X: Misrepresentations in the Offering Documents for CWALT 2007-15CB**</u>

1.      Collateral type: primarily of a pool of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgage loans: 2,841.

3.      **Untrue and misleading statements about underwriting guidelines in the CWALT 2007-15CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting process." CWALT 2007-15CB Pro. Supp. S-33.

- Countrywide further represented that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral." CWALT 2007-15CB Pro. Supp. S-34.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWALT 2007-15CB Offering Documents:**

- In the prospectus supplement, CWALT 2007-15CB Pro. Supp. A-8, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans |
|---|---|---|
| Investment Property | 214 | 6.30% |
| Primary Residence | 2,499 | 89.49% |
| Secondary Residence | 128 | 4.21% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), D(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWALT 2007-15CB Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWALT 2007-15CB Pro. Supp. pp. A-1-11. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-5 made the following untrue and misleading statements about the 2,841 initial mortgage loans collateral pool: (i) the weighted average initial LTV ratio was 61.99%; (ii) only 32 loans (1.27% of the total initial mortgage loans) had an LTV ratio greater

than 90%; (iii) only 94 loans (3.53% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page A-6 made the following untrue and misleading statements about the 2,841 initial mortgage loans collateral pool: (i) the weighted average initial combined LTV ratio was 66.63%; (ii) only 492 loans (18.42% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 663 loans (25.19% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, whose values were confirmed with a Fannie Mae proprietary automated valuation model, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWALT 2007-15CB Pro. Supp. S-35.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan - to - Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan - to - Value Ratio may not exceed 100%." CWALT 2007-15CB Pro. Supp. S-34.

- The prospectus supplement stated that under the Reduced Documentation Program, the maximum loan-to-value ratio was 95%; under the CLUES Plus Documentation Program, the maximum Loan-to-Value Ratio was 75%; and under the Streamlined Documentation Program, the maximum LTV ratio was 95%. CWALT 2007-15CB Pro. Supp. pp. S-36.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), C(2), (D)(2)-(5) and E(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWALT 2007-15CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the

monthly gross income (the "debt - to – income" ratios) are within acceptable limits. The maximum acceptable debt - to - income ratio, which is determined on a loan - by - loan basis varies depending on a number of underwriting criteria, including the Loan - to - Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt – to - income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs."  CWALT 2007-15CB Pro. Supp. S-34.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 33% and a debt - to - income ratio based on the borrower's total monthly debt of up to 38%."  CWALT 2007-15CB Pro. Supp. S-36.

- The prospectus supplement stated that "Under its Expanded Underwriting Guidelines, Countrywide Home Loans generally permits a debt - to - income ratio based on the borrower's monthly housing expenses of up to 36% and a debt - to - income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan - to - Value Ratio exceeds 80%, the maximum permitted debt - to - income ratios are 33% and 38%, respectively."  CWALT 2007-15CB Pro. Supp. S-37.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWALT 2007-15CB Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one - to four - family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWALT 2007-15CB Pro. Supp. S-29.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWALT 2007-15CB Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement. The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of

the class will receive payments to which the securityholders are entitled under the related Agreement."  CWALT 2007-15CB Prospectus p. 109-10.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWALT 2007-15CB Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The master servicer will master service all of the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement.  The master servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders."  CWALT 2007-15CB Pro. Supp. S-38.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWALT 2007-15CB Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower."  CWALT 2007-15CB Pro. Supp. S-34.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11.    **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 2,841 initial mortgage loans in the collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  27.33%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program:  30.12%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  21.13%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's No Income/No Asset Documentation Loan Program:  8.73%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 6.34%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 5.40%; (vii) Percent of Mortgage Loans

allegedly issued according to Countrywide's Streamlined Documentation

Loan Program: 0.96%.

- These statements were untrue and misleading for the reasons set forth in

  Section IV of the Complaint.

<u>**Exhibit FF:  Misrepresentations in the Offering Documents for CWL 2006-S8**</u>

1.      Collateral type:  pool of closed-end, fixed rate loans that are secured by second liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  19,106.

3.      **Untrue and misleading statements about underwriting guidelines in the CWL 2006-S8 Offering Documents:**

- In the prospectus, Countrywide represented that "The applicable prospectus supplement may provide for the seller's representations and warranties relating to the loans, but if it does not, each seller will represent and warrant that all loans originated and/or sold by it to the depositor or one of its affiliates will have been underwritten in accordance with standards consistent with those utilized by mortgage lenders generally during the period of origination for similar types of loans."  CWL 2006-S8 Prospectus p. 26.

- Countrywide further represented in the Offering Documents that Countrywide's "Underwriting standards are applied by or on behalf of a lender to evaluate the borrower's credit standing and repayment ability, and the value and adequacy of the related Property as collateral."  CWL 2006-S8 Prospectus p. 27.

- In the registration statement and prospectus supplement, Countrywide represented that "The underwriting process is intended to assess the applicant's credit standing and repayment ability, and the value and adequacy of the real property security as collateral for the proposed loan."  CWL 2006-S8 Pro. Supp. S-27.

- Countrywide further represented in the Offering Documents that "Each applicant for a closed-end second lien mortgage loan must complete an application that lists

the applicant's assets, liabilities, income, employment history, and other demographic and personal information.  If information in the loan application demonstrates that the applicant has sufficient income and there is sufficient equity in the real property to justify making a closed-end second lien mortgage loan, Countrywide Home Loans will conduct a further credit investigation of the applicant."  CWL 2006-S8 Pro. Supp. S-27.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.  **Untrue and misleading statements about owner occupancy in the CWL 2006-S8 Offering Documents:**

- In the prospectus supplement, CWL 2006-S8 Pro. Supp. A-5, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Primary Residence | 17789 | 94.74% |
| Investment Property | 801 | 2.89% |
| Secondary Residence | 516 | 2.37% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV (A)-(C), (D)(2), (D)(4), and (D)(5) of the Complaint.

5.      **Untrue and misleading statements about combined LTV ratios in the CWL**

**2006-S8 Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWL 2006-S8 A-1-7. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 19,106 initial mortgage loans: (i) the weighted average initial combined LTV ratio was 89.29%; (ii) only 10,634 loans (55.96% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (iii) only 16,191 loans (83.01% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Full appraisals are generally performed on all closed-end second lien mortgage loans that at origination had a loan amount greater than $100,000. These appraisals are determined on the basis of a sponsor-approved, independent third-party, fee-based appraisal completed on forms approved by Fannie Mae or Freddie Mac. For certain closed-end second lien mortgage loans that had at origination a loan amount between $100,000 and $250,000, determined by the FICO score of the borrower, a drive-by evaluation is generally completed by a state licensed, independent third party, professional appraiser on forms approved by either Fannie Mae or Freddie Mac. The drive-by evaluation is an exterior

examination of the premises by the appraiser to determine that the property is in good condition. The appraisal is based on various factors, including the market value of comparable homes and the cost of replacing the improvements, and generally must have been made not earlier than 180 days before the date of origination of the mortgage loan." CWL 2006-S8 Pro. Supp. S-28.

- The prospectus supplement also stated that "Countrywide Home Loans currently offers closed-end second lien mortgage loan products that allow maximum combined loan-to-value ratios up to 100%." CWL 2006-S8 Pro. Supp. S-28.

- The prospectus also stated that "Each seller's underwriting standards will generally permit loans with loan-to-value ratios at origination of up to 100% depending on the loan program, type and use of the property, creditworthiness of the borrower and debt-to-income ratio." CWL 2006-S8 Prospectus p. 27.

- Countrywide's statements about combined LTV ratios are also untrue and misleading for the reasons set forth in Sections IV (A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

6.     **Untrue and misleading statements about debt-to-income ratios in the CWL 2006-S8 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "After obtaining all applicable income, liability, asset, employment, credit and property information, Countrywide Home Loans generally uses a debt-to-income ratio to assist in determining whether the prospective borrower has sufficient monthly income available to support the payments on the closed-end second lien mortgage loan in addition to any senior mortgage loan payments

4

(including any escrows for property taxes and hazard insurance premiums) and other monthly credit obligations. The "debt-to-income ratio" is the ratio of the borrower's total monthly credit obligations to the borrower's gross monthly income. Based on this, the maximum monthly debt-to-income ratio is 45%." CWL 2006-S8 Pro. Supp. S-28.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWL 2006-S8 Offering Documents:**

- The prospectus supplement stated that "The Mortgage Loans will be selected from among the outstanding one- to four-family mortgage loans in the applicable Seller's portfolio which meet the criteria described in this prospectus supplement. No selection will be made in a manner that would adversely affect the interests of certificateholders or the Certificate Insurer." CWL 2006-S8 Pro. Supp. S-23.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWL 2006-S8 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement.  The rating would be

based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement." CWL 2006-S8 Prospectus p. 126.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWL 2006-S8 Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The Master Servicer will master service all of the Mortgage Loans in accordance with the terms set forth in the Pooling and Servicing Agreement and the Credit Insurance Policy. The Master Servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders." CWL 2006-S8 Pro. Supp. S-31.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWL 2006 S-8 Offering Documents:**

6

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines will be made when compensating factors are present.  These factors include the borrower's employment stability, favorable credit history, equity in the related property, and the nature of the underlying first mortgage loan."  CWL 2006 S8 S-27.

- This statement was untrue and misleading for the reasons set forth in Section IV (E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart in Annex A made the following untrue and misleading statements about the 19,106 initial mortgage loans in the collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full Documentation Loan Program:  23.06%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program:  32.42%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program:  23.70%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's Alternative Documentation Loan Program:  14.31%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Super-Streamlined Documentation Loan Program:  6.06%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program:  0.45%.

7

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

<u>**Exhibit GG:  Misrepresentations in the Offering Documents for CWL 2006-S9**</u>

1.      Collateral type:  pool of closed-end, fixed rate loans that are secured by second liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  19,989

3.      **Untrue and misleading statements about underwriting guidelines in the CWL 2006-S9 Offering Documents:**

- In the prospectus, Countrywide represented that "The applicable prospectus supplement may provide for the seller's representations and warranties relating to the loans, but if it does not, each seller will represent and warrant that all loans originated and/or sold by it to the depositor or one of its affiliates will have been underwritten in accordance with standards consistent with those utilized by mortgage lenders generally during the period of origination for similar types of loans."  CWL 2006-S9 Prospectus p. 26.

- Countrywide further represented in the Offering Documents that Countrywide's "Underwriting standards are applied by or on behalf of a lender to evaluate the borrower's credit standing and repayment ability, and the value and adequacy of the related Property as collateral."  CWL 2006-S9 Prospectus p. 27.

- In the registration statement and prospectus supplement, Countrywide represented that "The underwriting process is intended to assess the applicant's credit standing and repayment ability, and the value and adequacy of the real property security as collateral for the proposed loan."  CWL 2006-S9 Pro. Supp. S-31.

- Countrywide further represented in the Offering Documents that "Each applicant for a closed-end second lien mortgage loan must complete an application that lists

the applicant's assets, liabilities, income, employment history, and other demographic and personal information. If information in the loan application demonstrates that the applicant has sufficient income and there is sufficient equity in the real property to justify making a closed-end second lien mortgage loan, Countrywide Home Loans will conduct a further credit investigation of the applicant." CWL 2006-S9 Pro. Supp. S-31.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.   **Untrue and misleading statements about owner occupancy in the CWL 2006-S9 Offering Documents:**

- In the prospectus supplement, CWL 2006-S9 Pro. Supp. A-5, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Primary Residence | 18,756 | 95.60% |
| Secondary Residence | 531 | 2.26% |
| Investment Property | 702 | 2.14% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV (A)-(C), (D)(2), (D)(4) and (D)(5) of the Complaint.

5.    **Untrue and misleading statements about combined LTV ratios in the CWL**

**2006-S9 Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole.  CWL 2006-S9 Pro. Supp. A-1-7.  The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 19989 initial mortgage loans:  (i) the weighted average initial LTV ratio was 89.42%; (ii) only 11,254 loans (58.09 % of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 16,892 loans (82.73% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following:  "Full appraisals are generally performed on all closed-end second lien mortgage loans that at origination had a loan amount greater than $100,000. These appraisals are determined on the basis of a sponsor-approved, independent third-party, fee-based appraisal completed on forms approved by Fannie Mae or Freddie Mac. For certain closed-end second lien mortgage loans that had an origination a loan amount between $100,000 and $250,000, determined by the FICO score of the borrower, a drive-by evaluation is generally completed by a state licensed, independent third party, professional appraiser on forms approved by either Fannie Mae or Freddie Mac.  The drive-by evaluation is an exterior examination of the premises by the appraiser to determine that the property is in

3

good condition. The appraisal is based on various factors, including the market value of comparable homes and the cost of replacing the improvements, and generally must have been made not earlier than 180 days before the date of origination of the mortgage loan." CWL 2006-S9 Pro. Supp. S-32.

- The prospectus supplement also stated that "Countrywide Home Loans currently offers closed-end second lien mortgage loan products that allow maximum combined loan-to-value ratios up to 100%." CWL 2006-S9 Pro. Supp. S-32.

- The prospectus also stated that "Each seller's underwriting standards will generally permit loans with loan-to-value ratios at origination of up to 100% depending on the loan program, type and use of the property, creditworthiness of the borrower and debt-to-income ratio." CWL 2006-S9 Prospectus p. 27.

- Countrywide's statements about combined LTV ratios are also untrue and misleading for the reasons set forth in Sections IV (A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWL 2006-S9 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "After obtaining all applicable employment, credit and property information, the related seller will use a debt-to-income ratio to assist in determining whether the prospective borrower has sufficient monthly income available to support the payments of principal and interest on the mortgage loan in addition to other monthly credit obligations. The "debt-to-income ratio" is the ratio of the borrower's total monthly payments to the borrower's gross monthly income. The

4

maximum monthly debt-to-income ratio will vary depending upon a borrower's credit grade and loan program but will not generally exceed 55%." CWL 2006-S9 Prospectus p. 27.

- Countrywide's statements about debt-to-income ratios are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWL 2006-S9 Offering Documents:**

- The prospectus supplement stated that "The Mortgage Loans will be selected from among the outstanding one- to four-family mortgage loans in the applicable Seller's portfolio which meet the criteria described in this prospectus supplement. No selection will be made in a manner that would adversely affect the interests of certificateholders or the Certificate Insurer." CWL 2006-S9 Pro. Supp. S-27.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWL 2006-S9 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement. The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating

Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement."  CWL 2006-S9 Prospectus p. 126.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWL 2006-S9 Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The Master Servicer will master service all of the Mortgage Loans in accordance with the terms set forth in the Pooling and Servicing Agreement and the Credit Insurance Policy. The Master Servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders."  CWL 2006-S9 Pro. Supp. S-35.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWL 2006 S-9 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines will be made when compensating factors are present.  These factors include the

6

borrower's employment stability, favorable credit history, equity in the related property, and the nature of the underlying first mortgage loan." CWL 2006 S9 S-31.

- This statement was untrue and misleading for the reasons set forth in Section IV (E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart in Annex A made the following untrue and misleading statements about the 19,989 initial mortgage loans in the collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full Documentation Loan Program:  26.64%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program:  24.12%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program:  27.04%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's Alternative Documentation Loan Program:  15.23%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Super-Streamlined Documentation Loan Program:  6.46%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program:  0.52%.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

<u>**Exhibit HH:  Misrepresentations in the Offering Documents for CWL 2007-4**</u>

1.      Collateral type:  pool of fixed rate credit-blemished mortgage loans that are secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  3,907

3.      **Untrue and misleading statements about underwriting guidelines in the CWL 2007-4 Offering Documents:**

- In the prospectus, Countrywide represented that "The applicable prospectus supplement may provide for the seller's representations and warranties relating to the loans, but if it does not, each seller will represent and warrant that all loans originated and/or sold by it to the depositor or one of its affiliates will have been underwritten in accordance with standards consistent with those utilized by mortgage lenders generally during the period of origination for similar types of loans."  CWL 2007-4 Prospectus p. 27.

- Countrywide further represented in the Offering Documents that Countrywide's "Underwriting standards are applied by or on behalf of a lender to evaluate the borrower's credit standing and repayment ability, and the value and adequacy of the related Property as collateral."  CWL 2007-4 Prospectus p. 28.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWL 2007-4 Offering Documents:**

- In the prospectus supplement, CWL 2007-4 Pro. Supp. A-6, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Owner Occupied | 3748 | 96.94% |
| Investment Property | 127 | 2.21% |
| Second Home | 32 | 0.85% |

- The following analysis was performed by Plaintiffs in <u>Allstate Ins. Co., et al. v. Countrywide Fin. Corp., et al.</u>, Docket No. 10 CIV 9591 (AKH).  It is also described more fully in Sections IV (A)-(C), (D)(2), (D)(4), and (D)(5) of the Complaint:

    - Of the 1539 Mortgage Loans allegedly secured by owner-occupied properties, the number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address, or listed a different address as the one for the property owner's property tax exemption:  61.

    - Of the 1,539 Mortgage Loans allegedly secured by owner-occupied properties, the number of loans on which creditors reported a different property address as the customer's mailing address six months after origination of the securitized loan: 239.

    - Of the 1,539 Mortgage Loans allegedly secured by owner-occupied properties, the number of loans on which the borrower owned other

properties during the same time period of ownership of the securitized property: 56.

- ▪ Of the 1,539 Mortgage Loans allegedly secured by owner-occupied properties, the number of loans on which other properties owned by the borrower did not list the securitized property as the owner's primary residence: 160.

- ▪ Of the 1,539 Mortgage Loans allegedly secured by owner-occupied properties, the number of loans on which other properties owned by the borrower had liens that did not list the securitized property as the owner's primary residence: 130.

- ▪ In sum, of the 1,539 Mortgage Loans allegedly secured by owner-occupied properties, the non-duplicative number of loans that appear not to be owner-occupied, based on their failure of at least two of Allstate's analytical tests: 148, representing 9.6% of the Mortgage Loans allegedly secured by owner-occupied properties.

- • Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV (A)-(C), (D)(2), (D)(4), and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWL 2007-4**

**Offering Documents:**

- • The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWL 2007-4 A-1-

3

8.  The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 3907 initial mortgage loans:  (i) the weighted average initial LTV ratio was 76.94%; (ii) only 436 loans (9.83% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 1,597 loans (41.16% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- The following analysis was performed by Plaintiffs in <u>Allstate Ins. Co., et al. v. Countrywide Fin. Corp., et al.</u>, Docket No. 10 CIV 9591 (AKH).  It is also described more fully in Section IV of the Complaint:

  - Allstate's subsequent loan-level analysis of the mortgages in the collateral pool determined that the LTV ratios were on average much higher than represented[1]

    - The weighted average initial LTV ratio was 87.0%

    - 196 loans (12.3% of the loans tested) had an LTV ratio greater than 100%.

    - 446 loans (27.9% of the loans tested) had an LTV ratio greater than 90%.

    - 851 loans (53.2% of the loans tested) had an LTV ratio greater than 80%.

  - Allstate's loan-level analysis further determined that:

---

[1] There were insufficient data for the Automated Valuation Model used in Allstate's analysis to estimate a true market value for a subset of the Mortgage Loans tested (834 Mortgage Loans).  Allstate excluded these Mortgage Loans when calculating the percentage of loans with LTV ratios greater than represented in the prospectus supplement.

4

- 63.6% of the loans had an actual LTV ratio that was between 0% and 25% greater than the LTV ratios represented in the prospectus supplement.

- 15.4% of the loans had an actual LTV that was more than 25% greater than the LTV ratios represented in the prospectus supplement.

- In the registration statement and prospectus supplement, Countrywide stated the following:  "Countrywide Home Loans' underwriting standards are applied in accordance with applicable federal and state laws and regulations and require an independent appraisal of the mortgaged property prepared on a Uniform Residential Appraisal Report (Form 1004) or other appraisal form as applicable to the specific mortgaged property type. Each appraisal includes a market data analysis based on recent sales of comparable homes in the area and, where deemed appropriate, replacement cost analysis based on the current cost of constructing a similar home and generally is required to have been made not earlier than 180 days prior to the date of origination of the mortgage loan. Every independent appraisal is reviewed by a representative of Countrywide Home Loans before the loan is funded, and an additional review appraisal is generally performed in connection with appraisals not provided by Landsafe Appraisals, Inc., a wholly owned subsidiary of Countrywide Home Loans."  CWL 2007-4 Pro. Supp. S-34.

- The prospectus supplement also stated that "Countrywide Home Loans' underwriting standards permit first mortgage loans with loan-to-value ratios at

5

origination of up to 100% depending on the program, type and use of the property, documentation level, creditworthiness of the borrower, debt-to-income ratio and loan amount." CWL 2007-4 Pro. Supp. S-34.

- The prospectus also stated that "Each seller's underwriting standards will generally permit loans with loan-to-value ratios at origination of up to 100% depending on the loan program, type and use of the property, creditworthiness of the borrower and debt-to-income ratio." CWL 2007-4 Prospectus p. 28.

- The prospectus supplement also stated that under Credit Grade Category "A", the maximum loan-to-value ratio was 100%; under Credit Grade Category "A-", the maximum loan-to-value ratio was 90%; under Credit Grade Category "B", the maximum loan-to-value ratio was 85%; under Credit Grade Category "C", the maximum loan-to-value ratio was 80%; under Credit Grade Category "C-", the maximum loan-to-value ratio was 70%; and under Credit Grade Category "D", the maximum loan-to-value ratio was 65%. CWL 2007-4 Pro. Supp. S-35-36.

- Countrywide's statements about LTV ratios are also untrue and misleading for the reasons set forth in Sections IV (A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

6. **Untrue and misleading statements about combined LTV ratios in the CWL 2007-4 Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWL 2007-4 A-1-

8. The statistics in the pool were incorrect because many of the combined LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 3907 initial mortgage loans: (i) only 761 loans (16.85% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (ii) only 1,925 loans (48.38% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- The following analysis was performed by Plaintiffs in <u>Allstate Ins. Co., et al. v. Countrywide Fin. Corp., et al.</u>, Docket No. 10 CIV 9591 (AKH). It is also described more fully in Section IV of the Complaint:

  - Allstate's subsequent loan-level analysis of the mortgages in the collateral pool has determined that the combined LTV ratios were on average much higher than represented.[2] In fact:

    - The weighted average initial combined LTV ratio was 89.1%

    - 218 loans (13.6% of the loans tested) had a combined LTV ratio greater than 100%;

    - 535 loans (33.4% of the loans tested) had a combined LTV ratio greater than 90%;

    - 932 loans (58.3% of the loans tested) had a combined LTV greater than 80%.

  - Allstate's loan-level analysis further determined that:

---

[2] There were insufficient data for the Automated Valuation Model used in Allstate's analysis to estimate a true market value for a subset of the Mortgage Loans tested (834) Mortgage Loans). Allstate excluded these mortgage loans when calculating the percentage of loans with combined LTV ratios greater than represented in the prospectus supplement.

- 62.4% of the loans had an actual combined LTV ratio that was between 0% and 25% greater than the combined LTV ratios represented in the prospectus supplement.

- 16.8% of the loans had an actual combined LTV that was more than 25% greater than the combined LTV ratios represented in the prospectus supplement.

- Countrywide's statements about combined LTV ratios are also untrue and misleading for the reasons set forth in Sections IV (A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

7.    **Untrue and misleading statements about debt-to-income ratios in the CWL 2007-4 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "After obtaining all applicable employment, credit and property information, the related seller will use a debt-to-income ratio to assist in determining whether the prospective borrower has sufficient monthly income available to support the payments of principal and interest on the mortgage loan in addition to other monthly credit obligations. The "debt-to-income ratio" is the ratio of the borrower's total monthly payments to the borrower's gross monthly income. The maximum monthly debt-to-income ratio will vary depending upon a borrower's credit grade and loan program but will not generally exceed 55%." CWL 2007-4 Prospectus p. 28.

- Countrywide's statements about debt-to-income ratios are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about selection of Mortgage Loans in the CWL 2007-4 Offering Documents:**

- The prospectus supplement stated that "The Mortgage Loans will be selected from among the outstanding one- to four-family mortgage loans in the applicable Seller's portfolio which meet the criteria described in this prospectus supplement. No selection will be made in a manner that would adversely affect the interests of certificateholders or the Certificate Insurer." CWL 2007-4 Pro. Supp. S-27.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about credit ratings in the CWL 2007-4 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement. The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement." CWL 2007-4 Prospectus p. 113.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

9

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

10. **Untrue and misleading statements about loan servicing in the CWL 2007-4 Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The Master Servicer will master service all of the Mortgage Loans in accordance with the terms set forth in the Pooling and Servicing Agreement and the Credit Insurance Policy. The Master Servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders."  CWL 2007-4 Pro. Supp. S-37.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

11. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWL 2007-4 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "On a case by case basis, Countrywide Home Loans may determine that, based upon compensating factors, a prospective borrower not strictly qualifying under the underwriting risk category guidelines described below warrants an underwriting exception. Compensating factors may include low loan-to value ratio, low debt-to-income ratio, stable employment, time in the same residence or other factors."  CWL 2007-4 S-33.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

    12. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart in Annex A made the following untrue and misleading statements about the 3907 initial mortgage loans in the collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full Documentation Loan Program: 71.80%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income Documentation Loan Program: 28.20%.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

<u>**Exhibit II:  Misrepresentations in the Offering Documents for CWL 2007-11**</u>

1.      Collateral type:  a pool of two groups of fixed rate credit-blemished mortgage loans that are secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  2,768.

3.      **Untrue and misleading statements about underwriting guidelines in the CWL 2007-11 Offering Documents:**

- In the prospectus, Countrywide represented that "The applicable prospectus supplement may provide for the seller's representations and warranties relating to the loans, but if it does not, each seller will represent and warrant that all loans originated and/or sold by it to the depositor or one of its affiliates will have been underwritten in accordance with standards consistent with those utilized by mortgage lenders generally during the period of origination for similar types of loans."  CWL 2007-11 Prospectus p. 27.

- Countrywide further represented in the Offering Documents that Countrywide's "Underwriting standards are applied by or on behalf of a lender to evaluate the borrower's credit standing and repayment ability, and the value and adequacy of the related Property as collateral."  CWL 2007-11 Prospectus p. 28.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWL 2007-11 Offering Documents:**

- In the prospectus supplement, CWL 2007-11 Pro. Supp. A-6 & A-17, in tables labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**Loan Group 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Owner Occupied | 999 | 97.76% |
| Investment Property | 28 | 1.66% |
| Second Home | 6 | 0.58% |

**Loan Group 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 2 |
|---|---|---|
| Owner Occupied | 1,654 | 96.56% |
| Investment Property | 71 | 2.88% |
| Second Home | 10 | 0.55% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Section IV (A)-(C), (D)(2), (D)(4), and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWL 2007-11 Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWL 2007-11 A-1-

35.  The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 1,033 initial mortgage loans in the Loan Group 1 collateral pool:  (i) only 72 loans (6.52% of the total initial mortgage loans) had an LTV ratio greater than 90%; (ii) only 406 loans (37.68% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the prospectus supplement, Countrywide made the following untrue and misleading statement about the 1033 initial mortgage loans in the Loan Group 1 collateral pool: (i) the weighted average initial LTV ratio was 75.49%.  CWL 2007-11 Pro. Supp. S-3.

- Among other statistics, the chart on page A-15 made the following untrue and misleading statements about the 1735 initial mortgage loans in the Loan Group 2 collateral pool:  (i) only 113 loans (7.13% of the total initial mortgage loans) had an LTV ratio greater than 90%; (ii) only 561 loans (33.90% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the prospectus supplement, Countrywide made the following untrue and misleading statement about the 1,735 initial mortgage loans in the Loan Group 2 collateral pool: (i) the weighted average initial LTV ration was 75.08%. CWL 2007-11 Pro. Supp. S-3.

- In the registration statement and prospectus supplement, Countrywide stated the following:  "Countrywide Home Loans' underwriting standards are applied in accordance with applicable federal and state laws and regulations and require an

3

independent appraisal of the mortgaged property prepared on a Uniform Residential Appraisal Report (Form 1004) or other appraisal form as applicable to the specific mortgaged property type. Each appraisal includes a market data analysis based on recent sales of comparable homes in the area and, where deemed appropriate, replacement cost analysis based on the current cost of constructing a similar home and generally is required to have been made not earlier than 180 days prior to the date of origination of the mortgage loan. Every independent appraisal is reviewed by a representative of Countrywide Home Loans before the loan is funded, and an additional review appraisal is generally performed in connection with appraisals not provided by Landsafe Appraisals, Inc., a wholly owned subsidiary of Countrywide Home Loans." CWL 2007-11 Pro. Supp. S-42.

- The prospectus also stated that "Each seller's underwriting standards will generally permit loans with loan-to-value ratios at origination of up to 100% depending on the loan program, type and use of the property, creditworthiness of the borrower and debt-to-income ratio." CWL 2007-11 Prospectus p. 28.

- Countrywide's statements about LTV ratios are also untrue and misleading for the reasons set forth in Sections IV (A)-(B), (C)(2), (D)(2)-(5), and (E)(1) of the Complaint.

6. **Untrue and misleading statements about combined LTV ratios in the CWL 2007-11 Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the combined LTV

characteristics of the loans and the mortgage pool as a whole. CWL 2007-11 A-1-35. The statistics in the pool were incorrect because many of the combined LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 1,033 initial mortgage loans in the Loan Group 1 collateral pool: (i) only 74 loans (6.66% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (ii) only 411 loans (38.22% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- Among other statistics, the chart on page A-15 made the following untrue and misleading statements about the 1,735 initial mortgage loans in the Loan Group 2 collateral pool: (i) only 148 loans (9.37% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (ii) only 596 loans (36.20% of the total initial mortgage loans) had a combined LTV ratio greater than 80%.

- Countrywide's statements about combined LTV ratios are also untrue and misleading for the reasons set forth in Sections IV (A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

7. **Untrue and misleading statements about debt-to-income ratios in the CWL 2007-11 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "After obtaining all applicable employment, credit and property information, the related seller will use a debt-to-income ratio to assist in determining whether the prospective borrower has sufficient monthly income available to support the payments of principal and interest on the mortgage loan in addition to other

monthly credit obligations. The "debt-to-income ratio" is the ratio of the borrower's total monthly payments to the borrower's gross monthly income. The maximum monthly debt-to-income ratio will vary depending upon a borrower's credit grade and loan program but will not generally exceed 55%." CWL 2007-11 Prospectus p. 28.

- Countrywide's statements about debt-to-income ratios are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about selection of Mortgage Loans in the CWL 2007-11 Offering Documents:**

- The prospectus supplement stated that "The Mortgage Loans will be selected from among the outstanding one- to four-family mortgage loans in the applicable Seller's portfolio which meet the criteria described in this prospectus supplement. No selection will be made in a manner that would adversely affect the interests of certificateholders or the Certificate Insurer." CWL 2007-11 Pro. Supp. S-34.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about credit ratings in the CWL 2007-11 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement. The rating would be

based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement."  CWL 2007-11 Prospectus p. 114.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

10.   **Untrue and misleading statements about loan servicing in the CWL 2007-11 Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The Master Servicer will master service all of the Mortgage Loans in accordance with the terms set forth in the Pooling and Servicing Agreement and the Credit Insurance Policy. The Master Servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders."  CWL 2007-11 Pro. Supp. S-50.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

11.   **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWL 2007-11 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "On a case by case basis, Countrywide Home Loans may determine that, based upon compensating factors, a prospective borrower not strictly qualifying under the underwriting risk category guidelines described below warrants an underwriting exception. Compensating factors may include low loan-to value ratio, low debt-to-income ratio, stable employment, time in the same residence or other factors." CWL 2007-11 S-42.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

12.  **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart in Annex A made the following untrue and misleading statements about the 2,768 initial mortgage loans in the collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full Documentation Loan Program:  76.86%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income Documentation Loan Program:  21. 420%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 1.28%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program: 0.44%.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

<u>**Exhibit JJ:  Misrepresentations in the Offering Documents for CWL 2007-S1**</u>

1.      Collateral type:  a pool of closed end, fixed rate loans that are secured by second liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  24,177.

3.      **Untrue and misleading statements about underwriting guidelines in the CWL 2007-S1 Offering Documents:**

- In the prospectus, Countrywide represented that "The applicable prospectus supplement may provide for the seller's representations and warranties relating to the loans, but if it does not, each seller will represent and warrant that all loans originated and/or sold by it to the depositor or one of its affiliates will have been underwritten in accordance with standards consistent with those utilized by mortgage lenders generally during the period of origination for similar types of loans."  CWL 2007-S1 Prospectus pp. 26-27.

- Countrywide further represented in the Offering Documents that Countrywide's "Underwriting standards are applied by or on behalf of a lender to evaluate the borrower's credit standing and repayment ability, and the value and adequacy of the related Property as collateral."  CWL 2007-S1 Prospectus p. 27.

- In the registration statement and prospectus supplement, Countrywide represented that "The underwriting process is intended to assess the applicant's credit standing and repayment ability, and the value and adequacy of the real property security as collateral for the proposed loan."  CWL 2007-S1 Pro. Supp. S-34.

- Countrywide further represented in the Offering Documents that "Each applicant for a closed-end second lien mortgage loan must complete an application that lists

the applicant's assets, liabilities, income, employment history, and other demographic and personal information. If information in the loan application demonstrates that the applicant has sufficient income and there is sufficient equity in the real property to justify making a closed-end second lien mortgage loan, Countrywide Home Loans will conduct a further credit investigation of the applicant." CWL 2007-S1 Pro. Supp. S-34.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4. **Untrue and misleading statements about owner occupancy in the CWL 2007-S1 Offering Documents:**

- In the prospectus supplement, CWL 2007-S1 Pro. Supp. A-5, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans |
|---|---|---|
| Primary Residence | 22,663 | 95.26% |
| Investment Property | 889 | 2.51% |
| Secondary Residence | 625 | 2.23% |

- The following analysis was performed by Plaintiffs in <u>Allstate Ins. Co., et al. v. Countrywide Fin. Corp., et al.</u>, Docket No. 10 CIV 9591 (AKH). It is also described more fully in Section IV of the Complaint:[3]

---

[3] Allstate's loan level analysis tested a random sample of 1,600 Mortgage Loans from the collateral pool. For each test, there were insufficient data for a subset of the Mortgage Loans tested (ranging from 275 to 560 Mortgage Loans) to make a determination as to whether these Mortgage Loans are in fact secured by owner-occupied

- Of the 1,505 Mortgage Loans allegedly secured by owner-occupied properties, the number of loans on which the owner of the property instructed tax authorities to send property tax bills to him or her at a different address, or listed a different address as the one for the property owner's property tax exemption: 85.

- Of the 1,505 Mortgage Loans allegedly secured by owner-occupied properties, the number of loans on which creditors reported a different property address as the customer's mailing address six months after origination of the securitized loan: 150.

- Of the 1,505 Mortgage Loans allegedly secured by owner-occupied properties, the number of loans on which the borrower owned other properties during the same time period of ownership of the securitized property: 79.

- Of the 1,505 Mortgage Loans allegedly secured by owner-occupied properties, the number of loans on which other properties owned by the borrower did not list the securitized property as the owner's primary residence: 178.

- Of the 1,505 Mortgage Loans allegedly secured by owner-occupied properties, the number of loans on which other properties owned by the borrower had liens that did not list the securitized property as the owner's primary residence: 218.

---

properties. Consequently, the test results likely understate the true numbers and percentages of Mortgage Loans allegedly secured by owner-occupied properties, which in fact are not.

- ▪ In sum, of the 1,505 Mortgage Loans allegedly secured by owner-occupied properties, the non-duplicative number of loans that appear not to be owner-occupied, based on their failure of at least two of Allstate's analytical test: 178, representing 11.8% of the Mortgage Loans allegedly secured by owner-occupied properties.

- • Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV (A)-(C), (D)(2), (D)(4), and (D)(5) of the Complaint.

5. **Untrue and misleading statements about combined LTV ratios in the CWL 2007-S1 Offering Documents:**

- • The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWL 2007-S1 A-4. The statistics in the pool were incorrect because many of the combined LTV ratios for the individual loans were miscalculated.

- • Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 24,177 initial mortgage loans in the collateral pool:  (i) the weighted average initial combined LTV ratio was 89.93%; (ii) only 13,421 loans (55.51% of the total initial mortgage loans) had a combined LTV ratio greater than 90%; (ii) only 20,719 loans (85.7% of the total initial mortgage loans) had an LTV ratio greater than 80%.

4

- The following analysis was performed by Plaintiffs in <u>Allstate Ins. Co., et al. v. Countrywide Fin. Corp., et al.</u>, Docket No. 10 CIV 9591 (AKH).  It is also described more fully in Section IV of the Complaint:

  - Allstate's subsequent loan-level analysis of the mortgages in the collateral pool has determined that the combined LTV ratios were on average much higher than represented. [4]  In fact:

    - 294 loans (18.4% of the loans tested) had combined LTV ratios greater than 100%.

  - Allstate's loan-level analysis has further determined that:

    - 35.1% of the loans had an actual combined LTV ratio that was between 0% and 25% greater than the combined LTV ratios represented in the prospectus supplement.

    - 7.3% of the loans had an actual combined LTV that was more than 25% greater than the combined LTV represented in the prospectus supplement.

- In the prospectus supplement, Countrywide stated the following:  "Full appraisals are generally performed on all closed-end second lien mortgage loans that at origination had a loan amount greater than $100,000. These appraisals are determined on the basis of a sponsor-approved, independent third-party, fee-based appraisal completed on forms approved by Fannie Mae or Freddie Mac.  For certain closed-end second lien mortgage loans that had an origination a loan

---

[4] There were insufficient data for the Automated Valuation Model used in Allstate's analysis to estimate a true market value for a subset of the Mortgage Loans tested (653 Mortgage Loans).  Allstate has excluded these mortgage loans when calculating the percentage of loans with combined LTV rations greater than represented in the prospectus supplement..

amount between $100,000 and $250,000, determined by the FICO score of the

borrower, a drive-by evaluation is generally completed by a state licensed,

independent third party, professional appraiser on forms approved by either

Fannie Mae or Freddie Mac.  The drive-by evaluation is an exterior examination

of the premises by the appraiser to determine that the property is in good

condition. The appraisal is based on various factors, including the market value of

comparable homes and the cost of replacing the improvements, and generally

must have been made not earlier than 180 days before the date of origination of

the mortgage loan."  CWL 2007-S1 Pro. Supp. S-35.

- The prospectus supplement also stated that "Countrywide Home Loans currently

   offers closed-end second lien mortgage loan products that allow maximum

   combined loan-to-value ratios up to 100%."  CWL 2007-S1 Pro. Supp. S-35.

- The prospectus also stated that "Each seller's underwriting standards will

   generally permit loans with loan-to-value ratios at origination of up to 100%

   depending on the loan program, type and use of the property, creditworthiness of

   the borrower and debt-to-income ratio."  CWL 2007-S1 Prospectus p. 27.

- Countrywide's statements about combined LTV ratios are also untrue and

   misleading for the reasons set forth in Sections IV (A)-(B), (C)(2), (D)(2)-(5), and

   (E)(1) of the Complaint.

6.    **Untrue and misleading statements about debt-to-income ratios in the CWL**

**2007-S1 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented

   that "After obtaining all applicable employment, credit and property information,

the related seller will use a debt-to-income ratio to assist in determining whether the prospective borrower has sufficient monthly income available to support the payments of principal and interest on the mortgage loan in addition to other monthly credit obligations. The "debt-to-income ratio" is the ratio of the borrower's total monthly payments to the borrower's gross monthly income. The maximum monthly debt-to-income ratio will vary depending upon a borrower's credit grade and loan program but will not generally exceed 55%."  CWL 2007-S1 Prospectus p. 35.

- Countrywide's statements about debt-to-income ratios are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWL 2007-S1 Offering Documents:**

- The prospectus supplement stated that "The Home Equity Loans will be selected from among the outstanding one- to four-family mortgage loans in the applicable Seller's portfolio which meet the criteria described in this prospectus supplement. No selection will be made in a manner that would adversely affect the interests of certificateholders or the Certificate Insurer."  CWL 2007-S1 Pro. Supp. S-28.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWL 2007-S1 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that

they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement. The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement." CWL 2007-S1 Prospectus p. 127.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWL 2007-S1 Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The Master Servicer will master service all of the Home Equity Loans in accordance with the terms set forth in the Pooling and Servicing Agreement and the Credit Insurance Policy. The Master Servicer has agreed to service and administer the Home Equity Loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders." CWL 2007-S1 Pro. Supp. S-38.

8

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWL 2007-S1 Offering Documents:**

- In the registration statement and the prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines will be made when compensating factors are present. These factors include the borrower's employment stability, favorable credit history, equity in related property, and the nature of the underlying first mortgage loan." CWL 2007-S1 Pro. Supp. S-34

- This statement was untrue and misleading for the reasons set forth in Section IV (E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart in Annex A made the following untrue and misleading statements about the 24,177 initial mortgage loans in the collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full Documentation Loan Program: 20.58%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Alternative Documentation Loan Program: 10.18%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 31.31%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 26.44%; (v) Percent of Mortgage Loans allegedly

9

issued according to Countrywide's Super-Streamlined Documentation Loan Program:  10.70%.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

**Exhibit KK:  Misrepresentations in the Offering Documents for CWL 2007-S2**

1.      Collateral type:  a pool of closed end, fixed rate loans that are secured by second liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  13,648.

3.      **Untrue and misleading statements about underwriting guidelines in the CWL 2007-S2 Offering Documents:**

- In the prospectus, Countrywide represented that "The applicable prospectus supplement may provide for the seller's representations and warranties relating to the loans, but if it does not, each seller will represent and warrant that all loans originated and/or sold by it to the depositor or one of its affiliates will have been underwritten in accordance with standards consistent with those utilized by mortgage lenders generally during the period of origination for similar types of loans."  CWL 2007-S2 Prospectus p. 26.

- Countrywide further represented in the Offering Documents that Countrywide's "Underwriting standards are applied by or on behalf of a lender to evaluate the borrower's credit standing and repayment ability, and the value and adequacy of the related Property as collateral."  CWL 2007-S2 Prospectus p. 27.

- In the registration statement and prospectus supplement, Countrywide represented that "The underwriting process is intended to assess the applicant's credit standing and repayment ability, and the value and adequacy of the real property security as collateral for the proposed loan."  CWL 2007-S2 Pro. Supp. S-37.

- Countrywide further represented in the Offering Documents that "Each applicant for a closed-end second lien mortgage loan must complete an application that lists

the applicant's assets, liabilities, income, employment history, and other demographic and personal information.  If information in the loan application demonstrates that the applicant has sufficient income and there is sufficient equity in the real property to justify making a closed-end second lien mortgage loan, Countrywide Home Loans will conduct a further credit investigation of the applicant."  CWL 2007-S2 Pro. Supp. S-37.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4. **Untrue and misleading statements about owner occupancy in the CWL 2007-S2 Offering Documents:**

- In the prospectus supplement, CWL 2007-S2 Pro. Supp. A-5, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans |
|---|---|---|
| Primary Residence | 12,713 | 94.85% |
| Investment Property | 605 | 3.14% |
| Secondary Residence | 330 | 2.01% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV (A)-(C), (D)(2), (D)(4), and (D)(5) of the Complaint.

5. **Untrue and misleading statements about combined LTV ratios in the CWL 2007-S2 Offering Documents:**

2

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWL 2007-S2 A-1-7. The statistics in the pool were incorrect because many of the combined LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 13,648 initial mortgage loans in the collateral pool: (i) the weighted average initial LTV ration was 90.35%; (ii) only 7,847 loans (57.50% of the total initial mortgage loans) had an LTV ratio greater than 90%; (ii) only 11,842 loans (86.771% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the prospectus supplement, Countrywide stated the following: "Full appraisals are generally performed on all closed-end second lien mortgage loans that at origination had a loan amount greater than $100,000. These appraisals are determined on the basis of a sponsor-approved, independent third-party, fee-based appraisal completed on forms approved by Fannie Mae or Freddie Mac. For certain closed-end second lien mortgage loans that had an origination a loan amount between $100,000 and $250,000, determined by the FICO score of the borrower, a drive-by evaluation is generally completed by a state licensed, independent third party, professional appraiser on forms approved by either Fannie Mae or Freddie Mac. The drive-by evaluation is an exterior examination of the premises by the appraiser to determine that the property is in good condition. The appraisal is based on various factors, including the market value of

comparable homes and the cost of replacing the improvements, and generally must have been made not earlier than 180 days before the date of origination of the mortgage loan." CWL 2007-S2 Pro. Supp. S-38.

- The prospectus supplement also stated that "Countrywide Home Loans currently offers closed-end second lien mortgage loan products that allow maximum combined loan-to-value ratios up to 100%." CWL 2007-S2 Pro. Supp. S-38.

- The prospectus also stated that "Each seller's underwriting standards will generally permit loans with loan-to-value ratios at origination of up to 100% depending on the loan program, type and use of the property, creditworthiness of the borrower and debt-to-income ratio." CWL 2007-S2 Prospectus p. 27.

- Countrywide's statements about combined LTV ratios are also untrue and misleading for the reasons set forth in Sections IV (A)-(B), (C)(2), (D)(2)-(5), and (E)(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWL 2007-S2 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "After obtaining all applicable employment, credit and property information, the related seller will use a debt-to-income ratio to assist in determining whether the prospective borrower has sufficient monthly income available to support the payments of principal and interest on the mortgage loan in addition to other monthly credit obligations. The "debt-to-income ratio" is the ratio of the borrower's total monthly payments to the borrower's gross monthly income. The maximum monthly debt-to-income ratio will vary depending upon a borrower's

4

credit grade and loan program but will not generally exceed 55%." CWL 2007-S2 Prospectus p. 27.

- Countrywide's statements about debt-to-income ratios are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

7.    **Untrue and misleading statements about selection of Mortgage Loans in the CWL 2007-S2 Offering Documents:**

- The prospectus supplement stated that "The Home Equity Loans will be selected from among the outstanding one- to four-family mortgage loans in the applicable Seller's portfolio which meet the criteria described in this prospectus supplement. No selection will be made in a manner that would adversely affect the interests of certificateholders or the Certificate Insurer." CWL 2007-S2 Pro. Supp. S-31.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8.    **Untrue and misleading statements about credit ratings in the CWL 2007-S2 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement. The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities

5

of the class will receive payments to which the securityholders are entitled under the related Agreement." CWL 2007-S2 Prospectus p. 126.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWL 2007-S2 Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The Master Servicer will master service all of the Mortgage Loans in accordance with the terms set forth in the Pooling and Servicing Agreement and the Credit Insurance Policy. The Master Servicer has agreed to service and administer the Home Equity Loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders." CWL 2007-S2 Pro. Supp. S-41.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWL 2007-S2 Offering Documents:**

- In the registration statement and the prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines will be made when compensating factors are present. These factors

6

include the borrower's employment stability, favorable credit history, equity in related property, and the nature of the underlying first mortgage loan." CWL 2007-S1 Pro. Supp. S-37

- This statement was untrue and misleading for the reasons set forth in Section IV (E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart in Annex A made the following untrue and misleading statements about the 13,648 initial mortgage loans in the collateral pool: (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full Documentation Loan Program: 30.96%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program: 20.56%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Alternative Documentation Loan Program: 19.82%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program: 16.47%; (v) Percent of Mortgage Loans allegedly issued according to Countrywide's Super-Streamlined Documentation Loan Program: 5.80%; (vi) Percent of Mortgage Loans allegedly issued according to Countrywide's No Ratio Documentation Loan Program: 4.70%; (vii) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income/Stated Asset Documentation Loan Program: 1.69%.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

<u>**Exhibit Y:  Misrepresentations in the Offering Documents for CWHL 2005-24**</u>

1.     Collateral type:  primarily of a pool of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.     Initial number of mortgage loans:  1,762

3.     **Untrue and misleading statements about underwriting guidelines in the CWHL 2005-24 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards."  CWHL 2005-24 Pro. Supp. S-26.

- Countrywide further represented in the Offering Documents that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWHL 2005-24 Pro. Supp. S-27.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.     **Untrue and misleading statements about owner occupancy in the CWHL 2005-24 Offering Documents:**

- In the prospectus supplement, CWHL 2005-24 Pro. Supp. p. S-23, in a table labeled "Occupancy Types," Countrywide made the following representations

about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Primary Residence | 1,656 | 93.38% |
| Secondary Residence | 106 | 6.62% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), (D)(4) and (D)(5) of the Complaint.

5.  **Untrue and misleading statements about LTV ratios in the CWHL 2005-24 Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWHL 2005-24 Pro. Supp. S-18-23.  The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-20 made the following untrue and misleading statements about the 1,762 initial mortgage loans:  (i) the weighted average initial LTV ratio was 72.40%; (ii) only 12 loans (0.53% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 47 loans (2.17% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following:  "Generally, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure

2

mortgage loans, except with respect to selected borrowers that are refinancing an existing mortgage loan that was originated or acquired by Countrywide Home Loans where, among other things, the mortgage loan has not been more than 30 days delinquent in payment during the previous twelve-month period. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWHL 2005-28 Pro. Supp. S-28.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan-to-Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan-to-Value Ratio may not exceed 100%." CWHL 2005-24 Pro. Supp. S-27.

- The prospectus supplement stated "Countrywide Home Loans' underwriting guidelines generally allow Loan-to-Value Ratios at origination of up to 95% for purchase money or rate and term refinance mortgage loans with original principal balances of up to $400,000, up to 90% for mortgage loans with original principal balances of up to $650,000, up to 80% for mortgage loans with original principal balances of up to $1,000,000, up to 75% for mortgage loans with original principal balances of up to $1,500,000, and up to 70% for mortgage loans with

3

original principal balances of up to $3,000,000. Under certain circumstances, however, Countrywide Home Loans' underwriting guidelines allow for Loan-to-Value Ratios of up to 100% for purchase money mortgage loans with original principal balances of up to $375,000." CWHL 2005-24 Pro. Supp. S-28.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWHL 2005-24 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt-to-income" ratios) are within acceptable limits. The maximum acceptable debt-to-income ratio, which is determined on a loan-by-loan basis varies depending on a number of underwriting criteria, including the Loan-to-Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt-to-income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWHL 2005-24 Pro. Supp. S-27.

- The prospectus supplement also stated that "Under its underwriting guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the

4

borrower's monthly housing expenses of up to 36% and a debt-to-income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan-to-Value Ratio exceeds 80%, the maximum permitted debt-to-income ratios are 33% and 38%, respectively." CWHL 2005-24 Pro. Supp. S-28.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWHL 2005-24 Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one- to four-family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWHL 2005-24 Pro. Supp. S-15.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWHL 2005-24 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating

5

categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement. Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any." CWHL 2005-24 Prospectus p. 108-109.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWHL 2005-24 Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "In its capacity as master servicer, Countrywide Servicing will be responsible for servicing the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. Countrywide Servicing may perform any of its obligations under the pooling and servicing agreement through one or more subservicers, which may include Countrywide Home Loans. Notwithstanding any subservicing arrangement, Countrywide Servicing will remain liable for its servicing duties and obligations under the pooling and servicing agreement as if

6

Countrywide Servicing alone were servicing the mortgage loans." CWHL 2005-24 Pro. Supp. S-29.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWHL 2005-24 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWHL 2005-24 Pro. Supp. S-27.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

<u>**Exhibit Z:  Misrepresentations in the Offering Documents for CWHL 2005-25**</u>

1.      Collateral type:  consist primarily of a pool of 30-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgage loans:  544.

3.      **Untrue and misleading statements about underwriting guidelines in the CWHL 2005-25 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the trust fund will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards."  CWHL 2005-25 Pro. Supp. S-25.

- Countrywide further represented in the Offering Documents that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral." CWHL 2005-25 Pro. Supp. S-26.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWHL 2005-25 Offering Documents:**

- In the prospectus supplement, CWHL 2005-25 Pro. Supp. p. S-22, in a table labeled "Occupancy Types," Countrywide made the following representations

about the percentage of owner-occupied properties among the total properties
secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Primary Residence | 509 | 93.43% |
| Secondary Residence | 35 | 6.57% |

- Countrywide's statements about owner occupancy are also untrue and misleading
  for the reasons set forth in Sections IV(A)-(C), (D)(2), (D)(4) and (D)(5) of the
  Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWHL 2005-25
Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans
  that collateralized the Certificates, including charts regarding the LTV
  characteristics of the loans and the mortgage pool as a whole. CWHL 2005-25
  Pro. Supp. pp. S-17-22, S-24, S-29-30.  The statistics in the pool were incorrect
  because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-19 made the following untrue and
  misleading statements about the 544 initial mortgage loans:  (i) the weighted
  average initial LTV ratio was 72.38%; (ii) only 11 loans (1.52% of the total initial
  mortgage loans) had an LTV ratio greater than 90%; (iii) only 21 loans (3.03% of
  the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the
  following:  "Generally, Countrywide Home Loans obtains appraisals from
  independent appraisers or appraisal services for properties that are to secure

9

mortgage loans, except with respect to selected borrowers that are refinancing an existing mortgage loan that was originated or acquired by Countrywide Home Loans where, among other things, the mortgage loan has not been more than 30 days delinquent in payment during the previous twelve-month period. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWHL 2005-25 Pro. Supp. S-27.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan-to-Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan-to-Value Ratio may not exceed 100%." CWHL 2005-25 Pro. Supp. S-26.

- The prospectus supplement stated "Countrywide Home Loans' underwriting guidelines generally allow Loan-to-Value Ratios at origination of up to 95% for purchase money or rate and term refinance mortgage loans with original principal balances of up to $400,000, up to 90% for mortgage loans with original principal balances of up to $650,000, up to 80% for mortgage loans with original principal balances of up to $1,000,000, up to 75% for mortgage loans with original principal balances of up to $1,500,000, and up to 70% for mortgage loans with

original principal balances of up to $3,000,000. Under certain circumstances, however, Countrywide Home Loans' underwriting guidelines allow for Loan-to-Value Ratios of up to 100% for purchase money mortgage loans with original principal balances of up to $375,000." CWHL 2005-25 Pro. Supp. S-27.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWHL 2005-25 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt-to-income" ratios) are within acceptable limits. The maximum acceptable debt-to-income ratio, which is determined on a loan-by-loan basis varies depending on a number of underwriting criteria, including the Loan-to-Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt-to-income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWHL 2005-25 Pro. Supp. S-26.

- The prospectus supplement also stated that "Under its underwriting guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the

borrower's monthly housing expenses of up to 36% and a debt-to-income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan-to-Value Ratio exceeds 80%, the maximum permitted debt-to-income ratios are 33% and 38%, respectively." CWHL 2005-25 Pro. Supp. S-27.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7. **Untrue and misleading statements about selection of Mortgage Loans in the CWHL 2005-25 Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one- to four-family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWHL 2005-25 Pro. Supp. S-14.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWHL 2005-25 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating

12

categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement. Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any." CWHL 2005-25 Prospectus p. 108-9.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWHL 2005-25 Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "In its capacity as master servicer, Countrywide Servicing will be responsible for servicing the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. Countrywide Servicing may perform any of its obligations under the pooling and servicing agreement through one or more subservicers, which may include Countrywide Home Loans. Notwithstanding any subservicing arrangement, Countrywide Servicing will remain liable for its servicing duties and obligations under the pooling and servicing agreement as if

Countrywide Servicing alone were servicing the mortgage loans." CWHL 2005-25 Pro. Supp. S-28.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWHL 2005-25 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWHL 2005-25 Pro. Supp. S-26.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

14

**Exhibit AA:  Misrepresentations in the Offering Documents for CWHL 2005-J2**

1.      Collateral type:  primarily of a pool consisting of three loan groups of 30-year and 15-year conventional fixed-rate mortgage loans secured by first liens on one- to four-family residential properties.

2.      Initial number of mortgages:  1,527

3.      **Untrue and misleading statements about underwriting guidelines in the CWHL 2005-J2 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Approximately 39.74% and 87.70% of the initial mortgage loans in loan group 2 and loan group 3, respectively, in each case by aggregate Stated Principal Balance of the mortgage loans in the related loan group as of the initial cut-off date, were originated by Countrywide Home Loans, Inc. ("Countrywide Home Loans") or acquired by Countrywide Home Loans from correspondent lenders using Countrywide Home Loans' underwriting guidelines."  CWHL 2005-J2 Pro. Supp. S-48.

- Countrywide further represented in the Offering Documents that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWHL 2005-J2 Pro. Supp. S-49.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWHL**

**2005-J2 Offering Documents:**

- In the prospectus supplement, CWHL 2005-J2 Pro. Supp. p. S-25, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Owner-Occupied | 381 | 93.70% |
| Secondary Residence | 19 | 6.30% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Owner-Occupied | 310 | 91.97% |
| Secondary Residence | 25 | 8.03% |

**LOAN GROUP 3**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Owner-Occupied | 803 | 93.87% |
| Secondary Residence | 52 | 6.13% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections IV(A)-(C), (D)(2), (D)(4) and (D)(5) of the Complaint.

2

5.     **Untrue and misleading statements about LTV ratios in the CWHL 2005-J2**

**Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole.  CWHL 2005-J2 Pro. Supp. S-20-44.  The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-23 made the following untrue and misleading statements about the 337 initial mortgage loans in the Loan Group 1 collateral pool:  (i) the weighted average initial LTV ratio was 58.41%; (ii) only 1 loan (0.21% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 5 loans (1.19% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-30 made the following untrue and misleading statements about the 335 initial mortgage loans in the Loan Group 2 collateral pool:  (i) the weighted average initial LTV ratio was 71.22%; (ii) only 4 loans (0.92% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 15 loans (3.37% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page S-39 made the following untrue and misleading statements about the 855 initial mortgage loans in the Loan Group 1 collateral pool:  (i) the weighted average initial LTV ratio was 71.46%; (ii) only 11 loans (0.89% of the total initial mortgage loans) had an LTV ratio greater than

3

90%; (iii) only 27 loans (2.13% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Except with respect to mortgage loans originated pursuant to its Streamlined Documentation Program, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWHL 2005-J2 Pro. Supp. S-54.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan-to-Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan-to-Value Ratio may not exceed 100%." CWHL 2005-J2 Pro. Supp. S-53.

- The prospectus supplement stated "Countrywide Home Loans' Standard Underwriting Guidelines for mortgage loans with non-conforming original principal balances generally allow Loan-to-Value Ratios at origination of up to 95% for purchase money or rate and term refinance mortgage loans with original

principal balances of up to $400,000, up to 90% for mortgage loans with original principal balances of up to $650,000, up to 75% for mortgage loans with original principal balances of up to $1,000,000, up to 65% for mortgage loans with original principal balances of up to $1,500,000, and up to 60% for mortgage loans with original principal balances of up to $2,000,000." CWHL 2005-J2 Pro. Supp. S-55.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWHL 2005-J2 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt-to-income" ratios) are within certain limits. If the prospective borrower has applied for an adjustable rate loan and the Loan-to-Value Ratio is less than or equal to 75%, the interest component of the monthly housing expense is calculated based on the initial loan interest rate; if the Loan-to-Value Ratio exceeds 75%, the interest component of the monthly housing expense calculation is based on the maximum possible interest rate payable in the second year of the mortgage loan. The maximum

acceptable debt-to-income ratio, which is determined on a loan-by-loan basis varies depending on a number of underwriting criteria, including the Loan-to-Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt-to-income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs."  CWHL 2005-J2 Pro. Supp. S-49.

- The prospectus supplement also stated that "Under its Standard Underwriting Guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 33% and a debt-to-income ratio based on the borrower's total monthly debt of up to 38%."  CWHL 2005-J2 Pro. Supp. S-50.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7.  **Untrue and misleading statements about selection of Mortgage Loans in the CWHL 2005-24 Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one- to four-family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely."  CWHL 2005-J2 Pro. Supp. S-17.

6

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about credit ratings in the CWHL 2005-24 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the certificates of each series offered by this prospectus and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies specified in the related prospectus supplement.  Ratings on mortgage pass-through certificates address the likelihood of receipt by certificateholders of all distributions on the underlying mortgage loans. These ratings address the structural, legal and issuer-related aspects associated with the certificates, the nature of the underlying mortgage loans and the credit quality of the credit enhancer or guarantor, if any."  CWHL 2005-J2 Prospectus p. 111.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about loan servicing in the CWHL 2005-J2 Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The master servicer named in the related prospectus supplement will service

7

the mortgage loans, either directly or through sub-servicers, pursuant to the pooling and servicing agreement, and will receive a fee for its services . . . With respect to mortgage loans serviced by the master servicer through a sub-servicer, the master servicer will remain liable for its servicing obligations under the related pooling and servicing agreement as if the master servicer alone were servicing the mortgage loans." CWHL 2005-J2 Prospectus p. 17.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

10. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWHL 2005-J2 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWHL 2005-J2 Pro. Supp. S-53.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

11. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs:**

- Among other statistics, the chart on page S-27 made the following untrue and misleading statements about the 337 initial mortgage loans in the Loan Group 1 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  98.78%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced

Documentation Loan Program:  0.94%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Streamlined Documentation Loan Program:  0.28%.

- Among other statistics, the chart on page S-35 made the following untrue and misleading statements about the 335 initial mortgage loans in the Loan Group 2 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  77.04%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program:  5.07%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  17.66%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's Clues Documentation Loan Program:  0.24%.

- Among other statistics, the chart on page S-44 made the following untrue and misleading statements about the 855 initial mortgage loans in the Loan Group 3 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full/Alternative Documentation Loan Program:  21.29%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Reduced Documentation Loan Program:  1.42%; (iii) Percent of Mortgage Loans allegedly issued according to Countrywide's Preferred Documentation Loan Program:  75.37%; (iv) Percent of Mortgage Loans allegedly issued according to Countrywide's Clues Documentation Loan Program:  1.92%.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

<u>**Exhibit BB: Misrepresentations in the Offering Documents for CWHL 2006-21**</u>

1.      Collateral type: a pool consisting of primarily 30-year conventional, fixed rate mortgage loans secured by first liens on one-to-four family residential properties.

2.      Initial number of mortgages: 1,652

3.      **Untrue and misleading statements about underwriting guidelines in the CWHL 2006-21 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the issuing entity will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards." CWHL 2006-21 Pro. Supp. S-38.

- Countrywide further represented in the Offering Documents that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral." CWHL 2006-21 Pro. Supp. S-39.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWHL 2006-21 Offering Documents:**

- In the prospectus supplement, CWHL 2006-21 Pro. Supp. p. S-34, in a table labeled "Occupancy Types," Countrywide made the following representations

about the percentage of owner-occupied properties among the total properties

secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Primary Residence | 1,536 | 92.54% |
| Secondary Residence | 116 | 7.46% |

- Countrywide's statements about owner occupancy are also untrue and misleading

  for the reasons set forth in Sections IV(A)-(C), (D)(2), (D)(4) and (D)(5)of the

  Complaint.

5.    **Untrue and misleading statements about LTV ratios in the CWHL 2006-21**

**Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans

  that collateralized the Certificates, including charts regarding the LTV

  characteristics of the loans and the mortgage pool as a whole.  CWHL 2006-21

  Pro. Supp. S-29-36.  The statistics in the pool were incorrect because many of the

  LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-31 made the following untrue and

  misleading statements about the 1,652 initial mortgage loans in the collateral

  pool:  (i) the weighted average initial LTV ratio was 73.60%; (ii) only 9 loans

  (0.48% of the total initial mortgage loans) had an LTV ratio greater than 90%;

  (iii) only 33 loans (1.74% of the total initial mortgage loans) had an LTV ratio

  greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the

  following:  "Generally, Countrywide Home Loans obtains appraisals from

independent appraisers or appraisal services for properties that are to secure mortgage loans, except with respect to selected borrowers that are refinancing an existing mortgage loan that was originated or acquired by Countrywide Home Loans where, among other things, the mortgage loan has not been more than 30 days delinquent in payment during the previous twelve-month period. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWHL 2006-21 Pro. Supp. S-39-40.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan-to-Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan-to-Value Ratio may not exceed 100%." CWHL 2006-21 Pro. Supp. S-39.

- The prospectus supplement stated "Countrywide Home Loans' underwriting guidelines generally allow Loan-to-Value Ratios at origination of up to 95% for purchase money or rate and term refinance mortgage loans with original principal balances of up to $400,000, up to 90% for mortgage loans with original principal balances of up to $650,000, up to 80% for mortgage loans with original principal balances of up to $1,000,000, up to 75% for mortgage loans with original

3

principal balances of up to $1,500,000, and up to 70% for mortgage loans with original principal balances of up to $3,000,000. Under certain circumstances, however, Countrywide Home Loans' underwriting guidelines allow for Loan-to-Value Ratios of up to 100% for purchase money mortgage loans with original principal balances of up to $375,000." CWHL 2006-21 Pro. Supp. S-40.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

6. **Untrue and misleading statements about debt-to-income ratios in the CWHL 2006-21 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt-to income" ratios) are within acceptable limits. The maximum acceptable debt-to-income ratio, which is determined on a loan-by-loan basis varies depending on a number of underwriting criteria, including the Loan-to-Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt-to-income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWHL 2006-21 Pro. Supp. S-39.

- The prospectus supplement also stated that "Under its underwriting guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 36% and a debt-to-income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan-to-Value Ratio exceeds 80%, the maximum permitted debt-to-income ratios are 33% and 38%, respectively." CWHL 2006-21 Pro. Supp. S-40.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

7.  **Untrue and misleading statements about CLTV ratios in the CWHL 2006-21 Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWHL 2006-21 Pro. Supp. S-29-36.  The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page S-32 made the following untrue and misleading statements about the 1,652 initial mortgage loans:  (i) the weighted average initial CLTV ratio was 76.93%; (ii) only 122 loans (6.38% of the total initial mortgage loans) had a CLTV ratio greater than 90%; (iii) only 433 loans (25.35% of the total initial mortgage loans) had a CLTV ratio greater than 80%.

- These statements were untrue and misleading for the reasons set forth in Sections IV(A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

5

8.    **Untrue and misleading statements about selection of Mortgage Loans in the CWHL 2006-21 Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one-to-four family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWHL 2006-21 Pro. Supp. S-25.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

9.    **Untrue and misleading statements about credit ratings in the CWHL 2006-21 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement. The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating agency's assessment solely of the likelihood that holders of a class of securities of

6

the class will receive payments to which the securityholders are entitled under the related Agreement." CWHL 2006-21 Prospectus p. 109.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

10. **Untrue and misleading statements about loan servicing in the CWHL 2006-21 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "The master servicer will master service all of the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. The master servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders." CWHL 2006-21 Pro. Supp. S-40.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

11. **Untrue and misleading statements about case-by-case underwriting exceptions in the CWHL 2006-21 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWHL 2060-21 Pro. Supp. S-39.

7

- These statements were untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

<u>**Exhibit CC:  Misrepresentations in the Offering Documents for CWHL 2007-5**</u>

1.      Collateral type:  a pool of adjustable rate mortgage loans that are secured by first liens on one- to four family residential properties

2.      Initial number of mortgage loans:  4,696

3.      **Untrue and misleading statements about underwriting guidelines in the CWHL 2007-5 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "The applicable prospectus supplement may provide for the seller's representations and warranties relating to the loans, but if it does not, each seller will represent and warrant that all loans originated and/or sold by it to the depositor or one of its affiliates will have been underwritten in accordance with standards consistent with those utilized by mortgage lenders generally during the period of origination for similar types of loans."  CHWL 2007-5 Prospectus p. 27.

- Countrywide further represented in the Offering Documents that "Countrywide Home Loans' underwriting standards are primarily intended to evaluate the value and adequacy of the mortgaged property as collateral for the proposed mortgage loan and the borrower's credit standing and repayment ability."  CWHL 2007-5 Pro. Supp. S-38.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWHL 2007-5 Offering Documents:**

- In the prospectus supplement, CWHL 2007-5 Pro. Supp. p. A-6, in a table labeled "Occupancy Types," Countrywide made the following representations about the percentage of owner-occupied properties among the total properties secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Owner-Occupied | 1,938 | 91.19% |
| Investment Property | 161 | 6.57% |
| Second Home | 48 | 2.24% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Owner-Occupied | 2,394 | 94.98% |
| Investment Property | 129 | 4.08% |
| Second Home | 26 | 0.94% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Sections (IV)(A)-(C), (D)(2), (D)(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWHL 2007-5 Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWHL 2007-5 Pro.

2

Supp. A-1-33.  The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 2,147 initial mortgage loans in the Loan Group 1 collateral pool:  (i) the weighted average initial LTV ratio was 83.28%; (ii) only 451 loans (17.34% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 1,227 loans (55.02% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page A-15 made the following untrue and misleading statements about the 2,549 initial mortgage loans in the Loan Group 2 collateral pool:  (i) the weighted average initial LTV ratio was 81.08%; (ii) only 478 loans (17.34% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 1,005 loans (40.16% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following:  "Countrywide Home Loans' underwriting standards are applied in accordance with applicable federal and state laws and regulations and require an independent appraisal of the mortgaged property prepared on a Uniform Residential Appraisal Report (Form 1004) or other appraisal form as applicable to the specific mortgaged property type. Each appraisal includes a market data analysis based on recent sales of comparable homes in the area and, where deemed appropriate, replacement cost analysis based on the current cost of constructing a similar home and generally is required to have been made not

3

earlier than 180 days prior to the date of origination of the mortgage loan. Every independent appraisal is reviewed by a representative of Countrywide Home Loans before the loan is funded, and an additional review appraisal is generally performed in connection with appraisals not provided by Landsafe Appraisals, Inc., a wholly owned subsidiary of Countrywide Home Loans." CWHL 2007-5 Pro. Supp. S-39.

- The prospectus supplement also stated that "Countrywide Home Loans' underwriting standards permit first mortgage loans with loan-to-value ratios at origination of up to 100% depending on the program, type and use of the property, documentation level, creditworthiness of the borrower, debt-to income ratio and loan amount." CWHL 2007-5 Pro. Supp. S-39.

- The prospectus supplement stated that under Credit Grade Category "A," the maximum loan-to-value ratio was 100%; under Credit Grade Category "A-," the maximum loan-to-value ratio was 90%; under Credit Grade Category "B," the maximum loan-to-value ratio was 85%; under Credit Grade Category "C," the maximum loan-to-value ratio was 80%; under Credit Grade Category "C-," the maximum loan-to-value ratio was 70%; and under Credit Grade Category "D," the maximum loan-to-value ratio was 65%. CWHL 2007-5 Pro. Supp. pp. S-40-41.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Section IV(A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

6.    **Untrue and misleading statements about CLTV ratios in the CWHL 2007-5 Offering Documents:**

4

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the CLTV characteristics of the loans and the mortgage pool as a whole. CWHL 2007-5 Pro. Supp. A-1-33.  The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 2,147 initial mortgage loans:  (i) only 769 loans (29.83% of the total initial mortgage loans) had a CLTV ratio greater than 90%; (iii) only 1,550 loans (67.66% of the total initial mortgage loans) had a CLTV ratio greater than 80%.

- Among other statistics, the chart on page A-15 made the following untrue and misleading statements about the 2,549 initial mortgage loans:  (i) only 1,124 loans (43.85% of the total initial mortgage loans) had a CLTV ratio greater than 90%; (iii) only 1,676 loans (67.65% of the total initial mortgage loans) had a CLTV ratio greater than 80%.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

7.  **Untrue and misleading statements about debt-to-income ratios in the CWHL 2007-5 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "After obtaining all applicable employment, credit and property information, Countrywide Home Loans uses a debt-to-income ratio to assist in determining whether the prospective borrower has sufficient monthly income available to

5

support the payments of principal and interest on the mortgage loan in addition to other monthly credit obligations. The "debt-to-income ratio" is the ratio of the borrower's total monthly credit obligations to the borrower's gross monthly income. The maximum monthly debt-to income ratio varies depending upon a borrower's credit grade and documentation level (as described below) but does not generally exceed 55%." CWHL 2007-5 Pro. Supp. S-39.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about selection of Mortgage Loans in the CWHL 2007-5 Offering Documents:**

- The prospectus supplement stated that "The Mortgage Loans will be selected from among the outstanding one- to four-family mortgage loans in the applicable Seller's portfolio which meet the criteria described in this prospectus supplement. No selection will be made in a manner that would adversely affect the interests of certificateholders." CWHL 2007-5 Pro. Supp. S-31.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about credit ratings in the CWHL 2007-5 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating

6

Agency") specified in the related prospectus supplement.  The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement."  CHWL 2007-5 Prospectus p. 113.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

10. **Untrue and misleading statements about loan servicing in the CWHL 2007-5 Offering Documents:**

- In its registration statement and prospectus supplement, Countrywide represented that "The Master Servicer will master service all of the Mortgage Loans in accordance with the terms set forth in the Pooling and Servicing Agreement. The Master Servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders."  CWHL 2007-5 Pro. Supp. S-46.

- This statement was untrue and misleading as set forth in Section IV of the Complaint.

11. **Untrue and misleading statements regarding case-by-case underwriting exceptions in the CWHL 2007-5 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "On a case by case basis, Countrywide Home Loans, Inc. may determine that, based upon compensating factors, a prospective borrower not strictly qualifying under its applicable underwriting risk category guidelines warrants an underwriting exception. It is expected that a significant number of the mortgage loans will have been originated based on underwriting exceptions of these types." CWHL 2007-5 Pro. Supp. S-16.

- This statement was untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

12. **Untrue and misleading statements regarding Countrywide's underwriting documentation programs in the CWHL 2007-5 Offering Documents:**

- Among other statistics, the chart in Annex A made the following untrue and misleading statements about the 2,147 initial mortgage loans in the Loan Group 1 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full Documentation Loan Program:  66.56%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income Documentation Loan Program:  33.44%.

- Among other statistics, the chart in Annex A made the following untrue and misleading statements about the 2,549 initial mortgage loans in the Loan Group 2 collateral pool:  (i) Percent of Mortgage Loans allegedly issued according to Countrywide's Full Documentation Loan Program:  46.58%; (ii) Percent of Mortgage Loans allegedly issued according to Countrywide's Stated Income Documentation Loan Program:  44.97%; (iii) Percent of Mortgage Loans

allegedly used according to Countrywide's Reduced Documentation Loan Program:  6.72%; (iv) Percent of Mortgage Loans allegedly used according to Countrywide's Full/Alternative Documentation Loan Program:  0.57%; (v) Percent of Mortgage Loans allegedly used according to Countrywide's No Income No Asset Documentation Loan Program:  0.46%; (vi) Percent of Mortgage Loans allegedly used according to Countrywide's No Ratio Documentation Loan Program:  0.42%; (vii) Percent of Mortgage Loans allegedly used according to Countrywide's Stated Income/Stated Asset Documentation Loan Program:  0.28%.

- This statement was untrue and misleading for the reasons set forth in Section IV of the Complaint.

**Exhibit DD:  Misrepresentations in the Offering Documents for CWHL 2007-14**

1.      Collateral type:  pool consisting of primarily 30-year conventional, fixed rate mortgage loans secured by first liens on one-to-four family residential properties.

2.      Initial number of mortgage loans:  1,079

3.      **Untrue and misleading statements about underwriting guidelines in the CWHL 2007-14 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the issuing entity will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards."  CWHL 2007-14 Pro. Supp. S-32.

- Countrywide further represented in the Offering Documents that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWHL 2007-14 Pro. Supp. S-33.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWHL 2007-14 Offering Documents:**

- In the prospectus supplement, CWHL 2007-14 Pro. Supp. p. A-7, in a table labeled "Occupancy Types," Countrywide made the following representations

about the percentage of owner-occupied properties among the total properties

secured by the collateral pools:

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Primary Residence | 1,029 | 94.76% |
| Secondary Residence | 50 | 5.24% |

- Countrywide's statements about owner occupancy are also untrue and misleading

  for the reasons set forth in Sections IV(A)-(C), (D)(2), (D)(4) and (D)(5) of the

  Complaint.

5.  **Untrue and misleading statements about LTV ratios in the CWHL 2007-14**

**Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans

  that collateralized the Certificates, including charts regarding the LTV

  characteristics of the loans and the mortgage pool as a whole. CWHL 2007-14

  Pro. Supp. A-1-8.  The statistics in the pool were incorrect because many of the

  LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-3 made the following untrue and

  misleading statements about the 1,079 initial mortgage loans:  (i) the weighted

  average initial LTV ratio was 73.06%; (ii) only 9 loans (0.67% of the total initial

  mortgage loans) had an LTV ratio greater than 90%; (iii) only 27 loans (1.97% of

  the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the

  following:  "Generally, Countrywide Home Loans obtains appraisals from

  independent appraisers or appraisal services for properties that are to secure

2

mortgage loans, except with respect to selected borrowers that are refinancing an existing mortgage loan that was originated or acquired by Countrywide Home Loans where, among other things, the mortgage loan has not been more than 30 days delinquent in payment during the previous twelve-month period. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in the area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWHL 2007-14 Pro. Supp. S-33.

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan-to-Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan-to-Value Ratio may not exceed 100%." CWHL 2007-14 Pro. Supp. S-33.

- The prospectus supplement stated that "Countrywide Home Loans' underwriting guidelines generally allow Loan-to-Value Ratios at origination of up to 95% for purchase money or rate and term refinance mortgage loans with original principal balances of up to $400,000, up to 90% for mortgage loans with original principal balances of up to $650,000, up to 80% for mortgage loans with original principal balances of up to $1,000,000, up to 75% for mortgage loans with original principal balances of up to $1,500,000, and up to 70% for mortgage loans with

original principal balances of up to $3,000,000. Under certain circumstances, however, Countrywide Home Loans' underwriting guidelines allow for Loan-to-Value Ratios of up to 100% for purchase money mortgage loans with original principal balances of up to $375,000." CWHL 2007-14 Pro. Supp. S-34.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

6. **Untrue and misleading statements about CLTV ratios in the CWHL 2007-14 Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the CLTV characteristics of the loans and the mortgage pool as a whole. CWHL 2007-5 Pro. Supp. A-1-8. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 1,079 initial mortgage loans: (i) the weighted average initial LTV ratio was 76.8%; (ii) only 117 loans (9.75% of the total initial mortgage loans) had a CLTV ratio greater than 90%; (iii) only 335 loans (28.86% of the total initial mortgage loans) had a CLTV ratio greater than 80%.

- These statements were untrue and misleading for the reasons set forth in Sections IV(A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

7. **Untrue and misleading statements about debt-to-income ratios in the CWHL 2007-14 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting standards] a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total monthly debt to the monthly gross income (the "debt-to-income" ratios) are within acceptable limits. The maximum acceptable debt-to-income ratio, which is determined on a loan-by-loan basis varies depending on a number of underwriting criteria, including the Loan-to-Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt-to-income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs." CWHL 2007-14 Pro. Supp. S-33.

- The prospectus supplement stated that "Under its underwriting guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 36% and a debt-to-income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan-to-Value Ratio exceeds 80%, the maximum permitted debt-to-income ratios are 33% and 38%, respectively." CWHL 2007-14 Pro. Supp. S-34.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about selection of Mortgage Loans in the CWHL 2007-14 Offering Documents:**

5

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one-to-four family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect the interests of the certificateholders adversely." CWHL 2007-14 Pro. Supp. S-26.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about credit ratings in the CWHL 2007-14 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement. The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement." CWHL 2007-14 Prospectus p. 108.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings. Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

10. **Untrue and misleading statements about loan servicing in the CWHL 2007-14 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "The master servicer will master service all of the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. The master servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders." CWHL 2007-14 Pro. Supp. S-34.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

11. **Untrue and misleading statements about case-by-case underwriting exceptions in the CWHL 2007-14 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWHL 2007-14 Pro. Supp. S-33.

- These statements were untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.

**Exhibit EE:  Misrepresentations in the Offering Documents for CWHL 2007-15**

1.      Collateral type:  two loan groups of primarily 30-year conventional, fixed rate mortgage loans secured by first liens on one-to-four family residential properties.

2.      Initial number of mortgage loans:  1,628

3.      **Untrue and misleading statements about underwriting guidelines in the CWHL 2007-15 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "All of the mortgage loans in the issuing entity will have been originated or acquired by Countrywide Home Loans in accordance with its credit, appraisal and underwriting standards."  CWHL 2007-15 Pro. Supp. S-42.

- Countrywide further represented in the Offering Documents that "Countrywide Home Loans' underwriting standards are applied by or on behalf of Countrywide Home Loans to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral."  CWHL 2007-15 Pro. Supp. S-43.

- Countrywide's statements about underwriting guidelines are untrue and misleading for the reasons set forth in Section IV of the Complaint and in Exhibit D.

4.      **Untrue and misleading statements about owner occupancy in the CWHL 2007-15 Offering Documents:**

- In the prospectus supplement, CWHL 2007-15 Pro. Supp. p. A-7, in a table labeled "Occupancy Types," Countrywide made the following representations

about the percentage of owner-occupied properties among the total properties

secured by the collateral pools:

**LOAN GROUP 1**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Primary Residence | 733 | 94.24% |
| Secondary Residence | 42 | 5.76% |

**LOAN GROUP 2**

| Occupancy Type | Number of Initial Mortgage Loans | Percentage of Mortgage Loans in Group 1 |
|---|---|---|
| Primary Residence | 800 | 93.75% |
| Secondary Residence | 53 | 6.25% |

- Countrywide's statements about owner occupancy are also untrue and misleading for the reasons set forth in Section IV(A)-(C), (D)(2), (D)(4) and (D)(5) of the Complaint.

5. **Untrue and misleading statements about LTV ratios in the CWHL 2007-15 Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the LTV characteristics of the loans and the mortgage pool as a whole. CWHL 2007-15 Pro. Supp. A-1-16. The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-3 made the following untrue and misleading statements about the 775 initial mortgage loans in the Loan Group 1

2

collateral pool: (i) the weighted average initial LTV ratio was 75.42%; (ii) only 6 loans (0.64% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 29 loans (2.97% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- Among other statistics, the chart on page A-11 made the following untrue and misleading statements about the 853 initial mortgage loans: (i) the weighted average initial LTV ratio was 74.91%; (ii) only 3 loans (0.29% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 27 loans (2.59% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- In the registration statement and prospectus supplement, Countrywide stated the following: "Generally, Countrywide Home Loans obtains appraisals from independent appraisers or appraisal services for properties that are to secure mortgage loans, except with respect to selected borrowers that are refinancing an existing mortgage loan that was originated or acquired by Countrywide Home Loans where, among other things, the mortgage loan has not been more than 30 days delinquent in payment during the previous twelve-month period. The appraisers inspect and appraise the proposed mortgaged property and verify that the property is in acceptable condition. Following each appraisal, the appraiser prepares a report which includes a market data analysis based on recent sales of comparable homes in area and, when deemed appropriate, a replacement cost analysis based on the current cost of constructing a similar home. All appraisals are required to conform to Fannie Mae or Freddie Mac appraisal standards then in effect." CWHL 2007-15 Pro. Supp. S-43.

3

- The prospectus supplement also stated that "Countrywide Home Loans may provide secondary financing to a mortgagor contemporaneously with the origination of a mortgage loan, subject to the following limitations: the Loan-to-Value Ratio of the senior (i.e., first) lien may not exceed 80% and the combined Loan-to-Value Ratio may not exceed 100%."  CWHL 2007-15 Pro. Supp. S-43.

- The prospectus supplement stated that "Countrywide Home Loans' underwriting guidelines generally allow Loan-to-Value Ratios at origination of up to 95% for purchase money or rate and term refinance mortgage loans with original principal balances of up to $400,000, up to 90% for mortgage loans with original principal balances of up to $650,000, up to 80% for mortgage loans with original principal balances of up to $1,000,000, up to 75% for mortgage loans with original principal balances of up to $1,500,000, and up to 70% for mortgage loans with original principal balances of up to $3,000,000.  Under certain circumstances, however, Countrywide Home Loans' underwriting guidelines allow for Loan-to-Value Ratios of up to 100% for purchase money mortgage loans with original principal balances of up to $375,000."  CWHL 2007-15 Pro. Supp. S-44.

- Countrywide's statements about LTVs are untrue and misleading for the reasons set forth in Sections IV(A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

6.  **Untrue and misleading statements about CLTV ratios in the CWHL 2007-15 Offering Documents:**

- The prospectus supplement provided a statistical overview of the mortgage loans that collateralized the Certificates, including charts regarding the CLTV characteristics of the loans and the mortgage pool as a whole. CWHL 2007-15

Pro. Supp. A-1-16.  The statistics in the pool were incorrect because many of the LTV ratios for the individual loans were miscalculated.

- Among other statistics, the chart on page A-4 made the following untrue and misleading statements about the 775 initial mortgage loans of the Loan Group 1 collateral pool:  (i) the weighted average initial CLTV ratio was 79.43%; (ii) only 104 loans (12.19% of the total initial mortgage loans) had a CLTV ratio greater than 90%; (iii) only 262 loans (32.45% of the total initial mortgage loans) had a CLTV ratio greater than 80%.

- Among other statistics, the chart on page A-12 made the following untrue and misleading statements about the 853 initial mortgage loans:  (i) the weighted average initial LTV ratio was 79.55%; (ii) only 128 loans (13.07% of the total initial mortgage loans) had an LTV ratio greater than 90%; (iii) only 328 loans (36.46% of the total initial mortgage loans) had an LTV ratio greater than 80%.

- These statements were untrue and misleading for the reasons set forth in Sections IV(A)-(B), (C)(2), (D)(2)-(5) and (E)(1) of the Complaint.

7.  **Untrue and misleading statements about debt-to-income ratios in the CWHL 2007-15 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Under [Countrywide's underwriting] standards, a prospective borrower must generally demonstrate that the ratio of the borrower's monthly housing expenses (including principal and interest on the proposed mortgage loan and, as applicable, the related monthly portion of property taxes, hazard insurance and mortgage insurance) to the borrower's monthly gross income and the ratio of total

5

monthly debt to the monthly gross income (the "debt-to-income" ratios) are within acceptable limits. The maximum acceptable debt-to-income ratio, which is determined on a loan-by-loan basis varies depending on a number of underwriting criteria, including the Loan-to-Value Ratio, loan purpose, loan amount and credit history of the borrower. In addition to meeting the debt-to-income ratio guidelines, each prospective borrower is required to have sufficient cash resources to pay the down payment and closing costs."  CWHL 2007-15 Pro. Supp. S-43.

- The prospectus supplement stated that "Under its underwriting guidelines, Countrywide Home Loans generally permits a debt-to-income ratio based on the borrower's monthly housing expenses of up to 36% and a debt-to-income ratio based on the borrower's total monthly debt of up to 40%; provided, however, that if the Loan-to-Value Ratio exceeds 80%, the maximum permitted debt-to-income ratios are 33% and 38%, respectively."  CWHL 2007-15 Pro. Supp. S-44.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

8. **Untrue and misleading statements about selection of Mortgage Loans in the CWHL 2007-14 Offering Documents:**

- The prospectus supplement stated that "Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the mortgage loans were selected from among the outstanding one-to-four family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to affect

the interests of the certificateholders adversely."  CWHL 2007-15 Pro. Supp. S-35.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

9. **Untrue and misleading statements about credit ratings in the CWHL 2007-15 Offering Documents:**

- In the prospectus, Countrywide stated that "It is a condition to the issuance of the securities of each series offered hereby and by the prospectus supplement that they shall have been rated in one of the four highest rating categories by the nationally recognized statistical rating agency or agencies (each, a "Rating Agency") specified in the related prospectus supplement.  The rating would be based on, among other things, the adequacy of the value of the Trust Fund Assets and any credit enhancement with respect to the class and will reflect the Rating Agency's assessment solely of the likelihood that holders of a class of securities of the class will receive payments to which the securityholders are entitled under the related Agreement."  CWHL 2007-15 Prospectus p. 108.

- The complete ratings history for the Certificates, showing the date of each rating and the full number of downgrades, is set forth in Exhibit C to this Complaint.

- These severe downgrades show that the Certificates did not deserve their initially high ratings.  Countrywide's statements about credit ratings are also untrue and misleading for the reasons set forth in Section IV of the Complaint.

10. **Untrue and misleading statements about loan servicing in the CWHL 2007-15 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "The master servicer will master service all of the mortgage loans in accordance with the terms set forth in the pooling and servicing agreement. The master servicer has agreed to service and administer the mortgage loans in accordance with customary and usual standards of practice of prudent mortgage loan lenders."  CWHL 2007-15 Pro. Supp. S-44.

- These statements were untrue and misleading for the reasons set forth in Section IV of the Complaint.

11.     **Untrue and misleading statements about case-by-case underwriting exceptions in the CWHL 2007-15 Offering Documents:**

- In the registration statement and prospectus supplement, Countrywide represented that "Exceptions to Countrywide Home Loans' underwriting guidelines may be made if compensating factors are demonstrated by a prospective borrower." CWHL 2007-15 Pro. Supp. S-43.

- These statements were untrue and misleading for the reasons set forth in Section IV(E)(5) of the Complaint.