IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, WESTERN-SOUTHERN LIFE ASSURANCE COMPANY, COLUMBUS LIFE INSURANCE COMPANY, INTEGRITY LIFE INSURANCE COMPANY, AND NATIONAL INTEGRITY LIFE INSURANCE COMPANY, FORT WASHINGTON INVESTMENT ADVISORS, INC. on behalf of FORT WASHINGTON ACTIVE FIXED INCOME LLC, | : : : : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Case Number 1:11-cv-267 |
| | : | Judge S. Arthur Spiegel |
| COUNTRYWIDE FINANCIAL CORP., COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE CAPITAL MARKETS LLC, COUNTRYWIDE SECURITIES CORP., CWALT, INC., CWABS, INC., CWMBS, INC., CWHEQ, INC., BANK OF AMERICA CORP., BAC HOME LOANS SERVICING, LP, NB HOLDINGS CORP., ANGELO MOZILO, DAVID SAMBOL, ERIC SIERACKI, RANJIT KRIPALANI, STANFORD KURLAND, DAVID A. SPECTOR, N. JOSHUA ADLER, and JENNIFER SANDEFUR, | : : : : : : : : : : : : : : | Magistrate Judge Karen L. Litkovitz |
| Defendants. | : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF COUNTRYWIDE DEFENDANTS'
MOTION TO TRANSFER VENUE UNDER 28 U.S.C. §1404(a) TO THE UNITED
STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
<u>WHERE IDENTICAL LITIGATION IS CURRENTLY PENDING</u>**

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND......................................................................................2

      A.     The Mortgage-Backed Securities..................................................2

      B.     Plaintiffs' Claims  .......................................................................3

      C.     This Action's Ties to the Central District of California ...............4

      D.     The Related Actions Pending in the Central District of California ..............5

           1.     The *Maine State* Action .................................................5

           2.     The *ABP* Action ............................................................6

           3.     The *Putnam* Action........................................................6

           4.     The *Allstate* Action ........................................................7

           5.     The Overlapping Allegations...........................................7

ARGUMENT ..........................................................................................................9

I.     THIS CASE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA  ...............................................................................9

    A.     This Suit Could Originally Have Been Filed In The Central District Of California .....................................................................................10

    B.     Transfer To The Central District Of California Will Promote Convenience And Justice .......................................................................................11

        1.     The Interests Of Judicial Economy And Efficiency Strongly Favor Transfer To California ...........................................................11

        2.     Convenience Of The Witnesses And Ease Of Access To Sources Of Proof Favor California....................................................................15

        3.     California Is The Locus Of Operative Facts....................................17

        4.     Plaintiffs' Choice Of Forum Does Not Favor Keeping This Action In The Southern District Of Ohio .................................................19

i

5.    The Remaining Factors Are Neutral With Respect To Transfer ......................19

CONCLUSION...........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*Allstate Ins. Co. v. Countrywide Fin. Corp.,*
  10 Civ. 9591 (AKH) (S.D.N.Y. June 14, 2011)....................................................7, 14

*Am. Signature, Inc. v. Moody's Investors Servs., Inc.,*
  2010 WL 2667367 (S.D. Ohio July 2, 2010) .................................................... *passim*

*Butcher v. Gerber Prods. Co.,*
  1998 WL 437150 (S.D.N.Y. Aug. 3, 1998) ..............................................................18

*Checuti v. Conrail,*
  291 F. Supp. 2d 664 (N.D. Ohio Nov. 18, 2003) ............................................... 19-20

*In re Collins & Aikman,*
  438 F. Supp. 2d 392 (S.D.N.Y. 2006)......................................................................18

*Esperson v. Trugreen L.P.,*
  No. 10-cv-02130-STA-cgc (W.D. Tenn. Oct. 5, 2010) ............................................19

*Ghaith v. Rauschenberger,*
  2010 WL 1644054 (E.D. Mich. Apr. 22, 2010).......................................................19

*Giant Eagle, Inc. v. Cephalon,*
  2010 WL 3834343 (S.D. Ohio Sept. 30, 2010) .......................................................17

*Goggins v. Alliance Cap. Mgmt., L.P.,*
  279 F. Supp. 2d 228 (S.D.N.Y. 2003).....................................................................13

*Hamilton Cty. Ohio v. Hotels.com,L.P.,*
  2011 WL 14369 (S.D. Ohio Jan. 3, 2011) ..........................................................12, 13

*Jabo's Pharmacy, Inc. v. Cephalon, Inc.,*
  2010 WL 3851966 (E.D. Tenn. Sept. 27, 2010) ........................................... 11, 14-15

*Jones v. Walgreen Co.,*
  463 F. Supp. 2d 267 (D. Conn. 2006)......................................................................18

*Kay v. Nat'l City Mortg. Co.,*
  494 F. Supp. 2d 845 (S.D. Ohio 2007) ....................................................................15

*Ltd. Serv. Corp. v. M/V APL Peru,*
  2010 WL 2105362 (S.D. Ohio May 25, 2010) ................................................ *passim*

*Morgan Guaranty Trust Co. v. Tisdale,*
    1996 WL 544240 (S.D.N.Y. Sept. 25, 1996) .......................................................18

*Moses v. Bus. Card Express, Inc.,*
    929 F.2d 1131 (6th Cir. 1991)  ..................................................................9, 11

*Peiker Acustic, Inc. v. Kennedy,*
    2010 WL 3419457 (E.D. Mich. Aug. 27, 2010) ...................................................12

*Plaskolite, Inc. v. Zhejiang Taizhou Eagle Machinery Co.,*
    2008 WL 5190049 (S.D. Ohio Dec. 9, 2008) ......................................................16

*Pullins v. Palmero,*
    2009 WL 1067315 (S.D. Ohio Apr. 21, 2009) .....................................................16

*Putnam Bank v. Countrywide Fin. Corp.,*
    No. 3:11-cv-00145-JCH (D. Conn. May 16, 2011) .......................................... *passim*

*Shook, Inc. v. City of Moundsville Water Bd.,*
    2010 WL 761947 (S.D. Ohio Mar. 2, 2010)....................................................10, 11

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.,*
    447 B.R. 302 (C.D. Cal. 2010) ...............................................................6, 13, 14

*Stinchcombe v. Caruso,*
    2008 WL 4561515 (E.D. Mich. Oct. 9, 2008) ...............................................6, 13, 14

*Twenty First Century Comm'ns, Inc. v. TechRadium, Inc.,*
    2010 WL 3001721 (S.D. Ohio July 30, 2010)......................................................18

*Wayne Cty. Emp. Ret. Sys. v. MGIC Inv. Corp.,*
    604 F. Supp. 2d 969 (E.D. Mich. 2009).........................................................17-18

**FEDERAL STATUTES**

15 U.S.C. § 77v(a) ............................................................................................10

15 U.S.C. § 78aa(a) ...........................................................................................10

28 U.S.C. § 1391 ...............................................................................................10

28 U.S.C. § 1391(b) ...........................................................................................10

28 U.S.C. § 1404(a) ....................................................................................2, 10, 20

28 U.S.C. § 1407................................................................................................9

## PRELIMINARY STATEMENT

The transfer of litigation to another district is warranted when it would avoid "duplicative" litigation and is in the interests of justice. *Ltd. Serv. Corp. v. M/V APL Peru*, 2010 WL 2105362, at *5 (S.D. Ohio May 25, 2010). As Judge Graham recently recognized when granting a Section 1404 transfer motion in *Limited Service Corp.*, the "substantial savings of time and judicial resources" that result from transfer to another court that already is presiding over similar litigation "so strongly favors a transfer that other considerations become largely irrelevant." *Id.* That plainly is the case here.

Plaintiffs' claims are virtually identical to claims alleged in a putative class action pending before the Honorable Mariana R. Pfaelzer in the United States District Court for the Central District of California, *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302-MRP (MANx) (C.D. Cal.) (the "*Maine State* Action"), and 31 of the 32 MBS offerings at issue here were included in the initial *Maine State* complaint. Moreover, *Maine State* is only one of several Countrywide cases over which Judge Pfaelzer has presided since 2007. All of those cases, like this one, have challenged Countrywide's mortgage loan origination practices and representations related to those practices made in connection with securities offerings. Judge Pfaelzer, who has issued numerous rulings in these cases over the past four years, is exceedingly familiar with the allegations made by Plaintiffs here. For these reasons, as well as the reasons set forth below, two courts have recently transferred Countrywide-related cases involving virtually identical claims to the Central District of California. Here, too, transfer is warranted.

As evidenced by the existence of related litigation before Judge Pfaelzer, there can be no dispute that this action could have been brought in the Central District of California. Defendant Countrywide Financial Corporation and all of the other Countrywide-related entities and indi-

vidual defendants that have been named[1] are located in the Central District, in or near Calabasas, California. Other relevant Section 1404(a) factors thus also favor transfer:

- The action concerns the origination, underwriting, and securitization and public sale of the mortgage loans that Countrywide subsidiaries made over a several year period. Substantially all of the key witnesses in this action knowledgeable about these issues reside in or within the subpoena power of the Central District of California;

- Virtually all of the relevant documents are located in the Central District;

- The quality control review of the mortgage loans that were pooled into the mortgage-backed securities ("MBS") allegedly purchased by Plaintiffs, the structuring of those mortgage-backed securities offerings, and the due diligence conducted on the mortgage loan pools that ultimately backed those mortgage-backed securities all occurred within the Central District. Further, the securities offering documents whose disclosures Plaintiffs challenge were prepared at the direction of and allegedly approved by employees of Countrywide subsidiaries in that district. As such, all of the operative facts alleged in the Complaint (if true) would have occurred in the Central District. By contrast, none of the operative facts is alleged to have occurred in the Southern District of Ohio;

- And, as noted above, numerous cases relating to Countrywide that are based on factual allegations identical or substantially similar to those alleged by Plaintiffs here have been filed in the Central District of California. In fact, Judge Pfaelzer has recently described herself as "intimately familiar" with the MBS offerings at issue here.

In short, most of the key witnesses and relevant documents are located in California. As the District of Connecticut acknowledged when transferring a similar matter involving MBS issued by Countrywide subsidiaries to the Central District, under these circumstances, the interests of justice and convenience strongly favor transfer, particularly where the Central District has pending before it (or has already resolved) (i) a case asserting virtually identical claims based on the same transactions, and (ii) numerous other cases involving the Countrywide Defendants and concerning the loan underwriting, origination, and securitization practices central to this case.

## FACTUAL BACKGROUND

A. **The Mortgage-Backed Securities.** This action arises out of Plaintiffs' alleged

---

[1] The Countrywide-related defendants named in this action besides Countrywide Financial Corporation are Countrywide Home Loans, Inc., Countrywide Capital Markets, LLC, Countrywide Securities Corp., CWALT, Inc., CWABS, Inc., CWMBS, Inc., and CWHEQ, Inc. Countrywide employee Joshua Adler also has been named as a defendant. All of these defendants will be referred to collectively as the "Countrywide Defendants."

purchases of over $619 million (original face amount) in MBS issued by subsidiaries of Countrywide Financial Corporation in 32 MBS offerings (the "Offerings") between June 2005 and March 2008. Compl. Ex. B. The MBS were each backed by pools of mortgages originated or purchased by Countrywide Home Loans, Inc. ("CHL"), a Countrywide subsidiary. The MBS entitled the purchasers to a portion of the income stream generated by the mortgage loans in the collateral pools as borrowers each month made principal and interest payments on their loans. *Id.* ¶ 76. *See* Decl. of Inez Friedman-Boyce, Ex. N (hereinafter referred to as Appendix C).

      **B.**    **Plaintiffs' Claims.** Plaintiffs are large insurance companies and investment advisors, and are sophisticated institutional investors. Compl. ¶¶ 19-24. Plaintiffs allege that the offering materials for the MBS contained misstatements and omissions in violation of the federal Securities Act of 1933 (the "1933 Act"), Securities and Exchange Act of 1934 (the "1934 Act"), and the Ohio Securities Act ("OSA"). Plaintiffs also allege common-law fraud, aiding and abetting fraud, and negligent misrepresentation claims. *See id.* ¶¶ 426-531. More specifically, they contend:

- In order to meet its volume and market share goals, Countrywide "abandoned any semblance of underwriting standards." (*id.* ¶ 60);
- Countrywide "routinely approved 'exception' loans that did not satisfy even Countrywide's weakened 'theoretical' underwriting criteria," and that "contrary to Defendants' representations, these exceptions were not based on any countervailing compensating factors." (*id.* ¶¶ 67-70);
- "Instead of focusing on applicants' credit standing and repayment ability, Countrywide subordinated its underwriting standards to the goal of originating and, through subsidiaries, securitizing as many loans as it could to expand its market share and generate fees in the secondary mortgage market." (*id.* ¶ 116);
- Countrywide tried to increase its market by "matching individual terms of any mortgage product that a competitor was offering." (*id.* ¶¶ 61-62, 65); and
- The MBS offering documents misrepresented the credit characteristics of the pooled mortgage loans underlying the MBS, including alleged misrepresentations as to appraisal values and LTV ratios (*id.* ¶¶ 89-93).

These are all identical to allegations in litigation previously-filed against Countrywide in the Central District of California.

      **C.**      <u>**This Action's Ties to the Central District of California.**</u>  The key operative facts alleged in this case took place (or, if true, would have taken place) within the Central District of California.  Most of Countrywide subsidiaries' core business activities relevant to this case occurred in Calabasas, Agoura Hills, or Westlake Village, California, all suburbs of Los Angeles located in the Central District of California.  Those activities included structuring the MBS offerings, preparing the offering documents that Plaintiffs challenge, quality control, and due diligence review.  *See* Decl. of Paul T. Liu, ¶ 8 (hereinafter referred to as Appendix B). CHL, based in Calabasas, originated nearly all of the mortgage loans underlying the MBS certificates Plaintiffs purchased.  The MBS offering documents were negotiated and prepared at the direction of employees in Countrywide's subsidiaries' Calabasas offices.  Appendix B ¶ 9.  All the current and former Countrywide officers named as defendants in this lawsuit perform (or performed) their work for Countrywide in Calabasas or neighboring Los Angeles suburbs, and all nine of them reside in or near the Central District.  Appendix B ¶¶ 6, 7.  And the supposed misstatements regarding the credit quality of the MBS certificates alleged in this case all relate to activities that would have occurred in or near Calabasas.  Appendix B ¶ 9.

      Moreover, the great majority of potential third-party witnesses and potentially relevant documents are located in or within the subpoena power of the Central District of California.  For example, the key witnesses knowledgeable about the MBS at issue in this case worked for Countrywide subsidiaries in Calabasas, Agoura Hills, or Westlake Village.  Appendix B ¶¶ 10-11.  All eight of the Countrywide Defendants have or had their principal places of business in Calabasas. Compl. ¶¶ 25-32, 41.  Likewise, the majority of relevant documents, both electronic and paper, are located in Calabasas.  Thus, the convenience of the witnesses and parties, as well as the loca-

tion of relevant documents, all point to California.

     **D.**    <u>**The Related Actions Pending in the Central District of California.**</u>  California

is the location not only of all the key witnesses, principal relevant documents, and alleged events,

but also numerous other cases whose legal claims and factual allegations overlap significantly

with those in this action.  In fact, at least ten different actions that are or were pending in the

Central District involve identical or substantially similar allegations against the same defen-

dants.[2]  Most of these cases are or were pending before Judge Mariana Pfaelzer, and Country-

wide intends to seek to relate this case to the other Countrywide matters over which Judge Pfael-

zer is currently presiding if Countrywide's transfer motion is granted.

     **1.**    <u>**The *Maine State* Action.**</u>  Like this case, the *Maine State* Action asserts

claims for violations of the Securities Act arising out of various MBS offerings by Countrywide

subsidiaries.  The *Maine State* Action includes as defendants all of the Countrywide entities and

all but one of the current and former Countrywide officers named as defendants in this case.[3]

Moreover, as Plaintiffs themselves concede, <u>***all but one***</u> of the MBS offerings at issue in this case

---

[2] *See, e.g., Fresno Cty. Emp. Ret. Assoc. v. Countrywide Fin. Corp.,* No. 11-CV-00811-MRP (MANx) (C.D. Cal.) (the "*Fresno*" Action"), Appendix C, Ex. A; *State Treasurer of the State of Mich. v. Countrywide Fin. Corp.,* No. 11-CV-00809-MRP (MANx) (C.D. Cal.) (the "*Michigan*" Action"), Appendix C, Ex. B; *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, No. 2:10-07275-MRP (MANx) (C.D. Cal.) (the "*ABP* Action), Appendix C, Ex. C; *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302-MRP (MANx) (C.D. Cal.) Appendix C, Ex. D; *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp., et al.,* No. 10-CV-05699-MRP (MANx) (C.D. Cal.) (the "*Centaur* Action"), Appendix C, Ex. E; *SEC v. Mozilo*, No. 09-CV-03994-JFW (MANx) (C.D. Cal.) (the "*SEC* Action"), Appendix C, Ex. F; *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.,* No. CV-07-07097-MRP (MANx) (C.D. Cal.) (the "*Argent* Action"), Appendix C, Ex. G ; *In re Countrywide Fin. Corp. Deriv. Litig.*, Case No. 2:07-cv-06923-MRP (MANx) (C.D. Cal.) (the "*Derivative* Action), Appendix C, Ex. H; *Alvidres v. Countrywide Fin. Corp.*, No. 07-05810- JFW (MANx) (C.D. Cal.) (the "*ERISA* Action), Appendix C, Ex. I; *In re Countrywide Fin. Corp. Sec. Litig.,* CV 07-05295 MRP (MANx) (C.D. Cal.) (the "*New York Funds* Action"), Appendix C, Ex. J.  The *Derivative* Action, the *ERISA* Action, and the *New York Funds* Action each, in turn, include multiple separate actions that were consolidated for all purposes by the Central District of California. All told, more than two dozen separate securities, ERISA, and derivative actions against Countrywide have been filed in the Central District of California beginning in August 2007.

[3] Angelo Mozilo, Countrywide Financial Corporation's former Chief Executive Officer, is named as a defendant in this case but was not named in the *Maine State* action.  Compl. ¶ 33.  Three other individuals named as defendants here were originally named in the *Maine State* action, but were not named in the *Maine State* Second Amended Complaint: Ranjit Kripalani, N. Joshua Adler, and Jennifer Sandefur.  Compl. ¶¶ 38, 41-42.

were also included in the initial complaint filed in *Maine State*.  Compl. ¶ 418; *Maine State* Consolidated and Amended Class Action Complaint (Jan. 14, 2010), Appendix C, Ex. D.  Judge Pfaelzer is thus already intimately familiar with the legal claims, the parties, and the MBS offerings in this case.

       2.      **The *ABP* Action.**  Judge Pfaelzer also presides over another pending action, the *ABP* Action, nearly identical to *Maine State* and this action.  The *ABP* Action involves similar alleged violations of the 1933 and 1934 Acts arising out of numerous MBS offerings by Countrywide subsidiaries against the same Countrywide Defendants, and most of the same former Countrywide officers.  Eleven of the 14 MBS offerings in *ABP* overlap with those originally in *Maine State*.  *ABP* Complaint, Appendix C, Ex. C.  Judge Pfaelzer recently denied plaintiff's motion to remand *ABP* to California State Court, noting in her opinion and order that the Central District is "intimately familiar with these issues because its docket includes a nearly identical case, *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-v-00302 MRP (MANx) (C.D. Cal.)." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 447 B.R. 302, 312 (C.D. Cal.  2010), Appendix C, Ex. L.  The complaint in *ABP* and the Complaint in the present case before this Court also contain "nearly identical" allegations of misrepresentations and omissions in MBS offering materials by Countrywide's subsidiaries.  *See ABP* Complaint, Appendix C, Ex. L.

       3.      **The *Putnam* Action.**  On May 16, 2011, Judge Janet C. Hall of the District of Connecticut granted Countrywide's motion to transfer a similar matter filed in that district to the Central District of California, where it could be heard before Judge Pfaelzer.  *See Putnam Bank v. Countrywide Fin. Corp. et. al.*, No. 3:11-cv-00145-JCH, slip op. (D. Conn. May 16, 2011), Appendix C, Ex. Q.  The case, *Putnam Bank v. Countrywide Fin. Corp. et. al.*, No. 3:11-cv-00145-JCH (D. Conn.), involves alleged violations of the 1933 and 1934 Acts arising

out of MBS offerings by Countrywide subsidiaries that are virtually identical to the allegations in *Maine State, ABP*, and this action. *Id.* The MBS offerings at issue in *Putnam*, like the MBS offerings at issue here, overlap with the offerings listed in the original *Maine State* complaint. *Id.* In her ruling, Judge Hall explicitly found that transfer was warranted due to "the pendency of related litigation in the Central District of California," and also noted that the parties, witness, and locus of operative facts were all within the Central District. *Id.* Judge Hall further found that transfer would "promote efficiency and help avoid inconsistent results." *Id.*

    **4.**  **The *Allstate* Action.** Most recently, Judge Alvin K. Hellerstein of the Southern District of New York granted Countrywide's motion to transfer *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 10 Civ. 9591 (AKH), slip op. (S.D.N.Y. June 14, 2011), to the Central District of California.  Appendix C, Ex. R.  *Allstate*, like this case and the others discussed above, involves alleged violations of the 1933 Act and 1934 Acts arising out of MBS offerings by Countrywide subsidiaries against the same group of defendants.  *Id.*  In its order transferring the case to the Central District, the *Allstate* court noted the "strong policy favoring the litigation of related claims in the same tribunal" and held that the case "is closely related to the *Maine State* action, it has been filed in the aftermath of Judge Pfaelzer's ruling limiting the scope of Allstate's claims, and gives the appearance of judge-shopping."  *Allstate*, 10 Civ. 9591 (AKH), slip op. at 2.  The court further noted that California is the location "of much, if not all, of the evidence."  *Id*. at 3.  Under these circumstances, *Allstate* held that "[c]oordinating this action with *Maine State* will promote the efficient use of judicial resources, and will prevent the possibility of inconsistent results that could arise from pursuing the very same litigation before different courts and different judges."  *Id.*

    **5.**  **The Overlapping Allegations.** The factual allegations in these and the

other Countrywide cases filed in and transferred to the Central District all concern how Countrywide underwrote and originated its mortgage loans, and what it said publicly and in its SEC filings regarding the nature and quality of its loan origination and underwriting practices, and are nearly identical to those in the present case.  And, some of those cases are brought by other institutional purchasers of MBS issued by Countrywide subsidiaries and specifically concern Countrywide subsidiaries' securitization of its mortgage loans, attacking the very same statements (or kind of statements) that appeared in MBS registration statements and prospectus supplements that Plaintiffs here also attack.

More specifically, as Countrywide publicly disclosed, substantially all of the mortgage loans that it originated—several hundred billion dollars worth each year—were securitized and publicly sold in MBS offerings.  *See, e.g.*, Countrywide Fin. Corp. 2006 SEC Form 10-K, at 2, 101 (Mar. 1, 2007), Appendix C, Ex. N.  In all of the cases concerning Countrywide filed in the Central District, whether they involve allegations about the purchase and sale of common stock, its debt securities, or MBS issued by Countrywide subsidiaries like those at issue in this case, the plaintiffs contend that Countrywide misrepresented its lending practices, abandoned its underwriting guidelines, and originated loans without regard to the borrower's ability to repay.[4]  There is thus significant overlap between the factual allegations in this action and in the various Countrywide-related actions that have been filed in the Central District.[5]  *See* Appendix A.

---

[4] Some of these cases, specifically the *SEC* Action, the *New York Funds* Action, the *Argent* Action, the *Derivative* Action, and the *ERISA* Action, have been resolved or are on appeal.  The *Centaur* Action, the *Maine State* Action, the *ABP* Action, and the *Putnam* Action all remain pending before Judge Pfaelzer in the Central District.  Several actions brought by entities that opted out of the *New York Funds* settlement also remain pending before Judge Pfaelzer.  *See Children's Hospital & Medical Center Foundation of Omaha et al. v. Countrywide Fin. Corp.,* No. CV 11-02056 MRP (C.D. Cal.), Complaint filed March 10, 2011; *The Fresno Cty. Emp. Ret. Assoc. v. Countrywide Fin. Corp.,* No. 11-CV-00811 MRP (MANx) (C.D. Cal.), Complaint filed January 26, 2011; *State Treasurer of the State of Mich. v. Countrywide Fin. Corp.,* No. 11-CV-00809-MRP-MAN (C.D. Cal.), Complaint filed January 26, 2011.

[5] Even in those cases filed in the Central District that do not specifically involve MBS issued by Countrywide subsidiaries, the registration statements and prospectus supplements that Countrywide filed with the SEC in connection with its MBS offerings nonetheless were or are an important focus of the proceedings.  For example, in *New York*

In short, in the *New York Funds*, *Argent*, *Alvidres*, *ABP*, *Maine State*, and other related actions filed in the Central District of California, that Court has spent more than three years considering and addressing factual allegations and legal claims that are the same as or substantially similar to the allegations and claims asserted by Plaintiffs here.  Accordingly, the Central District of California—and in particular Judge Pfaelzer, who currently presides over the *New York Funds, Centaur, Fresno, Michigan, Maine State*, and *ABP* Actions—is well steeped in the underlying factual and legal issues and thus is uniquely well positioned to hear this case.[6]

## ARGUMENT

I.    **THIS CASE SHOULD BE TRANSFERRED
      TO THE CENTRAL DISTRICT OF CALIFORNIA.**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  In ruling on a motion to transfer, a district court should consider "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).  This action could have been filed in the Central District of California, as two virtually identical actions are already pending there.  And transferring this case to the California court for coordination with proceedings involving identical claims and transactions

---

*Funds*, plaintiffs were common stock and note purchasers.  In its briefing, Countrywide argued that the MBS registration statements and prospectus supplements filed with the SEC in connection with the issuance of hundreds of MBS offerings between 2005 and 2007 advised the market of exactly what types of loans Countrywide was originating, with what characteristics and credit risks, such that no investor in Countrywide securities reasonably could have been misled about what it was buying.

[6] Indeed, the Countrywide Defendants filed with Judicial Panel for Multidistrict Litigation on May 23, a Motion to Centralize Securities Actions in the Central District of California Pursuant to 28 U.S.C. § 1407 (the "Motion to Centralize").  The Motion to Centralize includes this action, as well as cases pending in 4 other federal judicial districts across the country.

will promote convenience and justice by avoiding wasteful, duplicative litigation, preserving

scarce judicial resources and preventing the risk of inconsistent rulings.

### A.  This Suit Could Originally Have Been Filed In The Central District Of California.

This action could have been filed in the Central District of California.  Under Section

1404(a), a claim "might have been brought" in any district court in which venue would have

been appropriate under 28 U.S.C. § 1391.  *See Shook, Inc. v. City of Moundsville Water Bd.*,

2010 WL 761947, at *10 (S.D. Ohio Mar. 2, 2010).  Section 1391(b) provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Here, jurisdiction under Section 1391(b) exists in the Central District of California be-

cause the principal place of business of each of the Countrywide Defendants is located there.

Compl. ¶¶ 25-42.  In addition, a substantial part of the alleged events or omissions giving rise to

the Complaint (if true) would have occurred in the Central District.  Appendix B ¶¶ 8-10.  All of

the Countrywide officers named as individual defendants live and work (or worked) in or near

the Central District.  Compl. ¶¶ 25-42.  Accordingly, venue would be proper there.

Moreover, pursuant to both the 1933 and the 1934 Acts, suits may be brought "in the dis-

trict wherein the defendant is found or is an inhabitant or transacts business."  15 U.S.C. §§

77v(a) & 78aa(a); *see also Am. Signature, Inc. v. Moody's Investors Servs., Inc.*, 2010 WL

2667367, at *2 (S.D. Ohio July 2, 2010) (transferring venue).  Here, all of the Countrywide De-

fendants reside and transact or transacted business in the Central District of California.  For this

additional reason, venue would have been proper in the Central District.

> **B.** **Transfer To The Central District**
> **Of California Will Promote Convenience And Justice.**

Transferring this case to the Central District of California also will promote convenience of the parties and witnesses and serve the interests of justice. District courts have "broad discretion" in evaluating motions to transfer and make case-by-case determinations based upon considerations of convenience and fairness. *Ltd. Serv. Corp.*, 2010 WL 2105362, at *7. A non-exclusive list of factors that courts consider in determining whether transfer is warranted includes: "(1) the nature of the suit; (2) the place of the events involved; (3) the relative ease of access to sources of proof; (4) the nature and materiality of testimony to be elicited from witnesses who must be transported; (5) the respective courts' familiarity with the applicable law and the conditions of their dockets; and (6) the residences of the parties." *Shook, Inc.*, 2010 WL 761947, at *10; *see also Moses*, 929 F.2d at 1137 (examining public and private interest factors). Here, the relevant factors weigh heavily in favor of transferring this case to the Central District.

> **1.** **The Interests Of Judicial Economy And**
> **Efficiency Strongly Favor Transfer To California.**

The existence of related litigation involving similar issues in another district is of paramount importance when evaluating a motion to transfer under Section 1404. Indeed, as Judge Graham of this court recently observed, the "substantial savings of time and judicial resources" that result from transfer to another court that already is presiding over similar litigation "so strongly favors a transfer that other considerations become largely irrelevant." *Ltd. Serv. Corp.*, 2010 WL 2105362, at *5; s*ee also Jabo's Pharmacy, Inc. v. Cephalon, Inc.*, 2010 WL 3851966, at *3 (E.D. Tenn. Sept. 27, 2010) (deeming pendency of related litigation "paramount and determinative . . . requiring a transfer of venue"); *Putnam Bank v. Countrywide Fin. Corp.*, No. 3:11-cv-00145-JCH, slip op. at 9 (D. Conn. May 16, 2011) (transferring related Countrywide ac-

tion to the C.D. Cal. because "it would be more efficient, and it would serve the interests of justice, to have these related claims tried in a single forum.").

Courts routinely grant motions to transfer based on policy considerations favoring the litigation of related claims in one forum, including the coordination of pretrial discovery and the minimization of time and expense for parties and witnesses. *Hamilton Cty. Ohio v. Hotels.com, L.P.*, 2011 WL 14369, at *3 (S.D. Ohio Jan. 3, 2011) (transferring venue to district where related actions were pending due to the "value inherent in the fact that a district judge, sitting in a venue that is appropriate for this case, has already acquired familiarity with [the facts]"); *see also American Signature*, 2010 WL 2667367, at *4 (same); *Peiker Acustic, Inc. v. Kennedy*, 2010 WL 3419457, at *7 (E.D. Mich. Aug. 27, 2010) (same).

"In order for a transfer to further the goal of judicial economy, it is not necessary that the case pending in the proposed transferee district be identical to the one under consideration for transfer." *Ltd. Serv. Corp.*, 2010 WL 2105362, at *5. Rather, the question is whether a "substantial savings of judicial time and resources (which almost always results in savings to the parties as well) can result from the transfer and the conduct of coordinated proceedings." *Id.* In *Limited Service Corp.*, for example, Judge Graham transferred a case involving a shipping dispute to the Southern District of New York, where Judge Hellerstein was presiding over similar actions. *Id.* Noting that filings had occurred in the related cases before Judge Hellerstein and that he had expressed a willingness to consider accepting and consolidating discovery in these cases, Judge Graham concluded as follows:

> These facts strongly suggest that, were this Court to keep this case, its actions, from case management to rulings on motions to trial, would very substantially duplicate the efforts of Judge Hellerstein, and that a great amount of duplicative effort would be required for this Court to draw even with Judge Hellerstein in his knowledge of the issues.

*Id.* Thus, transfer was warranted because of the "great amount of duplicative effort [that] would

be required . . . to draw even" with the court overseeing the many other actions. *Id.* (citation omitted); *see also Goggins v. Alliance Cap. Mgmt., L.P.*, 279 F. Supp. 2d 228, 234-35 (S.D.N.Y. 2003) ( "concerns over judicial efficiency outweigh all other factors[.]")[7]

Plaintiffs cannot deny the considerable factual similarities between its case and the federal actions in the Central District, particularly *Maine State* and *ABP*. Plaintiffs allege the "same misrepresentations in public filings"—and in the case of *Maine State*, in some of the very same offering documents. *Id.* The 1933 Act and 1934 Act claims asserted here are also asserted in *Maine State* or *ABP* (or both). And *every one* of the defendants in this case is (or was) named as a defendant in *Maine State* or *ABP* (or both). In short, the "factual predicates underpinning" the cases are common. *Hotels.com,* 2011 WL 14369, at *3.

The procedural posture of this case and the related *Maine State* and *ABP* actions pending in the Central District also make it likely that significant judicial economy can be achieved through coordination of discovery and other pre-trial matters. Because of the stay of discovery imposed by the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, no discovery has yet taken place in *Maine State* or *ABP*. Should the those actions proceed to discovery, many of the same documents will be produced in both cases, and many of the same people will need to be deposed. Accordingly, Countrywide anticipates that the Central District will coordinate discovery in those related actions, just as Judge Pfaelzer coordinated discovery in the *New York Funds* and *Argent* cases. *See* Joint Proposed Schedules For Fact Discovery, Expert Reports, and Summary Judgment Motions (May 11, 2009) and Civil Minutes (May 12, 2009),

---

[7] The *Goggins* court also noted with approval that transfer is appropriate "particularly when you have a federal judge who has already issued an order saying that he will willingly take any case that arises out of the same facts as a related case." *Id*. at 234. Here, too, Judge Pfaelzer has expressed such a willingness, denying the motion for remand in the *ABP* Action because she is "intimately familiar with these issues because [her] docket includes a nearly identical case, *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-v-00302 MRP (MANx) (C.D. Cal.)." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 447 B.R. 302, 312 (C.D. Cal. 2010), Appendix C, Ex. L.

Appendix C, Ex. P.  Thus, because this case involves many of the same parties, witnesses, claims and allegations, substantial efficiencies can likewise be gained by transferring it to the Central District, where discovery and other pre-trial activities can be coordinated with *Maine State* and *ABP,* thereby promoting litigant economy and minimizing the burden of this litigation on third-parties.  By contrast, simultaneous related proceedings in different districts could result in duplicative discovery and motion practice, and lead to inconsistent results as to common procedural and substantive issues.  *See Twenty First Century Comm'ns, Inc. v. TechRadium, Inc.*, 2010 WL 3001721, at *5 (S.D. Ohio July 30, 2010) (prospect of overlapping discovery favors transfer).

Similarly, Judge Pfaelzer also is extraordinarily familiar with the legal issues common to the cases.  For over three years, Judge Pfaelzer has presided over numerous related cases involving Countrywide that assert nearly identical claims against the Countrywide Defendants.  *See supra* at 5-9.  In all of the Countrywide-related cases noted above that have been filed in the Central District, the plaintiffs contend that Countrywide misrepresented its lending practices, abandoned its underwriting guidelines, and originated loans without regard to the borrower's ability to repay.  All of those cases also allege—as Plaintiffs do here—that Countrywide mischaracterized the credit quality of the loans it originated and underwrote increasingly risky loans pursuant to its supposed policy of matching competitor offerings without regard to credit risk. As Judge Pfaelzer noted in her recent order declining to remand the *ABP* case to California state court, the Central District is already "intimately familiar" with these factual allegations and legal issues, having addressed them in the *Maine State* matter and multiple other cases already.  *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 447 B.R. 302, 312 (C.D. Cal. 2010), Appendix C, Ex. L.  *See also Allstate*, 10 Civ. 9591 (AKH), slip op. at 3 (transferring the case to Judge Pfaelzer, "who has gained familiarity with the complex facts and issues that the cases

- 14 -

raise"); *Jabo's Pharmacy,* 2010 WL 3851966, at *3 ("The judge handling the cases in Pennsyl-vania is certainly familiar with applicable law and the underlying factual basis of the claims, and is therefore best suited to try this case.").

Thus, issues of fact and law central to the present action have been addressed, and will continue to be addressed, in the Central District.  It would make no sense for multiple federal judges simultaneously to adjudicate the same legal issues.  Transferring this action to the Central District will allow the present case to be coordinated with related actions already pending in that forum, will be far more efficient than allowing these closely related actions to proceed in the Southern District of Ohio and California simultaneously, and will serve the interests of justice.

## 2. Convenience Of The Witnesses And Ease Of Access To Sources Of Proof Favor California.

The convenience of witnesses is "of the utmost importance" in considering a motion to transfer.  *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d. 845, 852 (S.D. Ohio 2007); *see also Am. Signature*, 2010 WL 2667367, at *3 (fact that all of Defendants' employees and former employ-ees are located in New York favors transfer to New York); *Twenty First Century Comm'ns, Inc.*, 2010 WL 3001721, at *5 (granting motion to transfer case to Texas based in part on the fact that all employees and relevant documents were located there).  In transferring the *Putnam* matter to the Central District, Judge Hall took note of the fact that the key witnesses in the case were all located in the Central District, writing that "[i]n an action alleging inadequate disclosure of the risks created by Countrywide's mortgage lending practices, those responsible for preparing and approving the disclosures and those responsible for Countrywide's mortgage lending polices are surely among the most important witnesses."  *Putnam Bank*, No. 3:11-cv-00145-JCH, slip op. at 11.  Here, too, these factors all favor transfer to the Central District.

Most of the potentially relevant witnesses, including individuals who were involved in

the structuring and underwriting of the MBS at issue, the preparation and negotiation of the MBS offering materials, the quality control of Countrywide's mortgage loan originations, and due diligence on the mortgage loans pools, work (or worked) in or near Calabasas, California and reside in or near the Central District.  Appendix B ¶ 10.  Because many of these individuals are no longer employed by Countrywide or its subsidiaries, attendance at any trial by these former Countrywide employees residing in California would not be assured because they are outside this court's subpoena power.  They are, however, within the Central District's trial subpoena power, which counsels in favor of transfer.  *See Pullins v. Palmero*, 2009 WL 1067315, at *5 (S.D. Ohio Apr. 21, 2009) (fact that many important non-party witnesses were beyond subpoena power of transferor court "weigh[ed] heavily" in favor of transfer); *Plaskolite, Inc. v. Zhejiang Taizhou Eagle Machinery Co.,* 2008 WL 5190049, at *8 (S.D. Ohio Dec. 9, 2008) (transferring case because "most, if not all non-party witnesses" fell outside subpoena power of transferor court).

Not surprisingly, the great majority of potentially relevant documents and sources of proof also are located in the Central District of California, where Countrywide stores both paper and electronic documents.  Appendix B ¶ 12.  This factor also weighs in favor of transfer.  For instance, the *Twenty First Century Comm'ns* court transferred that case from the Southern District of Ohio to the Southern District of Texas because "all documents, employees, and any evidence to be produced . . . are located in Texas."  2010 WL 3001721, at *5.

Indeed, the only connection between this case and the Southern District of Ohio is that some—but not all—of the plaintiffs are located here.[8]  However, none of the relevant non-parties, and none of the witnesses who were involved in originating the loans underlying the MBS or structuring the MBS Offerings, is located in Ohio.  Compl. ¶ 23; Appendix B ¶¶ 10-11.

---

[8] One of the plaintiffs, National Integrity Life Insurance Company, is a New York corporation with its principal place of business in New York.  Compl, ¶23.

Few, if any, of the potentially relevant documents or sources of proof are located in Ohio. *Id.* ¶ 12. Under similar circumstances, courts in this Circuit routinely grant motions to transfer.[9] For example, in *American Signature*, an Ohio corporation sued Moody's for securities fraud, filing suit in this Court. The court granted the defendant's motion to transfer under Section 1404(a) to the Southern District of New York because Ohio's only connection to the case was that it was Plaintiffs' chosen forum. *Am. Signature*, 2010 WL 2667367, at *4. The court explained:

> In sum, the only factor not favoring transfer is Plaintiffs' choice of forum. All of the likely sources of proof are in New York. All of the employees related to the ratings and other potential witnesses, including the likely non-party witness Lehman, are located in New York. All of the conduct related to the ARS ratings and the actual purchases occurred in New York.

*Id.* This is precisely the case here.[10] In short, the vast majority of relevant evidence is located in the Central District—not Ohio. This factor strongly favors transfer of the case.

### 3. California Is The Locus Of Operative Facts.

The gravamen of Plaintiffs' Complaint is that Countrywide subsidiaries allegedly misstated the riskiness of the mortgage loans backing the MBS certificates in which Plaintiffs invested through the written materials issued in connection with those securities. Compl. ¶ 12-16. Virtually all of this alleged wrongdoing (if true) would have occurred in Calabasas, where the offering materials at issue were negotiated, approved, and issued. It is well-settled that, when examining claims for misrepresentation on a motion to transfer venue, "misrepresentations and omissions are deemed to occur in the district where they were issued or the truth withheld, not where the statements at issue are received." *Wayne Cty. Emp. Ret. Sys. v. MGIC Inv. Corp.*, 604

---

[9] Further, on May 23, 2011, Countrywide filed a Motion to Centralize Securities Actions in the Central District of California before the judicial panel on multidistrict litigation. That motion seeks to centralize 11 separate securities cases involving equity, debt, and MBS issued by Countrywide subsidiaries, including this case. Responses to Countrywide's motion are due on June 15, 2011.

[10] *Accord Giant Eagle, Inc. v. Cephalon, Inc.*, 2010 WL 3834343, at *6 (N.D. Ohio Sept. 30, 2010) (transferring case where "the locus of operative facts, the lack of meaningful ties to Ohio, the convenience of all the parties and most of the witnesses" were all in Pennsylvania).

F. Supp. 2d 969, 975 (E.D. Mich. 2009) (misstatements that originated from Wisconsin favored transfer to Wisconsin court); *In re Collins & Aikman*, 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006).

Similarly, while Plaintiffs may contend that Countrywide subsidiaries sold the relevant MBS to them in Ohio, the law is clear that this does not make Ohio the locus of operative facts for Section 1404(a) purposes.  In *Morgan Guaranty Trust Co. v. Tisdale*, for example, the court concluded that the locus of operative facts for Section 1404(a) purposes was the district in which the securities offering materials originated, not the district where the sale and purchase of the notes occurred.  1996 WL 544240, at *6 (S.D.N.Y. Sept. 25, 1996).  Judge Hall, in transferring the *Putnam* action, noted that "[m]isrepresentations are deemed to 'occur' in the district where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received."  *See Putnam Bank*, No. 3:11-cv-00145-JCH, slip op. at 9 (citation omitted).

Plaintiffs also allege that Countrywide "abandoned any semblance of underwriting standards," and that it "routinely transferred the resulting risk from its risky loans to investors[.]"  Compl. ¶¶ 60, 73.  Where a plaintiff claims pervasive wrongdoing by a corporate defendant, the locus of operative facts will typically be the company's headquarters, from which systemic policies allegedly originate.  *See, e.g., Putnam Bank*, No. 3:11-cv-00145-JCH, slip op. at 10 (where the alleged misrepresentations "were approved in and issued out of Countrywide's offices in Calabasas, California," "the locus of the operative facts weighs strongly in favor of transfer to the Central District."); *Stinchcombe v. Caruso*, 2008 WL 4561515, at *1 (E.D. Mich. Oct. 9, 2008) (transferring case challenging alleged system-wide policies of the Michigan Department of Corrections to W.D. Mich., where "these policies were created").[11]  In short, the Central District

---

[11] *See also Jones v. Walgreen Co.,* 463 F. Supp. 2d 267, 277-78 (D. Conn. 2006) ("Because Ms. Jones alleges systemic and pervasive discrimination by Walgreens, the locus of operative facts is principally in Illinois."); *Butcher v. Gerber Prods. Co.*, 1998 WL 437150, at *8 (S.D.N.Y. Aug. 3, 1998) (granting motion to transfer where the relevant

is the locus of operative facts, a factor that weighs heavily in favor of transfer.

### 4. Plaintiffs' Choice Of Forum Does Not Favor Keeping This Action In The Southern District Of Ohio.

As this Court has held, "when a party has chosen a forum that has no real connection to any of the events in the case . . . that party's choice of a forum is not particularly compelling." *Ltd. Serv. Corp.*, 2010 WL 2105362, at *6 (granting motion to transfer); *accord Am. Signature*, 2010 WL 2667367, at *2 (plaintiff's choice of forum "given little weight 'where none of the conduct complained of occurred in the forum selected by the plaintiff'") (citation omitted); *Twenty First Century Comm'ns*, 2010 WL 3001721, at *5 (same); *Ghaith v. Rauschenberger*, 2010 WL 1644054, at *4 (E.D. Mich. Apr. 22, 2010) (same).

Here, the operative facts alleged in this case are most closely connected to California, not Ohio. *See supra* at Section I.B.3. Indeed, other than that some Plaintiffs maintain their principal place of business in Ohio (*see* Compl. ¶¶ 19-24), there is literally *no connection* between the operative facts in this case and the state of Ohio. Because Plaintiffs cannot show a meaningful connection between this action and the Southern District of Ohio, Plaintiffs' choice of forum is not controlling, and is outweighed by the many other factors that favor transfer.

### 5. The Remaining Factors Are Neutral With Respect To Transfer.

The remaining factors relevant to transfer are neutral. With respect to the forum's familiarity with applicable law (*Ltd. Serv. Corp.*, 2010 WL 2105362, at *7), Plaintiffs principally assert claims for federal securities laws violations. *See* Compl. ¶¶ 426-444, 496-531. The federal courts in Ohio and California are equally familiar with the applicable federal securities laws—making this a neutral factor. *See, e.g., Esperson v. Trugreen L.P.,* No. 10-cv-02130-STA-cgc, slip op. at 13 (W.D. Tenn. Oct. 5, 2010) ("all federal district courts are presumed to be equally

outsourcing and severance plan decisions were "made at Gerber's headquarters in Fremont, Michigan, and it is there that the effects of its implementation occurred").

familiar with and competent in deciding federal questions"); *Checuti v. Conrail,* 291 F. Supp. 2d 664, 672 (N.D. Ohio Nov. 18, 2003) (transferring claims to E.D. Mich. based on federal law).

Plaintiffs do assert some claims for violation of the Ohio Securities Act. Compl. ¶¶ 456-82. However, these claims are not sufficient to tip the familiarity with governing law factor in their favor. Plaintiffs' Ohio Securities Act claims—which are based entirely on the very same factual allegations that underlie its other six claims—are not complex or otherwise based on legal principles with which the Central District would be unfamiliar, and accordingly transfer remains appropriate. *See, e.g., Putnam Bank*, No. 3:11-cv-00145-JCH, slip op. at 14 (transferring case including Connecticut Uniform Securities Act claims to C.D. Cal.); *Am. Signature*, 2010 WL 2667367, at *4 (transferring case including Ohio Securities Act claims to S.D.N.Y.).

## <u>CONCLUSION</u>

This case could have been—and should have been—brought in the Central District of California, where numerous other related actions are pending. The Central District already has extensive experience with the factual allegations and legal claims that Plaintiffs assert, and can coordinate discovery and other pretrial proceedings with the other related cases already pending there. Moreover, the principal operative facts alleged in this case would have occurred in the Central District, and the key witnesses, most of the parties, and virtually all the relevant documents are all located there, making it the center of gravity of this litigation. Accordingly, transferring this case will promote the convenience of the parties and witnesses, avoid potentially inconsistent rulings as to common issues of law and fact, conserve judicial resources, and serve the interests of justice. The Countrywide Defendants thus respectfully request that the Court transfer this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a), and award such other relief as may be just and appropriate.

Respectfully submitted,

Dated:  June 16, 2011          _/S/ Brian E. Pastuszenski_____
                               Brian E. Pastuszenski (pro hac vice application forthcoming)
                               bpastuszenski@goodwinprocter.com
                               Inez H. Friedman-Boyce (pro hac vice application forthcoming)
                               ifriedmanboyce@goodwinprocter.com
                               Brian C. Devine (pro hac vice application forthcoming)
                               bdevine@goodwinprocter.com
                               GOODWIN PROCTER LLP
                               53 State Street
                               Boston, MA 02109
                               Tel. (617) 570-1000
                               Fax: (617) 523-1231

                               Counsel for the Countrywide Defendants

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing has been filed electronically with the U.S. District Court this 16th day of June, 2011.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/S/  Katherine A. Borden
Katherine A. Borden
GOODWIN PROCTER LLP
53 State Street
Boston, MA 02109
Tel.: (617) 570-1000
Fax: (617) 523-1231

**APPENDIX A**

**COMPARISON OF PLAINTIFFS' ALLEGATIONS TO ALEGATIONS MADE IN
RELATED CASES PENDING IN THE CENTRAL DISTRICT OF CALIFORNIA**

| <u>Western and Southern's Factual Allegation</u> | **Factual Allegation of Related Case in <u>Central District of California</u>** |
|---|---|
| Countrywide "**systematically abandoned** its underwriting standards to increase loan volumes without regard to loan quality." Compl. ¶¶ 116-17 (emphasis added). | • "Countrywide engaged in a *systemic departure* from its underwriting standards when originating the mortgages underlying the Certificates purchased by ABP.  As a result of Countrywide's *wholesale abandonment* of its underwriting guidelines, the mortgage pools underlying the Certificates have suffered serious delinquencies and foreclosures far above the rates that ABP anticipated . . . ." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, No. 10-07275-MRP (MANx) (C.D. Cal.), Complaint filed Aug. 18, 2010 ("*ABP* Complaint") ¶ 65 (emphasis added), Appendix C, Ex. C.

• "[T]hese descriptions of the loan origination guidelines in the Offering Documents contained material misrepresentations and omissions since, in fact, the guidelines were *systematically disregarded* to include borrowers who did not meet the aforementioned criteria."  *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-CV-00302-MRP (MANx) (C.D. Cal.), Second Amended Class Action Complaint filed Dec. 6, 2010 ("*Maine State* Complaint") ¶ 6 (emphasis added), Appendix C, Ex. O.

• "[U]ndisclosed to the Class, Countrywide loosened and *abandoned* its purportedly sound loan *underwriting standards* that had been designed to produce 'high quality loans,' in order to sweep in borrowers who previously would not have qualified for a loan."  *In re Countrywide Fin. Corp. Sec. Litig.*, CV 07-05295 MRP (MANx) (C.D. Cal.), Second Consolidated Amended Class Action Complaint filed Jan. 6, 2009 ("*New York Funds* Complaint") ¶ 89 (emphasis |

| | |
|---|---|
| | added), Appendix C, Ex. J. |
| | • "In 2004, Defendants ***abandoned*** the Company's ***stated lending practices*** and began sacrificing loan quality for quantity by offering high-risk, non-traditional 'affordability' loans, primarily to non-creditworthy borrowers, without requiring adequate supporting documentation to verify the borrower's income or collateral on the loan in order to capture a 30% market share." *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp., et al.*, No. 10-CV-05699-MRP (MANx) (C.D. Cal.), Complaint filed July 30, 2010 ("*Centaur* Complaint") ¶ 224 (emphasis added), Appendix C, Ex. E. |
| | • "The Action alleges that, contrary to what investors in these mortgage-backed securities were told, the billions of dollars of Certificates that Countrywide and its subsidiaries issued in the Offerings were backed by mortgages that were ***recklessly underwritten***, and, as such, are at high risk of default." *Maine State* Lead Plaintiff Motion at 7, Appendix C, Ex. K. |
| Countrywide "represented that it made case-by-case **exceptions to its underwriting standards**, based on **compensating factors** that increased the quality of a loan application," but in fact exceptions were granted by Countrywide "without consideration of any compensating factors." Compl. ¶¶ 112, 117 (emphasis added). | • "In contravention of Countrywide's underwriting guidelines, Countrywide allowed non-qualifying borrowers to be approved for loans under 'exceptions' to Countrywide's **underwriting standards**, even though there were no '**compensating factors**' that could possibly justify such an exception." *ABP* Complaint ¶ 150(d) (emphasis added), Appendix C, Ex. C. |
| | • "Countrywide's underwriting . . . disregarded a borrower's ability to pay by . . . [a]llowing non-qualifying borrowers to be approved for loans under **exceptions** to Countrywide's **underwriting standards** based on so-called '**compensating factors**' without requiring documentation for such compensating factors." *Maine State* Complaint ¶ 148(c) (emphasis added), Appendix C, Ex. D. |
| | • "According to Countrywide's official **un-** |

| | |
|---|---|
| | derwriting guidelines, **exceptions** were only proper where '**compensating factors**' were identified which offset the risks caused by the loan being outside of guide-lines.  In practice, however, Countrywide used as 'compensating factors' variables such as FICO and loan to value, which had already been assessed by CLUES in issuing a 'refer' finding."  *SEC v. Mozilo*, No. 09-CV-03994-JFW (MANx) (C.D. Cal.), Complaint filed June 4, 2009 ("*SEC* Complaint") ¶ 30 (emphasis added), Appendix C, Ex. F. |
| In deciding whether to originate a mortgage loan, Countrywide "**ignored borrowers' actual repayment ability**," and its "only under-writing principle" was "whether the loan could be sold in the secondary market**."  Compl. ¶ 117, 176 (emphasis added). | • "In the earlier part of this decade, as an unprecedented boom in the housing mar-ket got underway, Countrywide embarked on a scheme to profit from the boom by originating large numbers of mortgage loans, ***regardless of the borrower's ability to pay***, and then ***quickly flipping these loans at a profit on the secondary mar-ket***."  *ABP* Complaint ¶ 66 (emphasis added), Appendix C, Ex. C. |
| | • "Countrywide's significant growth was predicated upon providing loans to bor-rowers ***without regard to the borrowers' creditworthiness or ability to repay*** the loans."  *Argent Classic Convertible Arbi-trage Fund L.P. v. Countrywide*, No. CV-07-07097-MRP (MANx) (C.D. Cal.), Third Amended Complaint filed Dec. 3, 2008 ("*Argent* Complaint"), ¶ 4 (emphasis added), Appendix C, Ex. G. |
| | • Countrywide "market[ed] and extend[ed] subprime mortgage loans made on a 'low documentation' basis, ***without adequate consideration of the borrower's ability to repay*** and with unreasonably high risk of borrower default."  *Alvidres v. Country-wide Fin. Corp.*, No. 07-05810- JFW (MANx) (C.D. Cal.), Complaint filed Sept. 6, 2007 (the "*ERISA* Complaint") ¶ 5 (emphasis added), Appendix C, Ex. I. |
| Countrywide tried to increase its market share through an alleged "**matching**" strategy, pur- | • "By ***matching the most aggressive (and least prudent) underwriting standards*** in |

| | |
|---|---|
| suant to which Countrywide "would approve any mortgage product feature offered by a competitor." Compl. ¶¶ 2, 64, 69, 117 (emphasis added). | the market, Countrywide assumed ultimately crippling credit risks." *Centaur* Complaint ¶ 13 (emphasis added), Appendix C, Ex. E. |
| | • "Defendants misled investors by failing to disclose substantial negative information regarding Countrywide's loan products, including . . . the company's pursuit of a '*matching strategy*' in which it matched the terms of any loan being offered in the market, even loans offered by primarily subprime originators." *SEC* Complaint ¶ 8 (emphasis added), Appendix C, Ex. F. |
| | • "In a June 25, 2005 email to Sambol concerning guideline expansion and the company's growing credit risks, McMurray addressed the matching strategy and explained that 'because the matching process includes comparisons to a variety of lenders, our [guidelines] will be a *composite* of the outer boundaries across multiple lenders." *SEC* Complaint ¶ 41, Appendix C, Ex. F. |
| The MBS offering documents **misrepresented** the **credit characteristics** of the pooled mortgage loans underlying the MBS, including alleged misrepresentations as to **appraisal values** and **LTV ratios**.  Compl. ¶¶ 16, 89-93 (emphasis added). | • "Defendants' ***representations in the Offering Documents were false and misleading***. Specifically, . . . the mortgages underlying the Certificates had been extended based on ***collateral appraisals that were not performed in accordance with USPAP***, so that the value of the underlying properties had been overstated, thereby exposing investors such as ABP to additional losses in the event of foreclosure." *ABP* Complaint ¶ 8 (emphasis added), Appendix C, Ex. C. |
| | • "As a result of Countrywide's systemic disregard for its underwriting guidelines, numerous statements set forth in the Offering Documents contained material ***misstatements and omissions***, including regarding: (i) the high ***quality of the mortgage pools*** underlying the Issuing Trusts, resulting from the underwriting standards employed to originate the mortgages, the value of the collateral securing the mortgages, and the ***soundness of the appraisals*** used to arrive |

| | |
|---|---|
| | at this value; (ii) the mortgages' **_loan-to-value ('LTV') ratios_**; and (iii) other criteria that were used to qualify borrowers for mortgages." *Maine State* Amended Complaint ¶ 16 (emphasis added), Appendix C, Ex. O.<br><br>• "The Complaint charges that the Registration Statements and Prospectus Supplements used in the Offerings of the Certificates contained **_material misstatements and omissions_** concerning the **_mortgages underlying the Certificates_**." *Maine State* Lead Plaintiff Motion at 7, Appendix C, Ex. K. |