IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, et al., | : : : | |
| Plaintiffs, | : | Case No. 1:11-CV-267 |
| v. | : : | |
| COUNTRYWIDE FINANCIAL CORP., et al., | : : : | Judge Spiegel |
| Defendants. | : : | |

---

**WESTERN & SOUTHERN'S OPPOSITION TO THE
COUNTRYWIDE DEFENDANTS' MOTION TO TRANSFER**

---

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 4

ARGUMENT ..................................................................................................................... 6

I.      Western & Southern's Choice of Forum Is Entitled to "Considerable Deference" ........... 6

II.     The Countrywide Defendants Have Not Shown that Principals of Judicial Economy Clearly Override the Deference that Must be Afforded to Western & Southern's Choice of Venue. ...................................................................................................... 9

        A.      The Countrywide Defendants Ignore the Well-Reasoned Decisions of this Court and Other Courts in this District Recognizing Deference to Western & Southern's Choice of Forum is Required Here. ................................................................ 10

        B.      Countrywide's Prior Litigation Positions Belie its Assertion that it Would Be More Efficient to Consolidate this Action with the Four MBS Actions Currently Pending in the Central District of California. ...................................... 14

        C.      Countrywide Has Not Established that an Action in the Central District of California Would be More Convenient for Third Party Witnesses or Provide Greater Access to Evidence………………………………………………...16

III.    Public Interest Factors Favor the Southern District of Ohio. ........................................ 19

CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Am. Signature Inc. v. Moody's Investors Services, Inc.*,
    No. 2:09-cv-878, 2010 U.S. Dist. LEXIS 68042 (S.D. Ohio July 2, 2010) ..................... 12

*Armco, Inc. v. Reliance Nat. Ins. Co.*,
    No. C-1-96-1149, 1997 U.S. Dist. LEXIS 7880 (S.D. Ohio May 30, 1997) ................... 17

*Arters v. Sandoz, Inc.*,
    2:10-cv-00142, 2010 U.S. Dist. LEXIS 101197
    (S.D. Ohio Sept. 27, 2010) ................................................................................*passim*

*Cent. Inv. Corp. v. Mut. Leasing Assocs., Inc.*,
    523 F. Supp. 74 (S.D. Ohio 1981) ...................................................................................7

*Dowling v. Richardson-Merrell, Inc.*,
    727 F.2d 608 (6th Cir. 1984) ...........................................................................................5

*Fin. Guar. Ins. Co. v. Countrywide Home Loans, Inc.*,
    No. 650736 (2009) ...........................................................................................................17

*Fusi v. Emery Worldwide Airlines, Inc.*,
    2007 U.S. Dist. LEXIS 89784 (S.D. Ohio Nov. 23, 2007) ............................................. 16

*Giant Eagle, Inc. v. Cephalon, Inc.*,
    No. 1:10-cv-1197, 2010 U.S. Dist. LEXIS 103431 (N.D. Ohio Sept. 30, 2010) ............. 12

*Graham v. UPS*,
    519 F. Supp. 2d 801 (N.D. Ill. 2007) .............................................................................. 16

*Hamilton County Ohio v. Hotels.com*,
    No. 1:10-cv-668, 2011 U.S. Dist. LEXIS 1747 (S.D. Ohio Jan. 3, 2011) ....................... 12

*Jabo's Pharmacy, Inc. v. Cephalon, Inc.*,
    No. 2:09-cv-289, 2010 U.S. Dist. LEXIS 102003 (E.D. Tenn. Sept. 27, 2010) .............. 12

*Kay v. Nat'l City Mortg. Co.*,
    No. 3:03-cv-160, 2004 U.S. Dist. LEXIS 30554 (S.D. Ohio July 14, 2004) ................... 12

*Laumann Mfg. Corp. v. Castings USA, Inc.*,
    913 F. Supp. 712 (E.D.N.Y. 1996) ................................................................................. 17

*Levy v. Cain, Watters & Associates*,
    No. 2:09-cv-723, 2010 U.S. Dist. LEXIS 9537 (S.D. Ohio Jan. 15, 2010) ..............*passim*

*Lewis v. ACB Bus. Servs.*,
    135 F.3d 389 (6th Cir. 1998) ...............................................................................6

*Limited Service Corporation v. M/V/APL Peru*,
    No. 2:09-cv-1025, U.S. Dist LEXIS 53632 (S.D. Ohio May 25, 2010) .........................11

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    No. 10-cv-00302 (MRP) ......................................................................................15

*Max Rack, Inc. v. Hoist Fitness Sys., Inc.*,
    No. 2:05-CV-784, 2006 U.S. Dist. LEXIS 13374 (S.D. Ohio Mar. 10, 2006) ...........11, 19

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
    602825/2008 .......................................................................................................17

*Moses v. Business Card Express, Inc.*,
    929 F.2d 1131 (6th Cir. 1991) ...............................................................................5

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ...........................................................................................15

*Painting Co., Plaintiff, v. Dist. Council No. 9, Int'l Union of Painters and Allied Trades, A.F.L.*,
    No. 2:07-cv-550, 185 L.R.R.M. 2462,
    2008 U.S. Dist. LEXIS 85803 (S.D. Ohio 2008) .......................................................6, 18

*Pearle Vision, Inc. v. N.J. Eyes, Inc.*,
    No. 1:08-CV-190, 2009 U.S. Dist. LEXIS 281, (S.D. Ohio Jan. 6, 2009)................*passim*

*Plaskolite, Inc. v. Zhenjiang Taizhou Eagle Mach.*,
    No. 08-487, U.S. Dist LEXIS 99395 (S.D. Ohio Dec. 9, 2008).......................................12

*Priess v. Fisherfolk*,
    533 F. Supp. 1271 (S.D. Ohio 1982) ..................................................................7, 11

*Pullins v. Palmero*,
    No. 3:08-cv-118, 2009 WL 1067315 (S.D. Ohio Apr. 21, 2009) ...................................13

*Putnam Bank v. Countrywide Fin. Corp. et. al.*,
    No. 3:11-cv-00145-JCH, slip op. at 1 (D. Conn. May 16, 2011) ...................................12

*Putnam Bank v. Countrywide Financial Corp.*, et al.,
    No. 2:11-cv-04698-MRP (C.D. Cal.) .......................................................................13

*Reese v. CNH Am. LLC*,
    574 F.3d 315 (6th Cir. 2009) ........................................................................5, 6

*Republic Mortg. Ins. Co. v. Countrywide Fin. Corp.*, Dkt.
    No. 603915/2009 ......................................................................................17

*Ritter v. Zuspan*,
    451 F. Supp. 926 (E.D. Mich. 1978) .................................................................6

*SEC v. Rose Fund, LLC*,
    No. 03-cv-04593, 2004 U.S. Dist. LEXIS 22491 (N.D. Cal. Jan. 9, 2004) ...................... 19

*Shanehchian v. Macy's, Inc.*,
    251 F.R.D. 287 (S.D. Ohio 2008)...........................................................*passim*

*State of Ohio v. Harris et al.*,
    Case No. CR-11-551555-I (Cuyahoga County) .....................................................3

*Steelcase Inc. v. Smart Techs.*,
    336 F. Supp. 2d 714 (W.D. Mich. 2004) .........................................................11

*Stichcombe v. Caruso*,
    No. 2:08-cv-14271, 2008 U.S. Dist. LEXIS 80209 (E.D. Mich. Oct. 9, 2008) ...............12

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
    No. 2:10-07275-MRP (MANx) (C.D. Cal.) .......................................................5

*Syncora Guarantee Inc. v. Countrywide Home Loans, Inc.*,
    Dkt. No. 650042/2009 ................................................................................17

*Twenty First Century Comm., Inc. v. Techradium, Inc.*,
    No. 2:09-cv-1118, U.S. Dist LEXIS 7820 (S.D. Ohio Jul. 30, 2010) ...........................12

*Van Ommeren Bulk Shipping, B.V. v. Tagship, Inc.*,
    821 F. Supp. 848 (D. Conn. 1993) .................................................................17

*Walnut Place LLC, et al. v. Countrywide Home Loans, Inc.*,
    No. 650497-2011 ......................................................................................17

*Wayne County Employees' Ret. Sys. v. MGIC Invest. Corp.*,
    604 F. Supp. 2d 969 (E.D. Mich. 2009) .........................................................13

**Page**

**STATUES:**

28 U.S.C. § 1404 ................................................................................................*passim*

The Western and Southern Life Insurance Company, Western-Southern Life Assurance Company, Columbus Life Insurance Company, Integrity Life Insurance Company, National Integrity Life Insurance Company and Fort Washington Investment Advisors, Inc. (collectively, "Western & Southern") respectfully submit this memorandum of law in opposition to the Countrywide Defendants'[1] Motion to Transfer, Dkt. #53, along with the Declaration of Jeffrey Stainton, dated June 30, 2011 and the Declaration of Steven S. Fitzgerald, with exhibits thereto, dated June 30, 2011.

## PRELIMINARY STATEMENT

As the housing boom of the mid-2000's rolled on, defendant Countrywide and its affiliates routinely granted new mortgage loans that should never have been approved throughout the entire United States.  In doing so, Countrywide abandoned its own standards for mortgage origination in favor of its nationwide effort to cash in on the real estate boom by vastly increasing its volume of new mortgage loans.  Countrywide, however, did not retain the risk that the loans it granted would never be repaid.  Instead, Countrywide packaged its loans and sold them to so-called "securitization trusts."  To pay Countrywide for the loans, the trusts marketed and sold securities representing interests in the trusts' pools of mortgages to borrowers throughout the country.  Given that Countrywide originated new mortgage loans nationwide and then effectively sold them off to investors throughout the country, this case is not California-centric as the Countrywide Defendants assert.  It was a thoroughly nationwide effort.

In contrast, Western & Southern is a company headquartered in Cincinnati with deep ties to the Southern District of Ohio.  It filed this action in Ohio to address violations of the Ohio

---

[1] The term Countrywide Defendants includes Countrywide Financial Corporation ("Countrywide"), Countrywide Home Loans, Inc., Countrywide Capital Markets, LLC, Countrywide Securities Corporation, CWALT, Inc., CWABS, Inc., CWHEQ, Inc., and CWMBS, Inc., Angelo Mozilo, David Sambol, Eric Sieracki, Ranjit Kripalani, Stanford Kurland, David A. Spector, N. Joshua Adler, Jennifer Sandefur, Bank of America Corporation, BAC Home Loans Servicing, LP, and NB Holdings Corporation.

Securities Act, the federal securities laws and Ohio common law.  Countrywide has now moved twice to transfer this action out of Ohio.  Countrywide's first motion is filed with the Judicial Panel on Multi-District Litigation (the "MDL Panel") requesting transfer for pre-trial proceedings to the Central District of California.  The present motion seeks transfer for all purposes, including trial.[2]

Indeed, in light of Countrywide's pending MDL motion, its present request for a transfer is reduced to a motion concerning the locus of the ultimate trial of this matter and should be denied.[3]  The law in the Sixth Circuit provides that a plaintiff's choice of forum is entitled to substantial deference particularly when the plaintiff is a resident of the state in which the district court sits.  Thus, the Countrywide Defendants must demonstrate that the interests of judicial economy or other purported public or private interests "clearly favor a change of venue."

Applying Sixth Circuit precedent, this Court and others within this judicial district routinely deny motions to transfer when the plaintiff is a resident of Ohio and the claim relates to the defendant's solicitation of business in Ohio.  Here it is undisputed that Countrywide "reached into" the state of Ohio disseminating registration statements, prospectuses, and prospectus supplements (collectively, the "Offering Materials") associated with the Countrywide mortgage-backed securities ("Countrywide MBS") it sold to Western & Southern (the "Certificates").  It is also undisputed that Western & Southern purchased most of the Certificates in Ohio and that a

---

[2] Western & Southern has opposed the motion filed with the MDL Panel because:  (i) the Countrywide Defendants have not established that common questions predominate with respect to the cases Countrywide seeks to include in the MDL; and (ii) the proposed MDL would hamper the progress of this action by requiring coordination with cases that are brought under different states' laws and involving securities that the Countrywide Defendants believe are wholly distinct from those involved in Western & Southern's action.  However, Western & Southern has expressed a willingness to voluntarily coordinate discovery with other actions pending against Countrywide where it would be more efficient to do so.

[3] For all practical purposes, the decision as to whether there are other similar actions that should be coordinated for pre-trial purposes is in the hands of the MDL Panel.

significant number of the loans underlying the Certificates were originated in Ohio or relate to Ohio properties.

Here, the Countrywide Defendants have not come close to meeting their burden of demonstrating that principals of judicial economy or other public or private interest factors "clearly favor" transfer. The Countrywide Defendants have represented to other courts (when convenient) that there is no significant similarity between the Certificates purchased by Western & Southern and the certificates that are involved in actions currently pending in the Central District of California. They have also stated that the evidence relating to its mortgage-backed securities is scattered across the country as its mortgage operations were "countrywide." Although they argue that non-party witnesses are located in California and would be unwilling to attend a trial in Ohio, they have not identified any such purported non-party witnesses nor have they produced any evidence that indicates that they would be unwilling to attend trial (or that deposition testimony from these non-party witnesses could not be used in lieu of live testimony). And the Countrywide Defendants' assertion that there is "*no connection*" between this action and the state of Ohio is simply wrong. The securities were marketed in Ohio, the sales occurred in Ohio and, as a result, Ohio-based companies suffered substantial losses. Ohio has a significant and compelling interest in this matter as demonstrated by its recent criminal indictment of several Citigroup-affiliated mortgage underwriters allegedly engaged in shoddy loan practices similar to those alleged in this action. *See State of Ohio v. Harris et al.*, Case No. CR-11-551555-I (Cuyahoga County). Given the weight afforded plaintiff's choice of forum and Ohio's compelling interest in protecting the rights of Ohio investors, Western & Southern respectfully submits that the Countrywide Defendants' motion to transfer should be denied.

## BACKGROUND

Countrywide earned vast sums from 2003-2007 "securitizing" residential mortgages. The Countrywide Defendants collected pools of mortgage loans, many of which were originated by Countrywide itself, and issued securities backed by the loan pools, commonly referred to as mortgage-backed securities.  The stream of principal and interest payments on individual loans in the mortgage pools was committed to pay principal and interest on the mortgage-backed securities.  Each of Countrywide's MBS offerings was divided into separate "tranches."  Each tranche was entitled to a specified priority for payment depending on its placement in the priority "waterfall" established for each securitization.  Investors holding senior tranches in the waterfall were entitled to receive their payments before investors who purchased more junior tranches.

Western & Southern typically purchased allegedly safer, more senior tranches of mortgage-backed securities rated AAA/Aaa by the rating agencies Standard & Poor's and Moody's Investors Service.  In marketing its mortgage-backed securities to Western & Southern, Countrywide represented that the loans backing the securities were underwritten in accordance with prudent underwriting standards designed to ensure that borrowers could repay the loans and that the securitization trusts could make principal and interest payments on the Certificates. These representations were material to Western & Southern's decision to purchase the Certificates.

Unbeknownst to investors such as Western & Southern, however, Countrywide systematically ignored the underwriting standards it touted.  Rather than adhere to its underwriting guidelines, Countrywide was intensely focused on increasing its market share and offloading its poorly underwritten loans onto investors such as Western & Southern who were never advised of Countrywide's greedy, shoddy practices.  The systemic abandonment of

Countrywide's promised underwriting standards has led to soaring default rates in the mortgage pools underlying Western & Southern's Certificates.  Despite the fact that almost all of Western & Southern's Certificates started out with AAA or Aaa ratings – the same rating given to treasury bills backed by the full faith and credit of the United States government – ***94% of them are now no longer even the lowest investment grade.***  With the underlying loans performing so poorly, the market value of Western & Southern's Certificates has plummeted and Western & Southern has lost tens of millions of dollars.

Western & Southern commenced this action under the Ohio Securities Act, federal securities laws and Ohio common law to redress its damages.  The Countrywide Defendants now seek to transfer this case to the Central District of California where the Countrywide Defendants are named as defendants in a class action captioned *Maine State Retirement System v. Countrywide Fin. Corp.*, No. 10-cv-00302, a class action proceeding before The Honorable Mariana R. Pfaelzer.  The *Maine State* action currently involves only one of the 32 Countrywide MBS Offerings at issue here.  *Compare* Fitzgerald Decl. Ex. 1 (excerpt from Western & Southern's Complaint identifying holdings) *with id.* Ex. 2 (excerpt from the *Maine State* Third Amended Consolidated Complaint identifying holdings).  Similarly, the three other Countrywide MBS actions[4] before Judge Pfaelzer (i) do not involve <u>any</u> tranches of securities purchased by Western & Southern, and (ii) implicate only three out of 32 offerings invested in by Western & Southern (though again, even as to those three offerings, Western & Southern invested in different tranches).  *Compare id.* Ex. 1 *with id.* Ex. 3 (excerpt from *Allstate* Complaint); *id.* Ex. 4 (excerpt from *Putnam* Complaint); *id.* Ex. 5 (excerpt from *Stichting* Complaint).

---

[4]  *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, No. 2:10-07275-MRP (MANx) (C.D. Cal.); *Putnam Bank v. Countrywide Financial Corp.*, et al., No. 2:11-cv-04698-MRP (C.D. Cal.); *Allstate Ins. Co. v. Countrywide Fin. Corp.* No. 2:11-cv-05236-MRP (C.D. Cal.).

## ARGUMENT

"When considering a motion to transfer venue,0 a district court should consider the convenience of the parties, the convenience of potential witnesses, and the interests of justice." *Shanehchian v. Macy's, Inc.*, 251 F.R.D. 287, 289 (S.D. Ohio 2008) (Spiegel, J.) (*citing Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). In balancing these factors, the Sixth Circuit has directed district courts to give considerable deference to the plaintiff's choice of forum. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 413 (6th Cir. 1998). Thus, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (*quoting Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)); *see also Painting Co., Plaintiff, v. Dist. Council No. 9, Int'l Union of Painters and Allied Trades, A.F.L.*, No. 2:07-cv-550, 185 L.R.R.M. 2462, 2008 U.S. Dist. LEXIS 85803, at *58 (S.D. Ohio 2008) ("it has long been held that the plaintiff's choice of a forum is entitled to considerable weight, and, consequently, the party moving for a change of venue must demonstrate that the interests served by 28 U.S.C. § 1404(a) clearly favor a change of venue"); *accord Shanehchian*, 251 F.R.D. at 289 ("Venue should not be transferred unless these factors weigh heavily in favor of the defendant").

## I.     Western & Southern's Choice of Forum Is Entitled to "Considerable Deference"

Consistent with the Sixth Circuit's admonition that "'plaintiff's choice of forum should rarely be disturbed,'" *Reese*, 574 F.3d at 320, courts within this district routinely decline to transfer actions filed by Ohio citizens where a defendant solicited business within the state of Ohio. *See Arters v. Sandoz, Inc.*, No. 2:10-cv-00142, 2010 U.S. Dist. LEXIS 101197, at *23 (S.D. Ohio Sept. 27, 2010) (Deavers, J.) (no transfer of suit brought by an Ohio resident injured by a drug when he was a resident of another state because the drug was marketed in Ohio); *Levy*

*v. Cain, Watters & Associates*, No. 2:09-cv-723, 2010 U.S. Dist. LEXIS 9537, at *30-31 (S.D. Ohio Jan. 15, 2010) (Frost, J.) (no transfer of claims brought by an Ohio resident against a Texas-based investment advisor because, while much of the alleged misconduct occurred in Texas, the advisor "reached" into Ohio to do business); *Pearle Vision, Inc. v. N.J. Eyes, Inc.*, No. 1:08-CV-190, 2009 U.S. Dist. LEXIS 281, at *26 (S.D. Ohio Jan. 6, 2009) (Dlott, J.) (no transfer of suit brought by an Ohio franchisor against a New Jersey franchisee because the New Jersey franchisee negotiated and did business with the franchisor located in Ohio).

Indeed, this Court has long recognized that substantial deference to the plaintiff's choice of forum is particularly appropriate where, as here, an Ohio resident chooses to bring an action in its home state. *See Priess v. Fisherfolk*, 533 F. Supp. 1271, 1280 (S.D. Ohio 1982) (Spiegel, J.) ("Plaintiff is a resident of Ohio and her choice to proceed with the suit in her home state cannot be overemphasized"); *Cent. Inv. Corp. v. Mut. Leasing Assocs., Inc.*, 523 F. Supp. 74, 79 (S.D. Ohio 1981) (Spiegel, J.) (Ohio domiciled plaintiffs' decision to proceed in the Southern District of Ohio "is given considerable weight").  And there is a strong policy underlying the Federal Securities Act of 1933, upon which several of Western & Southern's claims are based, "to grant potential plaintiffs liberal choice in their selection of a forum.'"  *Wayne County Employees' Retirement System v. MGIC Investment Corp.*, 604 F. Supp. 2d 969, 976 (E.D. Mich. 2009) (*quoting Ritter v. Zuspan*, 451 F. Supp. 926, 928 (E.D. Mich. 1978)).

Faced with the overwhelming authority requiring substantial deference to Western & Southern's choice of forum, the Countrywide Defendants flatly misrepresent what Western & Southern alleges by falsely asserting "there is literally *no connection* between the operative facts in this case and the Southern District of Ohio."  Countrywide Br. at 19 (emphasis in original). The Countrywide Defendants are wrong both as a matter of fact and law.

Five of the six Western & Southern plaintiffs are Ohio domiciled companies with their principal place of business in this judicial district. *See* Stainton Decl. ¶¶ 3-8.  They are longstanding citizens of Ohio with deep ties to Cincinnati employing approximately 1,700 Ohio residents. *Id.* ¶¶ 3-9.  They provide insurance and investment products to many more citizens of Ohio, *id.* ¶ 10, and most of the Western & Southern plaintiffs are regulated by the Ohio Department of Insurance. *Id.* ¶¶ 3-6.  The Western & Southern plaintiffs also purchased the certificates in Ohio and continue to manage their investments from their offices in Cincinnati. *Id.* ¶ 11.  As the true facts about Countrywide's widespread and brazen misconduct in MBS offerings has emerged, the Western & Southern defendants have been forced to recognize their losses in Ohio.[5]

As noted above, the Countrywide Defendants' activities were also by no means limited to the state of California.  As the name "Countrywide" suggests, the loans underlying the Certificates were made to borrowers in every state.  Those loans were often originated by local loan originators or underwriters and the subject properties were appraised for Countrywide by local appraisers.  The loans were then secured by mortgages on properties located in diverse areas of the United States. This is not a California-dominated case mis-venued in Ohio.  Indeed, in *Maine State*, Countrywide itself emphasized the geographically diverse nature of the loan pools underlying the Certificates, stating "the geographic distribution of the Mortgage Loans underlying the offerings varied from pool to pool, as did the personnel who originated and underwrote the Mortgage Loans and the appraisers who valued the collateral underlying the

---

[5] Countrywide or its affiliates maintained offices and bank branches in the state of Ohio and continue to do so.  In addition, Countrywide's corporate parent, Defendant Bank of America Corporation, is headquartered in Charlotte, North Carolina and has a significant presence in New York.  As a result, the Southern District of Ohio is a far more convenient forum for the Bank of America defendants than the Central District of California would be.

Mortgage Loans." Fitzgerald Decl. Ex. 6 at 10 (Memo of Points and Authorities In Support of Countrywide's Motion to Dismiss in *Maine State* dated August 6, 2010).

The Countrywide Defendants "reached" into Ohio to sell mortgage-backed securities to the Western & Southern Plaintiffs domiciled in Ohio and they did so by transmitting false and misleading Offering Materials to Western & Southern and other Ohio investors. Where, as here, a defendant has solicited business by transmitting marketing materials into Ohio, the fact that defendant's misconduct may have also involved substantial activities outside of the state is insufficient to warrant transfer under 28 U.S.C. § 1404(a). *See Levy*, 2010 U.S. Dist. LEXIS 9537, at *30 (no transfer when misconduct occurred outside of the Southern District of Ohio because the defendant "reached into Ohio to solicit Plaintiffs' business"); *see also Arters v. Sandoz, Inc.*, No. 2:10-cv-00142, 2010 U.S. Dist. LEXIS 101197, at *23 (S.D. Ohio Sept. 27, 2010) (Deavers, J.) (no transfer because the defendant solicited business in Ohio).

## II. The Countrywide Defendants Have Not Shown that Principals of Judicial Economy Clearly Override the Deference that Must be Afforded to Western & Southern's Choice of Venue

The Countrywide Defendants argue that this Court should disregard Western & Southern's choice of forum because they believe it would be more efficient to consolidate this action with four cases currently pending in the Central District of California. This argument is a red-herring because Western & Southern is more than willing to voluntarily coordinate discovery in these actions to realize whatever efficiencies may exist. As this Court has previously noted, plaintiff should not be deprived of its choice of forum where there is "no reason why the parties cannot informally coordinate pretrial discovery with the parties in" other pending actions in different judicial districts. *Shanehchian*, 251 F.R.D. at 292. Further, as noted above, the Countrywide Defendants have filed a motion with the MDL Panel to transfer this action for pre-

trial proceedings to the Central District of California and centralize it with eleven other cases pending against Countrywide. Coordination, whether voluntary or by order of the MDL Panel, is likely to occur here.

Thus, this motion is about where a final trial on the merits of this case should be. Such trial should occur in the Southern District of Ohio, the jurisdiction to which Countrywide transmitted false marketing materials, and where Western & Southern has longstanding community ties and where it purchased the Certificates, suffered its injuries, and filed this lawsuit.

### A.   The Countrywide Defendants Ignore the Well-Reasoned Decisions of this Court and Other Courts in this District Recognizing Deference to Western & Southern's Choice of Forum is Required Here

The Countrywide Defendants conspicuously ignore this Court's well-reasoned opinion in *Shanehcian* which held that the mere fact that judicial economy would be somewhat served by transfer is insufficient to deprive a plaintiff of its choice of forum. In *Shanehchian*, the defendant sought transfer of an ERISA lawsuit to the Southern District of New York where a securities litigation raising similar issues was pending. *Id.* at 289-290. According to the defendant, "it would be a more efficient use of public resources to try all cases in one court." *Id.* at 289. This Court rejected that argument, noting that "[a]lthough the transfer of this matter to the Southern District of New York may somewhat promote judicial economy," transfer was not warranted because plaintiff (i) had the right under ERISA to file in the Southern District of Ohio, (ii) was willing to voluntarily coordinate discovery, and (iii) because plaintiff transacted business relating to the claims in the state and could be found in the state. *Id.* at 292.

The case against transfer is even more compelling here because, unlike the plaintiff in *Shanehchian*, five of the six Western & Southern plaintiffs are headquartered in Ohio. The

weight afforded to Western & Southern's "choice to proceed with the suit in [its] home state cannot be overemphasized." *See Priess*, 533 F. Supp. at 1280. Thus in *Arters v. Sandoz, Inc.*, the court refused transfer to Virginia despite the fact that all of the alleged events occurred in Virginia, almost all of the witnesses were in Virginia and plaintiff was a long term resident of Virginia prior to his move to Ohio. 2010 U.S. Dist. LEXIS 101197 at *4. In refusing to transfer, Judge Deavers reasoned that while Virginia was more convenient for many witnesses "the interest of plaintiffs in their choice of forum is stronger when plaintiffs are residents of the forum they choose." *Id.* at *13; *see also Max Rack, Inc. v. Hoist Fitness Sys., Inc.*, No. 2:05-CV-784, 2006 U.S. Dist. LEXIS 13374, at *10 (S.D. Ohio Mar. 10, 2006) (Smith, J.); *Steelcase Inc. v. Smart Techs.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004) ("In general, a plaintiff's choice of forum is entitled to substantial consideration in balancing the § 1404(a) factors . . . . This is especially true where the plaintiff also resides in the chosen forum").

Contrary to the Countrywide Defendant's assertion, *Limited Service Corporation v. M/V/APL Peru* does not dictate a different result. No. 2:09-cv-1025, U.S. Dist LEXIS 53632 (S.D. Ohio May 25, 2010) (Graham, J.). In *Limited Service*, the plaintiff contracted with a defendant located outside of Ohio to ship goods from Indonesia. *Id.* at *3-4. The goods were destroyed in a fire at sea. *Id.* at *4. The court transferred the case noting that the plaintiff's choice of forum there "was not particularly compelling" because the case was removed from state court and because the Southern District of Ohio had "no real connection to any of the events in the case." *Id.* at *19. There was no indication that defendant solicited business in the state or that the fire had anything to do with activities within the state—the only tie to the state of Ohio was that the goods were ultimately to be delivered there. *Id.* In contrast, here it is undisputed that Countrywide actively marketed its mortgage-backed securities to Western &

Southern in Ohio, including transmitting marketing materials into the state.  Western & Southern purchased the securities in Ohio and such investments continue to be managed from Western & Southern's headquarters in Cincinnati.  Moreover, it is also undisputed that a number of the loans underlying the Certificates involve properties located in Ohio or loans that were otherwise underwritten in Ohio.

Similarly, although the Countrywide Defendants have collected a number transfer orders by courts within the Sixth Circuit, none of them bears any semblance to the present action:

- *Am. Signature Inc. v. Moody's Investors Services, Inc.* is distinguishable because the securities were purchased in New York.  No. 2:09-cv-878, 2010 U.S. Dist. LEXIS 68042, at *2 (S.D. Ohio July 2010) (Frost, J.) (securities purchased by Lehman Brothers in New York).

- *Hamilton County Ohio v. Hotels.com* is inapposite because the action was merely transferred within districts of Ohio and the plaintiff was not deprived of a forum in its home state.  No. 1:10-cv-668, 2011 U.S. Dist. LEXIS 1747, at *2 (S.D. Ohio Jan. 3, 2011) (Dlott, J.).  *Stichcombe v. Caruso* similarly involved transfer to districts within the same state.  No. 2:08-cv-14271, 2008 U.S. Dist. LEXIS 80209, at *1-2 (E.D. Mich. Oct. 9, 2008).

- Two of the cases cited by the Countrywide Defendants are patent cases where there is an overriding federal policy in favor of trying cases in the forum where the infringing activity at issue occurred.  *See Jabo's Pharmacy, Inc. v. Cephalon, Inc.*, No. 2:09-cv-289, 2010 U.S. Dist. LEXIS 102003, at *8 (E.D. Tenn. Sept. 27, 2010); *Twenty First Century Comm., Inc. v. Techradium, Inc.*, No. 2:09-cv-1118, U.S. Dist LEXIS 7820, at *17 (S.D. Ohio Jul. 30, 2010) (Frost, J.); *see also Steelcase Inc. v. Smart Techs.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004) ("in patent suits, the forum which is the center of the accused activity is the preferred forum").

- In *Plaskolite, Inc. v. Zhenjiang Taizhou Eagle Mach.*, the primary factor supporting transfer was the lack of jurisdiction over defendant in Ohio. No. 08-487, U.S. Dist LEXIS 99395, at *21-22 (S.D. Ohio Dec. 9, 2008) (Sargus, J.).

- Two of the cases cited do not involve claims brought by a citizen of the judicial district in which the suit was filed.  *Giant Eagle, Inc. v. Cephalon, Inc.*, No. 1:10-cv-1197, 2010 U.S. Dist. LEXIS 103431, at *9 (N.D. Ohio Sept. 30, 2010); *Kay v. Nat'l City Mortg. Co.*, No. 3:03-cv-160, 2004 U.S. Dist. LEXIS 30554, at *8 (S.D. Ohio July 14, 2004) (Rice, J.).

- Plaintiff in *Wayne County Employees' Ret. Sys. v. MGIC Invest. Corp.* was proceeding on behalf of a purported class, which significantly reduced the amount of deference to which plaintiff's choice of forum was afforded.  604 F. Supp. 2d 969, 976 (E.D. Mich. 2009).

- In *Pullins v. Palmero*, the primary reason supporting transfer was the limited resources of the defendant.  No. 3:08-cv-118, 2009 WL 1067315, at *5 (S.D. Ohio Apr. 21, 2009).  The court expressly noted that it was concerned that requiring litigation in multiple jurisdictions would deplete the resources of defendants, which were needed to satisfy anticipated judgments.  *Id.*[6]

In this Circuit, "28 U.S.C. § 1404 does not allow for transfer to a forum that is equally convenient or inconvenient, nor does it allow for transfer if that transfer would only shift the inconvenience from one party to another."  *Shanehchian*, 251 F.R.D. at 292.  "Furthermore, when balancing the 1404(a) factors, 'the Court does not start with the assumption that the case should proceed in whichever forum is slightly more advantageous to the parties or the witnesses.'"  *Arters*, 2010 U.S. Dist. LEXIS 101197, at *11 (*quoting see also Levy*, 2010 U.S. Dist. LEXIS 9537, at *25).  Instead, the party seeking transfer must demonstrate that the conveniences afforded by another district "clearly favor a change of venue."  *Levy*, 2010 U.S. Dist. LEXIS 9537, at *26 (emphasis added).  Here, the Countrywide Defendants have not come close to showing that the Central District of California is the more convenient forum, much less that convenience "clearly favors" transfer.

---

[6] The Countrywide Defendants' reliance on the unpublished *Putnam* and *Allstate* opinions from outside the Sixth Circuit is similarly misplaced.  Countrywide Br. at 6-8.  The *Putnam* action was brought on behalf of a purported class of plaintiffs which substantially reduces the amount of deference the plaintiffs choice of forum is entitled too. *See Putnam Bank v. Countrywide Fin. Corp. et. al.*, No. 3:11-cv-00145-JCH, slip op. at 1 (D. Conn. May 16, 2011), (attached as Exhibit Q to Appendix C of Countrywide's Motion); *see also Wayne County,* 604 F. Supp. 2d at 976 (putative class action plaintiff entitled to less deference).  And almost all of the plaintiffs in *Allstate* resided outside of New York.  Fitzgerald Decl. Ex. 3 (excerpt from Allstate Complaint).  Moreover, both of these cases were decided under Second Circuit law.  Sixth Circuit law is clear, an Ohio resident's decision to proceed in the Southern District of Ohio is entitled to considerable deference.

**B.      Countrywide's Prior Litigation Positions Belie its Assertion that it Would Be More Efficient to Consolidate this Action with the Four MBS Actions Currently Pending in the Central District of California**

Only four out of 32 offerings at issue here overlap with the offerings in the *Maine State* action and the other MBS cases pending in the Central District of California.  Further, even in the four overlapping offerings, Western & Southern purchased different tranches of the offerings. The Countrywide Defendants have repeatedly and vehemently taken the position in *Maine State* that cases involving distinct offerings (and even further, different tranches) of Countrywide MBS raise unique questions of fact requiring different discovery and distinct proofs at trial.  With respect to its separate offerings, the Countrywide Defendants have asserted:

- "[T]he representations made in one prospectus supplement regarding a particular MBS offering are substantively different from the representations made about another offering under a different prospectus supplement, even where there is a common registration statement.  In other words, because the representations concern different pools of loans and often different underwriting standards applicable to those pools, a purchaser in one deal is not injured by alleged misstatements made at a different time, about entirely different loans, that were originated pursuant to likely different underwriting standards and practices."  Fitzgerald Decl. Ex. 6 at 2.

- "In effect, each Issuing Trust was the equivalent of a separate, publicly traded company, issuing Certificates based on a unique pool of Mortgage Loans, each with its own unique rates, terms, and credit characteristics.  Those Certificates were registered with the SEC and sold to buyers in underwritten public offerings."  *Id.* at 7-8.

- "Moreover, the geographic distribution of the Mortgage Loans underlying the offerings varied from pool to pool, as did the personnel who originated and underwrote the Mortgage Loans and the appraisers who valued the collateral underlying the Mortgage Loans."  *Id.* at 10.

- "Even if certain Offering Documents used the same language, the true substance of these representations was fundamentally different for each Offering, because they were made in connection with a unique pool of loans, to a unique group of borrowers, and potentially pursuant to a unique set of underwriting guidelines."  *Id.* at 39-40.

After convincing Judge Pfaelzer that each Countrywide offering is "unique,"

Countrywide pressed even further arguing that each tranche of securities within a single offering

constitutes a "unique" security.  Thus, Countrywide's claims of purported efficiencies to be gained by transfer are undercut by its assertion that

> most of the senior tranches included in the SAC were backed by unique subgroups of loans different from the loan groups that backed other tranches in the same MBS offerings.  Because the loan groups backing the certificates differed from tranche to tranche, the statements regarding underwriting and credit characteristics found in the prospectus supplements for those MBS deals were essentially different statements for different tranches given that the point of reference for those statements (the loan groups) differed from tranche to tranche.

*Id.* Ex. 7 at 2.  Judge Pfaelzer accepted this aggressive premise, noting that "an alleged misstatement as to the origination practices with respect to one loan group backing a particular tranche would not necessarily constitute a misstatement as to a different loan group backing a different tranche."  *Maine State Retirement System v. Countrywide Fin. Corp.*, No. 10-cv-00302 (MRP) at 15 (Fitzgerald Decl. Ex. 8).  Judge Pfaelzer further agreed that "any alleged injury flowing from an alleged misstatement as to one tranche would not necessarily constitute injury to purchasers of different tranches backed by different loan groups."  *Id.*[7]

Having successfully argued that every offering is unique and that each tranche within an offering involves distinct securities requiring individualized discovery as to the nature of alleged misrepresentations and losses, Countrywide is judicially estopped from arguing to the contrary here.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him") (quotations and citation omitted).

Given the foregoing, Countrywide cannot now argue that this action is so similar that judicial economy would best be served by transferring this action to the Central District of

---

[7] Western & Southern strongly disagrees with Countrywide on this point.

California.  Of the offerings of Countrywide MBS purchased by Western & Southern, none of the tranches and only four offerings are implicated in the four MBS actions currently pending in the Central District of California.  *Compare* Fitzgerald Decl. Ex. 1 (excerpt from Western & Southern Compl. identifying tranches) *with id.* Ex. 2 (*Maine State* Complaint); *id.* Ex. 3 (*Allstate* Complaint); *id.* Ex. 4 (*Putnam* Complaint); *id.* Ex. 5 (*Stichting* Complaint).  Under Countrywide's own arguments, Western & Southern must take separate discovery concerning, and offer distinct proofs at trial, for all 38 tranches of securities it owns.  Thus, the Countrywide Defendants have not met, and cannot meet, their burden of showing that the interests of judicial economy "clearly favor" transfer.

> **C.**     **Countrywide Has Not Established that an Action in the Central District of California Would be More Convenient for Third Party Witnesses or Provide Greater Access to Evidence**

Countrywide asserts that California is a more convenient forum because many (but not all) of the Countrywide employees who could be called to testify are residents of California. However, the location of a party's employee witnesses is not a consideration that can tip the scales in favor of transfer.  *See, e.g., Fusi v. Emery Worldwide Airlines, Inc.*, 2007 U.S. Dist. LEXIS 89784, at *17 (S.D. Ohio Nov. 23, 2007) (Rose, J.) ("the convenience of witnesses who are employees of a party is generally not given as much consideration as is given to other witnesses").

While the Countrywide Defendants have argued that non-party witnesses reside in California and may be unwilling to travel to Ohio to testify at trial, the declaration submitted in support of their motion does not identify any former employees or non-parties who might be called to testify.  *See* Liu Decl. ¶ 11 (listing Countrywide officials who may testify without identifying and non-parties).  Nor do the Countrywide Defendants offer any proof that such

individuals, if they exist, would be unwilling to appear for trial in the Southern District of Ohio. Such failure of proof is fatal to their motion. *Pearle Vision, Inc. v. N.J. Eyes, Inc.*, 2009 U.S. Dist. LEXIS 281, at *26 (defendants "have not identified their witnesses nor have they offered any evidence that their witnesses would be unable or unwilling to provide testimony at a trial in this District"); *see also Armco, Inc. v. Reliance Nat. Ins. Co.*, No. C-1-96-1149, 1997 U.S. Dist. LEXIS 7880, at *15 n.2 (S.D. Ohio May 30, 1997) (rejecting as basis for transfer the generalized assertion that non-party witnesses are located outside the Southern District of Ohio).[8]

Moreover, even if the Countrywide Defendants could specifically identify unavailable non-party witnesses, the existence of those witnesses would not warrant transfer because they could be deposed in California and that deposition testimony could be used at trial here. *See Arters*, 2010 U.S. Dist. LEXIS 101197, at *19 ("they could use the compulsory process of the Eastern District of Virginia to obtain deposition testimony which they could use at trial in Ohio").

Because this case is in its early stages, it remains to be seen where the majority of the relevant third-party witnesses are located. Indeed, Countrywide has made it clear that evidence relating to the Western & Southern Certificates is scattered across the country; relevant witnesses are located in many different states. Fitzgerald Decl. Ex. 6 at 10 ("the geographic distribution of the Mortgage Loans underlying the offerings varied from pool to pool, as did the personnel who originated and underwrote the Mortgage Loans and the appraisers who valued the collateral underlying the Mortgage Loans."). *See Van Ommeren Bulk Shipping, B.V. v. Tagship, Inc.*, 821 F. Supp. 848, 850 (D. Conn. 1993) ("The myriad locations of the witnesses do not favor either

---

[8] In addition, Countrywide's showing fails because it has not specified the substance of the testimony on which the purportedly unavailable third party witnesses would testify. *See Graham v. UPS*, 519 F. Supp. 2d 801, 810 (N.D. Ill. 2007) (denying transfer because defendant failed to state substance of supposed key witnesses' testimony); *Laumann Mfg. Corp. v. Castings USA, Inc.*, 913 F. Supp. 712, 721 (E.D.N.Y. 1996) (denying transfer because defendant failed to state substance of supposed key witnesses' testimony).

[the transferor district] or [the transferee district]").  It would be more convenient to keep the Western & Southern Action in Ohio—the location of the Western & Southern witnesses and a potentially significant number of non-party witnesses.  Western & Southern is also located in the center of the country which will facilitate access to the documents and witnesses that Countrywide has represented are scattered across the country.[9]

The Countrywide Defendants also argue that a "great majority of potentially relevant documents" are located in the Central District of California.  Countrywide Br. at 16.  This is likely another red-herring to begin with, since it is most likely that Countrywide will produce documents to an online database.  Further, the declaration Countrywide has provided indicates only that "[t]o the extent that they have not been moved to offsite storage, most documents related to the issuance of Countrywide-sponsored MBS" are located in California and that electronic documents are stored on servers in California.  Liu Decl. ¶ 12.  In other words, the vast majority of hardcopy documents could actually be stored offsite <u>outside</u> of California, but only the Countrywide Defendants know whether that is the case.  Their supporting declaration certainly sheds no light on the issue.  Nevertheless, given the ease of which documents can be transported and electronically stored, courts in this district give very little weight to the location of documentary evidence in considering a motion to transfer.  *See, e.g.*, *Painting Co.*, 2008 U.S. Dist. LEXIS 85803, at *59-60 ("a generalized assertion by a defendant that documents are located in the proposed transferee district is generally insufficient to support a change of venue . .

---

[9]  Similarly, several actions against Countrywide are proceeding in the Supreme Court of the State of New York and will continue to proceed there regardless of whether Countrywide's motion for centralization is granted by the MDL Panel.  *See Fin. Guar. Ins. Co. v. Countrywide Home Loans, Inc*., Dkt. No. 650736/2009, *MBIA Ins. Corp. v. Countrywide Home Loans, Inc*., 602825/2008, *Syncora Guarantee Inc. v. Countrywide Home Loans, Inc*., Dkt. No. 650042/2009, *Republic Mortg. Ins. Co. v. Countrywide Fin. Corp*., Dkt. No. 603915/2009, and *Walnut Place LLC, et al. v. Countrywide Home Loans, Inc*., Dkt. No. 650497-2011.  The Southern District of Ohio is obviously closer to New York than the Central District of California and, thus, the Western & Southern Action could more easily be coordinated with these actions if Countrywide's motion to transfer is denied.

. . Rather, the defendant must show a specific hardship involved with conducting discovery in the plaintiff's chosen district") (citations omitted); *Max Rack, Inc.*, 2006 U.S. Dist. LEXIS 13374, at *18 ("the location of the documentary evidence is of little weight in deciding a motion to transfer because documents may be easily copied and transferred").  Under such circumstances, transfer is not warranted.

## III.   Public Interest Factors Favor the Southern District of Ohio

The Countrywide Defendants argue nonsensically that Ohio does not have a sufficient interest in this action because much of its misconduct occurred within the Central District of California.  *See* Countrywide Transfer Br. at 17-18.  The law, however, in the Sixth Circuit is clear.  "Even if a more substantial part of the events and omissions might have occurred" outside of Ohio, the courts of Ohio nevertheless have a compelling interest in adjudicating the claims of individuals injured in Ohio.  *Pearle Vision, Inc.*, 2009 U.S. Dist. LEXIS 281, at *26; *see also Levy*, 2010 U.S. Dist. LEXIS 9537, at *30 ("Defendant reached into Ohio to solicit Plaintiffs' business and Ohio certainly has an interest in regulating business conducted in Ohio."); *Arters*, 2010 U.S. Dist. LEXIS 101197, at *23 (Ohio has a sufficient interest in a dispute where the defendant solicited business in Ohio regardless of whether or not the misconduct allegedly occurred in Ohio);  *SEC v. Rose Fund, LLC*, No. 03-cv-04593, 2004 U.S. Dist. LEXIS 22491, at *12 (N.D. Cal. Jan. 9, 2004) (while courts in which the defendants are located have "a substantial interest in policing the conduct of businesses that operate within their jurisdiction . . . . the courts where the victims are located have at least an equal interest in the controversy").

Moreover, docket congestion in the Central District of California weighs against transfer. Judges in the Central District of California have, on average, 495 civil cases on their dockets. Judges in the Southern District of Ohio have an average of 332 civil cases, ***163 fewer*** than judges

in the Central District of California.  *See* Fitzgerald Decl. Ex. 9 (Judicial Caseload Profile

Reports for the Southern District of Ohio and the Central District of California) *available at*

http://www.uscourts.gov/cgi-bin/cmsd2010Sep.pl.

## CONCLUSION

For all of the foregoing reasons it is respectfully submitted that Countrywide's Motion

should be denied and the Western & Southern Action should be allowed to proceed in the

Southern District of Ohio.

Respectfully submitted,

/s/ DAVID H. WOLLMUTH
David H. Wollmuth (*pro hac vice*)
dwollmuth@wmd-law.com
Vincent T. Chang (*pro hac vice*)
vchang@wmd-law.com
Steven S. Fitzgerald (*pro hac vice*)
sfitzgerald@wmd-law.com
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

-and-

Glenn V. Whitaker, Trial Attorney  (0016128)
gvwhitaker@vorys.com
Eric W. Richardson (0066530)
ewrichardson@vorys.com
Adam C. Sherman (0076850)
acsherman@vorys.com
Erik B. Bond (0087188)
ebbond@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
Suite 2000, Atrium Two
221 East Fourth Street
Cincinnati, Ohio 45202
Telephone:     (513) 723-4000
Facsimile:     (513) 852-7885

*Attorneys for Plaintiffs The Western and Southern Life Insurance Company, Western-Southern Life Assurance Company, Columbus Life Insurance Company, Integrity Life Insurance Company, National Integrity Life Insurance Company and Fort Washington Investment Advisors, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing OPPOSITION to DEFENDANTS' MOTION TO TRANSFER was served upon counsel and parties via the Court's CM/ECF System, this 30th day of June 2011.


                                                  /s/STEVEN S. FITZGERALD   
                                                  Steven S. Fitzgerald